















```
JRL    12/16/02    14:15
3:02-CV-02460   LINDOWS.COM INC V. XANDROS INC
*1*
*CMP.*
```

1    MICHAEL S. KAGNOFF, State Bar No. 167613
     COLBERN C. STUART, III, State Bar No. 177897
2    BROBECK, PHLEGER & HARRISON LLP
     12390 El Camino Real
3    San Diego, CA 92130-2081
     Telephone: (858) 720-2500
4    Facsimile: (858) 720-2555

5

6    Attorneys for Plaintiff LINDOWS.COM, INC.

**FILED**

DEC 1 3 2002

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**ORIGINAL**

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10   LINDOWS.COM, INC., a Delaware       ) Case No. '02 CV 2460 BTM (RBB)
     corporation,                        )
11                                       )
                     Plaintiff,          ) **COMPLAINT FOR VIOLATION OF**
12                                       ) **THE SECURITIES EXCHANGE ACT**
            v.                           ) **OF 1934; FRAUD; NEGLIGENT**
13                                       ) **MISREPRESENTATION; BREACH OF**
                                         ) **CONTRACT; RESCISSION**
14   XANDROS, INC., a Delaware corporation;)
     LINUX GLOBAL PARTNERS, INC., a      ) **DEMAND FOR JURY TRIAL**
15   Delaware corporation; MICHAEL BEGO, an)
     individual; WILLIAM JAY ROSEMAN, an )
16   individual.                         )
                                         )
17                   Defendants.         )
     _____)

18          Plaintiff LINDOWS.COM, Inc. ("Lindows.com") by and through its

19   undersigned attorneys, complains and alleges as follows:

20                            **THE PARTIES**

21          1.      Lindows.com is a corporation organized and existing under the laws of

22   the State of Delaware with its principal place of business at 9333 Genesee Drive, San

23   Diego, California, 92121.

24          2.      Defendant XANDROS, INC. (hereinafter "Xandros") is a corporation

25   organized and existing under the laws of the State of Delaware with a principal place of

26   business at 41 East 11th Street, 11th Floor, New York, New York 10003.

27          3.      Defendant LINUX GLOBAL PARTNERS, INC. (hereinafter "LGP")

28   is a corporation organized and existing under the laws of the State of Delaware with a

1   principal place of business at 41 East 11th Street, 11th Floor, New York, New York 10003.

2   4.   Defendant MICHAEL BEGO ("Bego") is an individual residing at 241

3   W 13th Street, New York, New York 10011.

4   5.   Defendant WILLIAM JAY ROSEMAN ("Roseman") is an individual

5   residing at 308 Hackensack Street, Carlstadt, New Jersey 07072.

6   ## JURISDICTION AND VENUE

7   6.   This Court has jurisdiction over the first claim for violation of The

8   Securities Exchange Act of 1934 ("1934 Act"), pursuant to 15 U.S.C. §78aa. The claim

9   arises under §10(b) of the 1934 Act, and Rule 10b-5. Pursuant to 28 U.S.C. §1367(a), this

10  Court has supplemental jurisdiction over the second, third, fourth and fifth claims for

11  breach of contract, rescission, and fraudulent and negligent misrepresentation.

12  7.   Venue is appropriate in the Southern District of California under §27

13  of the 1934 Act and under 28 U.S.C. §1391(b)(2) as a substantial portion of the acts and

14  omissions on which the claims are based occurred in this district.

15  ## COMMON ALLEGATIONS

16  8.   Plaintiff Lindows.com is a computer software company that is

17  developing a new computer operating system called LindowsOS. LindowsOS is an easy-

18  to-use Linux-based personal computer operating system.

19  9.   Defendant Xandros is a computer software company which develops

20  and sells a Linux-based operating system which Xandros claims is compatible with both

21  Microsoft Windows- and Linux-based applications.

22  10.   Defendant LGP is a company which owns a number of companies

23  which develop, manufacture, or sell Linux-based applications or services. LGP is an owner

24  of Defendant Xandros.

25  11.   Plaintiff is informed and believes and based thereon alleges that

26  Defendant Bego was a Vice President, Director and agent of Xandros from August, 2001

27  up to and including the present date.

28  / / /

12.     Plaintiff is informed and believes and based thereon alleges that Defendant Bego was a Vice President of Business Development, Director and agent of LGP from August, 2001 up to and including the present date.

13.     Plaintiff is informed and believes that Defendant Roseman was a Director and agent of LGP and Xandros from August, 2001 up to and including the present date.

## DEFENDANTS' MATERIAL MISREPRESENTATIONS

14.     Beginning in August, 2001, Plaintiff Lindows.com and Xandros began negotiating a number of agreements whereby Lindows.com would assist in the financing of the Xandros business operation by loaning Xandros cash in exchange for convertible promissory notes (the "Convertible Securities").

15.     Beginning on August 28, 2001, and on numerous subsequent occasions during the negotiations for the issuance of the Convertible Securities and continuing after their issuance, Xandros' President Bego represented to Lindows.com's Founder/Chief Executive Officer and its President/Chief Operating Officer that Xandros had secured ten million dollars in private equity financing from LGP.

16.     Xandros also represented to the general public, including its investors and Lindows.com, through a press release dated August 29, 2001 that it had "secured a $10 million capital commitment from NY-based Linux Global Partners." A true and correct copy of the entire August 29, 2001 press release is attached hereto as exhibit "A" and incorporated herein by reference.

17.     During a telephone conversation on or about October 4, 2001, Roseman represented to Lindows.com's Chief Executive Officer that LGP had agreed to provide $10 million in equity financing to Xandros.

18.     During the October 4 telephone conversation reference above, Roseman represented to Lindows.com that LGP was divesting itself of other companies in which it owned minority positions, including Ximian and CodeWeavers, in order to increase its funding and development of Xandros and its products.

3

19.     On October 29, 2001, Bego represented to Lindows.com's President that "Xandros' capital comes from a $10 million dollar (sic) commitment from Linux Global Partners and its partner VC companies.  Thus far, LGP has given us approximately $1.2mm of the total commitment.  LGP is in the process of closing on the remainder.  I would be happy to put you in contact with them.  As a result of LGP's stepped closings to date, Xandros has not keep (sic) large amounts of cash on hand.  Additionally, through LGP and its partner venture companies, we plan to to (sic) raise and additional $15-25 million dollars (sic) to ensure longer term stability."

20.     Plaintiff is informed and believes and based thereon alleges that Defendants Bego, Xandros, Roseman and LGP were aware of and approved the aboverreferenced representations to Lindows.com and to the general public.

## THE CONVERTIBLE SECURITIES

21.     Relying on the above-referenced representations, Plaintiff Lindows.com agreed to enter into the following Convertible Securities:

       a.     On or about November 20, 2001, Lindows.com and Xandros executed a Convertible Promissory Note requiring Defendant Xandros, inter alia, to pay to Plaintiff Lindows.com the amount of $250,000 (the "November 20 Note").  A true and correct copy of the November 20 Note is attached hereto as Exhibit "B" and incorporated by reference as if fully set forth at length herein.

       b.     On or about December 6, 2001, Lindows.com and Xandros executed a Convertible Promissory Note requiring Defendant Xandros, inter alia, to pay to Plaintiff Lindows.com the amount of $250,000 (the "December 6 Note").  A true and correct copy of the December 6 Note is attached hereto as Exhibit "C" and incorporated by reference as if fully set forth at length herein.

22.     Plaintiff is informed and believes that Defendant Bego's and Roseman's representations regarding LGP's financial commitments to Xandros detailed

4

1   above were material, false, and misleading.

2        23.   At the time that each of Bego, Xandros, Roseman and LGP made,

3   adopted or approved each of the above-referenced representations regarding LGP's

4   financial commitments to Xandros, each Defendant knew or recklessly disregarded that the

5   representations were in fact false and misleading.

6        24.   At the time that each of Bego, Xandros, Roseman and LGP made,

7   adopted or approved each of the above-referenced representations, each Defendant intended

8   or expected that Plaintiff would in fact rely on such representations in executing the

9   Convertible Securities.

10        25.   Plaintiff is informed and believes and based thereon alleges that the

11   true facts which were known to the defendants but concealed to Plaintiff were that, at the

12   time each of the above referenced representations were made, in truth and in fact:

13             a.   LGP had not committed ten million dollars to Xandros;

14             b.   LGP had no intention to commit ten million dollars to

15             Xandros;

16             c.   LGP and its Partner venture capital companies had not

17             committed ten million dollars to Xandros

18             d.   LGP had not undertaken any stepped closings of private

19             equity financings of Xandros

20             e.   LGP had no intention of undertaking any further stepped

21             closings of private equity financings of Xandros;

22        26.   Both prior and subsequent to execution of the Convertible Securities,

23   Lindows.com requested information regarding relevant facts relating to the business

24   prospects, direction, and financial health of Xandros, including information about financial

25   commitments of LGP and its partner venture capital companies, which information

26   Xandros failed and refused to provide to Lindows.com.

27        27.   Bego, Roseman, LGP and Xandros failed to fully and truthfully

28   disclosure of all relevant facts to Lindows.com by:

5

a.      failing to provide full and truthful disclosure of facts relating to the financial health of Xandros, including facts relating to the LGP financial commitment to Xandros as well as facts relating to Xandros accountings, business prospects, outside financing, and other relevant matters; and

b.      making other and further misrepresentations or omissions.

28.      In making the misrepresentations and omissions described above, Defendants acted with oppression, fraud and malice toward Lindows.com and the general public.

## ALTER EGO ALLEGATIONS

29.      During the telephone conversation referenced in paragraph 17 above, Roseman represented to Lindows.com:

a.      that LGP was the entity that formed Xandros after LGP negotiated a licensing agreement with Corel Corporation for a license of Corel's technology;

b.      that LGP provided Xandros with early start-up capital and were the pre-incorporation organizers of Xandros;

c.      that LGP selected the Xandros name, established Xandros' Ottawa offices, and conducted other start-up organization of Xandros;

d.      and that LGP was also the majority shareholder of Xandros and controlled Xandros and its Board of Directors, but that LGP was planning on hiring competent management team to begin running Xandros as an independent entity.

/ / /

6

30. Plaintiff is informed and believes and based thereon alleges that LGP failed to employ an independent Board of Directors and Officers, but continued to maintain a unity of interest between LGP and Xandros. LGP continued to dominate and control Xandros, continued to manage Xandros on a day to day basis, and caused or allowed the funds and other assets of Xandros to be commingled with those of LGP.

31. Plaintiff is informed and believes and based thereon alleges that LGP and Xandros maintained substantially identical directors and officers, utilized the same office or business locations, employed the same employees and attorneys, and failed to maintain an arm's length relationship between themselves in their business interactions.

32. Plaintiff is informed and believes and based thereon alleges that LGP further held out that LGP would be liable for the debts of Xandros and that LGP failed to adequately capitalize Xandros with funds necessary to conduct business as a separate entity. LGP and Xandros caused or allowed the diversion of assets from LGP to Xandros, and vice versa and manipulated the assets of Xandros for the benefit of LGP to the detriment of the creditors of Xandros.

33. Plaintiff is informed and believes and based thereon alleges that Xandros and LGP each failed to maintain corporate formalities as distinct from those of the other, including corporate minutes and adequate corporate records, but was a mere shell, instrumentality or conduit for a single venture of LGP.

34. Xandros and LGP concealed and misrepresented to Lindows.com and the general public the commonality of the corporations' ownership, management, control, and financial interest.

35. Lindows.com is informed and believes, and based thereon alleges, that Defendants Xandros and LGP were at all relevant times the agents, principals, alter egos, and co-conspirators of one another such that adherence to the fiction of the separate existence of each corporation would sanction a fraud and promote injustice.

36. Lindows.com is informed and believes, and based thereon alleges, that at all relevant times each Defendant was the agent, employee, principal, and co-conspirator

7

1    of each other Defendant and was at all relevant times acting within the course and scope of

2    such agency or co-conspiracy relationship in order to defraud Plaintiff and to cause Plaintiff

3    to execute the Convertible Securities.

### FIRST CLAIM

### (FOR VIOLATION OF SECTION 10(B) OF THE 1934 ACT

### AND RULE 10B-5 AGAINST DEFENDANTS XANDROS AND LGP)

37.    Lindows.com hereby refers to and incorporates by reference paragraphs 1 through 36, inclusive, of this Complaint.

38.    Defendants acted knowingly or in such a reckless manner so as to intentionally or recklessly misrepresent the facts detailed above in paragraphs 15 through 19 to Plaintiff Lindows.com with the intent or expectation that Plaintiff Lindows.com would rely on such misrepresentations and enter into the Agreements.

39.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 by:

a.    Employing devices, schemes, and artifices to defraud Plaintiff Lindows.com;

b.    Making untrue statements of material facts or omitting material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or

c.    Engaging in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff Lindows.com in connection with Lindows.com's agreement to enter into the Convertible Securities and continue its business relationship with Xandros;

40.    As a direct and proximate result of these Defendants' violations of law, Plaintiff Lindows.com has been injured in an amount to be proved at trial.

///

///

8

SDILIB1\CS05\
467852.01

**SECOND CLAIM**

**(FRAUD AGAINST DEFENDANTS XANDROS, BEGO, LGP AND ROSEMAN)**

41.     Lindows.com hereby refers to and incorporates by reference paragraphs 1 through 40, inclusive, of this Complaint.

42.     The above-referenced representations in paragraphs 15 through 19 regarding the financial commitments from LGP and/or its venture capital partners was material, false, and misleading.

43.     At the time that each of Bego, Roseman, LGP and Xandros made, acknowledged, or approved each of the above-referenced representations, each of them knew that the representations were in fact false and misleading.

44.     At the time that each of Bego, Roseman, LGP and Xandros made, acknowledged, or approved each of the representations concerning LGP, its venture capital partners, or the financial health of Xandros, each of them intended, expected, and should have foreseen that Plaintiff would in fact rely on such representations in executing the Convertible Securities.

45.     In executing the Convertible Securities listed above, Plaintiff reasonably relied on the above misrepresentations.

46.     As an actual and proximate result of Defendants' fraudulent misrepresentations, Lindows.com has been injured in an amount to be proven at trial.

**THIRD CLAIM**

**(NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS XANDROS, BEGO, LGP AND ROSEMAN)**

47.     Lindows.com hereby refers to and incorporates by reference paragraphs 1 through 46, inclusive, of this Complaint.

48.     Both prior and subsequent to execution of the Convertible Securities, Lindows.com requested of each of Xandros, LGP, Bego and Roseman full and truthful disclosure of information regarding relevant facts relating to the business prospects, direction, and financial health of Xandros, which information Xandros and LGP failed and

9

1    refused to provide.

2         49.    Each of Bego, Roseman, LGP and Xandros owed a duty to Plaintiff

3    Lindows.com to provide full and truthful disclosure of all relevant facts relating to the

4    financial health of Xandros, including facts relating to the relationship between LGP and

5    Xandros detailed in paragraphs 29 through 32 above, the financial LGP commitment to

6    Xandros as well as facts relating to Xandros accountings, business prospects, outside

7    financing, and other relevant matters.

8         50.    In fact, Bego, Roseman, LGP and Xandros intentionally, negligently

9    and recklessly breached their duty of full and truthful disclosure of all relevant facts by:

10                    a.    failing to provide full and truthful disclosure of all

11                    relevant facts relating to the relationship between LGP and

12                    Xandros, the financial health of Xandros, LGP's financial

13                    commitment to Xandros as well as facts relating to Xandros

14                    accountings, business prospects, outside financing, and other

15                    relevant matters; and

16                    b.    making other and further misrepresentations or

17                    omissions.

18         51.    Each of the aboverefenced omissions and misrepresentations was in

19    fact material, false, and misleading.

20         52.    At the time that each Defendant made each of the representations or

21    omissions detailed above, Defendants intended, expected, and should have foreseen that

22    Plaintiff would in fact rely on such representations, including in executing the Convertible

23    Securities and in continuing to conduct business with Xandros.

24         53.    In executing the Convertible Securities and continuing to conduct

25    business with Xandros, Plaintiff reasonably relied on Defendants' above misrepresentations

26    and omissions.

27         54.    As an actual and proximate result of Defendants' negligent

28    misrepresentations, Lindows.com has been injured in an amount to be proven at trial.

10

## FOURTH CLAIM

## (BREACH OF CONTRACT REGARDING THE CONVERTIBLE
## SECURITIES AGAINST DEFENDANT XANDROS)

55.     Lindows.com hereby refers to and incorporates by reference paragraphs 1 through 54, inclusive, of this Complaint.

56.     Lindows.com and Xandros entered into the Convertible Securities as described above on or about November 20, 2001 and December 6, 2001.

57.     The Convertible Securities required Defendant Xandros to make payment in the amount of $250,000, in addition to interest in the amount of 8% per annum, on the "Due Date" described in the each respective Convertible Security.

58.     Each of the Convertible Securities remains due and payable as no conversion pursuant to paragraph 3.1, 3.2, or 3.3 of each of the Convertible Securities has occurred.

59.     Xandros failed to deliver written notice to Lindows.com "at least 15 days prior to the expected closing" of any "Equity Financing" as that term is defined in paragraph 3.1 of each of the Convertible Securities.

60.     As of this date, no "Equity Financing" as that term is defined in paragraph 3.1 of the Notes, has occurred.

61.     Pursuant to paragraph 1.2 of the November 20 Note, on December 3, 2002, Lindows.com demanded payment of all sums due under the Note on December 9, 2002; an amount equal to $271,041.10. As of this date, Defendant Xandros has failed and refused to pay any sums due, including but not limited to the principal described above, in addition to any and all interest on said sums.

62.     Pursuant to paragraph 1.2 of the December 6 Note, on December 5, 2002 Lindows.com demanded payment of all sums due under the Note as of December 11, 2002; an amount equal to $270,273.95. As of this date, Defendant Xandros has failed and refused to pay any sums due, including but not limited to the principal described above, in addition to any and all interest on said sums.

11

63.     Lindows.com has at all times fully complied with any and all of its obligations under the Convertible Securities.

64.     As an actual and proximate result of Defendant's breach of the Convertible Securities, Lindows.com has been injured in an amount equal to all principal and interest due under said Notes, the exact amount to be proven at trial.

## FIFTH CLAIM

### (RESCISSION AGAINST DEFENDANT XANDROS; CAL CIV. C. SECTION 1689)

65.     Lindows.com hereby refers to and incorporates by reference paragraphs 1 through 64, inclusive, of this Complaint.

66.     The misrepresentations and omissions made by Xandros and detailed above were each in fact false and fraudulent when they were made as described above, and Xandros made them with the intent to deceive Lindows.com to enter into the Convertible Securities.

67.     Xandros knew that the misrepresentations and omissions were false and fraudulent when made.

68.     Plaintiff Lindows.com justifiably relied on the misrepresentations in executing the Convertible Securities such that any consent to enter into the Convertible Securities given by Lindows.com was in fact induced by the fraudulent misrepresentations and the nondisclosure of material facts, entitling Lindows.com to rescind the Agreements pursuant to California Civil Code §1689(b)(1).

69.     In addition, the misrepresentations and omissions made in violation of the Securities Act of 1934 has rendered the Convertible Securities void and unlawful.

70.     In addition, the public interest would be injured if the Convertible Securities were not rescinded.

71.     Pursuant to the provisions of Civil Code §1689(b)(1), Lindows.com is entitled to rescind the Convertible Securities and elects to do so by the notice provided in this Complaint pursuant to Cal. Civ. C. §1691.

12

72.   In addition, as an actual and proximate result of Defendants' intentional and negligent misrepresentations, Lindows.com is entitled to restitution in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Lindows.com prays that judgment be entered by this Court in its favor and against the Defendants, providing the following relief:

A.   On such causes of action that entitle the Plaintiff to such relief, for damages, rescission, restitution and disgorgement of all amounts wrongfully obtained by Defendants;

B.   For pre-judgment interest at the maximum rate allowable by law according to proof at trial;

C.   For punitive and exemplary damages subject to proof at trial on such causes of action in which punitive damages are capable of being awarded;

D.   For costs of suit and attorneys fees incurred herein; and

E.   For such other and further relief as this court may deem proper.

DATED:  December 13, 2002

BROBECK, PHLEGER & HARRISON LLP

By _____
Michael S. Kagnoff
Attorneys for Plaintiff
LINDOWS.COM, INC.

SDILIB1\CS05\
467852.01

COMPLAINT FOR VIOLATION OF SECURITIES LAWS, FRAUD, BREACH OF CONTRACT, RESCISSION

1

## DEMAND FOR JURY TRIAL

2        Pursuant to the Federal Rules of Civil Procedure, Plaintiff Lindows.com respectfully

3 demands a trial by jury.

4

5 DATED:  December 13, 2002           BROBECK, PHLEGER & HARRISON LLP

6

7

8 By _____
         Michael S. Kagnoff

9          Attorneys for Plaintiff
         LINDOWS.COM, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SDILIB1\CS05\
467852.01

COMPLAINT FOR VIOLATION OF SECURITIES LAWS, FRAUD, BREACH OF CONTRACT, RESCISSION



news

media

→ releases

archive

home    products    support    about xandros    store

# August 29, 2001

## Xandros Announces Strategic Licensing Agreement with Corel Corporation

*Licensing deal and $10 million commitment from Linux Global Partners t backbone of Xandros' go to market strategy.*

August 29, 2001 - San Francisco, CA - Xandros Corporation today annou that it has signed a strategic licensing agreement with Corel Corporatior it access to Corel's Linux desktop OS and related technologies. The newl formed company will focus on developing the desktop and server marke assistance from its founding parent, Linux Global Partners.

Xandros has secured a $10 million capital commitment from NY-based L Global Partners, a Linux-specific investment company with financial hold several key desktop application companies. The new company will be headquartered in Ottawa, Canada and has already retained a majority o original software architects of the award-winning Corel Linux operating :

"Xandros combines the best of open source technologies with a corporat attention to completeness, usability, and support to benefit the end usei Michael A. Bego, president of Xandros. "We believe Xandros has all the elements necessary to deliver an outstanding desktop experience to customers," Bego added.

Bego explained that the resulting combination of technology and usabilit provide an easy-to-install and easy-to-use solution. This positions Xandi viable alternative to the Windows operating system and also marks the i end-to-end Linux desktop that will better meet the needs of its current u well as potential users.

The Xandros distribution is scheduled for release in the coming months i retail for a fraction of the cost of the comparable Windows OS and applic Bego said that the software will ship with a full suite of productivity tool: providers, and the variety of drivers, and applications that users need ai expect. In addition, Xandros officials see great promise in that the applic contained within the Linux Global Partners' portfolio companies currently with 62 percent of the Linux computers sold today and have significant recognition with users.

"For the past three years, before Linux was a common name, we were identifying and financially supporting the leading Linux desktop applicati companies in development," said Wm. J. Roseman, co-chairman of Linu: Partners. "We are now working to incorporate our portfolio companies ir Xandros OS which will provide a complete desktop application for Linux.

"Today's announcement represents the start of a new chapter for Corel's
desktop and fulfills a promise Corel made earlier this year when we ann
our intention to spin off the Linux distribution component of our busines
Rene Schmidt, chief technology officer at Corel Corporation. " We are pl
entrust this technology to a company which is fully dedicated to deliverii
end-to-end solution to customers.

We believe this decision is in the best interests of customers and shareh
since it allows Xandros to carry the technology forward and, in turn, allo
Corel to maintain its singular focus on an aggressive new growth strateg
announced in January of this year."

Under the terms of the deal, Corel will receive an undisclosed amount of
along with a 5 percent equity stake in Xandros and a 2 percent equity st
Linux Global Partners. Xandros will have unlimited rights of use to the C
Linux desktop OS and related technologies for a period of eighteen mon

**About Xandros**

Xandros is creating a desktop solution that will combine the best of oper
technologies with a corporate attention to completeness, usability, and s
It is based on v3.0 of the award-winning Corel Linux OS and represents
next step in the evolution of the desktop. Furthermore, Xandros will be
unveiling server and enterprise management solutions in 2002.

Based in Ottawa, the Xandros team includes the world-renowned develo
and architects of the award-winning Corel Linux OS. The first release of
Xandros' desktop will come in early 2002. Xandros is inheriting a sizeabl
base from Corel Linux OS from which it plans on significantly expanding
market presence. Xandros is currently developing its direct and indirect
distribution channels for corporate, government, home, and educational
worldwide.

contact us | legal | privacy



**EXHIBIT B**

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED BY THE HOLDER HEREOF FOR ITS OWN ACCOUNT FOR INVESTMENT WITH NO INTENTION OF MAKING OR CAUSING TO BE MADE A PUBLIC DISTRIBUTION OF ALL OR ANY PORTION THEREOF. SUCH SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED.

$250,000.00

San Diego, California
November 20 2001

## XANDROS, INC.

## CONVERTIBLE PROMISSORY NOTE

Xandros, Inc., a Delaware corporation (the "Maker"), for value received, hereby promises to pay to Lindows.com, Inc., a Delaware corporation (the "Holder"), the principal amount of Two Hundred Fifty Thousand Dollars ($250,000) (the "Issue Price"), together with interest on the unpaid amount thereof in accordance with the terms hereof, from the date hereof until paid or converted in accordance with the terms hereof.

1.    Convertible Promissory Note ("Note").

1.1    Interest Rate. The rate of interest hereunder ("Interest Rate") shall equal eight percent (8.0%) per annum and shall be computed on the basis of a 365 day year for the actual number of days elapsed; provided that in no event shall the interest rate be less than the minimum rate of interest required in order to avoid the imputation of interest for federal income tax purposes.

1.2    Payment. Subject to the provisions of Section 2 regarding an Acquisition and Section 3 regarding conversion of this Note, the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum on the earlier of (a) five (5) days notice of demand after November 20, 2002 (the "Due Date") or (b) immediately upon the closing of an Acquisition (as defined below). The Maker may at any time prepay in whole or in part the principal and interest accrued under this Note. Any payment will be applied first to the payment of any and all accrued and unpaid interest through the payment date and second to the payment of principal remaining due hereunder. Payment shall be made at the offices or residence of the Holder, or at such other place as the Holder shall have designated to the Maker in writing, in lawful money of the United States of America.

1.3    Letter Agreement. Of even date herewith, the Holder and Xandros Corporation, a wholly owned subsidiary of the Maker, are entering into a side letter agreement regarding this Note and future investments in the Maker by the Holder.

2.    Acquisition. In the event the Maker is to be acquired, whether by means of a merger, sale of all or substantially all of the assets of the Maker, sale of more than fifty percent (50%) of the Maker's outstanding securities or otherwise, prior to the Due Date, the date of any Equity Financing and the Optional Conversion Date (an "Acquisition"), then the Issue Price plus

all accrued but previously unpaid interest thereon shall become due and payable in one lump sum immediately upon the closing of such Acquisition.

> 3.    Conversion.

>> 3.1    Automatic Conversion.  Upon the closing of a bona fide equity financing (an "Equity Financing") of the Maker of at least Two Hundred Fifty Thousand Dollars ($250,000), excluding conversion of this Note, in which shares of a series of the Maker's Preferred Stock are issued, the sum of the Issue Price of this Note plus all accrued but unpaid interest thereon (the "Conversion Amount") shall be converted into that number of fully paid and nonassessable shares of the equity security of the Maker sold in the Equity Financing (the "New Equity Shares") as is equal to the Conversion Amount divided by the lesser of the following (the "Automatic Conversion Price"):

>>> (a)    If the Equity Financing is at a pre-money enterprise valuation of the Maker of no greater than Fifteen Million Dollars ($15,000,000), the per share purchase price of the New Equity Shares in the Equity Financing.

>>> (b)    If the Equity Financing is at a pre-money enterprise valuation of the Maker of greater than Fifteen Million Dollars ($15,000,000), the per share price determined by assuming the Equity Financing was at a pre-money enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000).

>> 3.2    Optional Conversion.  In the event that the Maker does not consummate an Equity Financing prior to May 2Q, 2002 (the "Optional Conversion Date"), the Holder shall have the right to convert the Conversion Amount into shares of Series A Preferred Stock (the "Optional Conversion Shares") of the Maker, the rights, preferences and privileges of which shall be negotiated in good faith by the Maker and the Holder, at the Optional Conversion Date (an "Optional Conversion"), at a per share price (the "Optional Conversion Price") determined by assuming an enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000). On the Optional Conversion Date, the number of shares of Series A Preferred Stock into which this Note may be converted is determined by dividing the Conversion Amount by the by the Optional Conversion Price.  Prior to the Optional Conversion Date the Maker shall take all necessary steps to validly authorize the shares of Series A Preferred Stock to be issued upon the Optional Conversion Date.

>> 3.3    Conversion Procedure.

>>> (a)    The Maker shall provide the Holder written notice at least fifteen (15) days prior to the expected closing of an Equity Financing.

>>> (b)    In the event of an Equity Financing, the Note shall convert automatically on the closing of the Equity Financing (the "Automatic Conversion Date") without any further action by the Holder hereof.

>>> (c)    In order to exercise the Optional Conversion privilege under Paragraph 3.2, the Holder shall provide the Maker at least five (5) days prior to the Optional Conversion Date written notice in form reasonably satisfactory to the Maker that the Holder elects to convert

the Note on the Optional Conversion Date. The Holder shall surrender the original Note for conversion on the Optional Conversion Date.

3.4   Termination of Rights Upon Conversion. Any conversion of this Note shall be deemed effective on the Automatic Conversion Date or Optional Conversion Date, as applicable, and, upon conversion of this Note, the Holder of this Note shall have no further rights under this Note, whether or not this Note is surrendered.

3.5   Fractional Shares. No fractional shares of any equity securities of the Maker will be issued in connection with any conversion hereunder but rather any such fractional shares shall be rounded up to the nearest whole share.

3.6   Delivery of Stock Certificates. As promptly as practicable after any conversion of this Note, the Maker, at its expense, shall issue and deliver to the Holder of this Note a certificate or certificates evidencing the number of full New Equity Shares or Optional Conversion Shares, as applicable, issuable to the Holder upon such conversion.

4.   Miscellaneous.

4.1   Transfer of Note. This Note shall not be transferable or assignable in any manner and no interest shall be pledged or otherwise encumbered by the Holder without the consent of the Maker, which consent shall not be unreasonably withheld.

4.2   Titles and Subtitles. The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

4.3   Notices. All notices and other communications provided for hereunder shall be in writing and shall be delivered personally, by overnight delivery service or by facsimile, with confirmation of receipt, addressed as set forth on the signature page hereto. Either party hereto may by like notice specify or change an address to which notices and communications shall thereafter be sent. Notices sent by facsimile shall be effective upon confirmation of receipt, notices sent by overnight delivery service shall be effective upon receipt, and notices given personally shall be effective when delivered.

4.4   Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

4.5   Amendments and Waivers. This Note may be amended and the observance of any other term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Holder. The Maker waives presentment, demand for performance, notice of nonperformance, protest, notice of protest, and notice of dishonor. No delay on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right under this Note.

4.6   Severability. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the

balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

       4.7   <u>Governing Law</u>. This Note shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to its conflicts of laws principles.

       4.8   <u>Counterparts</u>. This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

       Executed as of the date first written above.

               **MAKER:**
               XANDROS, INC.,
               a Delaware corporation

               By: _____
               Title: PRESIDENT
               Name: MICHAEL A. BACO
               Address:    1410 Blair Place, Suite 600
                             Ottawa, Ontario K1J 9B9, Canada

ACKNOWLEDGED AND AGREED:

**HOLDER:**
LINDOWS.COM, INC.,
a Delaware corporation

By: _____
Title: PRESIDENT
Name: KEVIN CARMONY
Address:    4350 La Jolla Village Dr., Suite 450
              San Diego, CA 92122

EXH _B_ PG _20_

**EXHIBIT  C**

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED BY THE HOLDER HEREOF FOR ITS OWN ACCOUNT FOR INVESTMENT WITH NO INTENTION OF MAKING OR CAUSING TO BE MADE A PUBLIC DISTRIBUTION OF ALL OR ANY PORTION THEREOF. SUCH SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED.

$250,000.00                                                         San Diego, California
                                                                   December 6, 2001

## XANDROS, INC.

## CONVERTIBLE PROMISSORY NOTE

Xandros, Inc., a Delaware corporation (the "Maker"), for value received, hereby promises to pay to Lindows.com, Inc., a Delaware corporation (the "Holder"), the principal amount of Two Hundred Fifty Thousand Dollars ($250,000) (the "Issue Price"), together with interest on the unpaid amount thereof in accordance with the terms hereof, from the date hereof until paid or converted in accordance with the terms hereof.

1.    Convertible Promissory Note ("Note").

        1.1    Interest Rate.  The rate of interest hereunder ("Interest Rate") shall equal eight percent (8.0%) per annum and shall be computed on the basis of a 365 day year for the actual number of days elapsed; provided that in no event shall the interest rate be less than the minimum rate of interest required in order to avoid the imputation of interest for federal income tax purposes.

        1.2    Payment.  Subject to the provisions of Section 2 regarding an Acquisition and Section 3 regarding conversion of this Note, the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum on the earlier of (a) five (5) days notice of demand (the "Due Date") after December 5, 2002 or (b) immediately upon the closing of an Acquisition (as defined below).  The Maker may not at any time prepay in whole or in part the principal and interest accrued under this Note without the prior written consent of the Holder.  Any payment will be applied first to the payment of any and all accrued and unpaid interest through the payment date and second to the payment of principal remaining due hereunder.  Payment shall be made at the offices or residence of the Holder, or at such other place as the Holder shall have designated to the Maker in writing, in lawful money of the United States of America.

        1.3    Amendment of Letter Agreement.  Of even date herewith, the Holder and the Maker are amending that certain letter agreement dated November __, 2001, by and among the Holder, the Maker and Xandros Corporation, a wholly owned subsidiary of the Maker.

2.    Acquisition.  In the event the Maker is to be acquired, whether by means of a merger, sale of all or substantially all of the assets of the Maker, sale of more than fifty percent (50%) of the Maker's outstanding securities or otherwise, prior to the Due Date, the date of any

Equity Financing and the Optional Conversion Date (an "Acquisition"), then the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum immediately upon the closing of such Acquisition.

3.      Conversion.

3.1     Automatic Conversion.  Upon the closing of a bona fide equity financing (an "Equity Financing") of the Maker of at least Two Hundred Fifty Thousand Dollars ($250,000), excluding conversion of this Note, in which shares of a series of the Maker's Preferred Stock are issued, the sum of the Issue Price of this Note plus all accrued but unpaid interest thereon (the "Conversion Amount") shall be converted into that number of fully paid and nonassessable shares of the equity security of the Maker sold in the Equity Financing (the "New Equity Shares") as is equal to the Conversion Amount divided by the lesser of the following (the "Automatic Conversion Price"):

(a)     If the Equity Financing is at a pre-money enterprise valuation of the Maker of no greater than Fifteen Million Dollars ($15,000,000), the per share purchase price of the New Equity Shares in the Equity Financing.

(b)     If the Equity Financing is at a pre-money enterprise valuation of the Maker of greater than Fifteen Million Dollars ($15,000,000), the per share price determined by assuming the Equity Financing was at a pre-money enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000).

3.2     Optional Conversion.  In the event that the Maker does not consummate an Equity Financing prior to May __, 2002 (the "Optional Conversion Date"), the Holder shall have the right to convert the Conversion Amount into shares of Series A Preferred Stock (the "Optional Conversion Shares") of the Maker, the rights, preferences and privileges of which shall be negotiated in good faith by the Maker and the Holder, at the Optional Conversion Date (an "Optional Conversion"), at a per share price (the "Optional Conversion Price") determined by assuming an enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000). On the Optional Conversion Date, the number of shares of Series A Preferred Stock into which this Note may be converted is determined by dividing the Conversion Amount by the by the Optional Conversion Price.  Prior to the Optional Conversion Date the Maker shall take all necessary steps to validly authorize the shares of Series A Preferred Stock to be issued upon the Optional Conversion Date.

3.3     Conversion Procedure.

(a)     The Maker shall provide the Holder written notice at least fifteen (15) days prior to the expected closing of an Equity Financing.

(b)     In the event of an Equity Financing, the Note shall convert automatically on the closing of the Equity Financing (the "Automatic Conversion Date") without any further action by the Holder hereof.

(c)     In order to exercise the Optional Conversion privilege under Paragraph 3.2, the Holder shall provide the Maker at least five (5) days prior to the Optional Conversion

Date written notice in form reasonably satisfactory to the Maker that the Holder elects to convert the Note on the Optional Conversion Date. The Holder shall surrender the original Note for conversion on the Optional Conversion Date.

       3.4    Termination of Rights Upon Conversion. Any conversion of this Note shall be deemed effective on the Automatic Conversion Date or Optional Conversion Date, as applicable, and, upon conversion of this Note, the Holder of this Note shall have no further rights under this Note, whether or not this Note is surrendered.

       3.5    Fractional Shares. No fractional shares of any equity securities of the Maker will be issued in connection with any conversion hereunder but rather any such fractional shares shall be rounded up to the nearest whole share.

       3.6    Delivery of Stock Certificates. As promptly as practicable after any conversion of this Note, the Maker, at its expense, shall issue and deliver to the Holder of this Note a certificate or certificates evidencing the number of full New Equity Shares or Optional Conversion Shares, as applicable, issuable to the Holder upon such conversion.

   4.    Miscellaneous.

       4.1    Transfer of Note. This Note shall not be transferable or assignable in any manner and no interest shall be pledged or otherwise encumbered by the Holder without the consent of the Maker, which consent shall not be unreasonably withheld.

       4.2    Titles and Subtitles. The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

       4.3    Notices. All notices and other communications provided for hereunder shall be in writing and shall be delivered personally, by overnight delivery service or by facsimile, with confirmation of receipt, addressed as set forth on the signature page hereto. Either party hereto may by like notice specify or change an address to which notices and communications shall thereafter be sent. Notices sent by facsimile shall be effective upon confirmation of receipt, notices sent by overnight delivery service shall be effective upon receipt, and notices given personally shall be effective when delivered.

       4.4    Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

       4.5    Amendments and Waivers. This Note may be amended and the observance of any other term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Holder. The Maker waives presentment, demand for performance, notice of nonperformance, protest, notice of protest, and notice of dishonor. No delay on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right under this Note.

       4.6    Severability. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the

balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

      4.7    <u>Governing Law</u>.  This Note shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to its conflicts of laws principles.

      4.8    <u>Counterparts</u>.  This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Executed as of the date first written above.

MAKER:

XANDROS, INC.,
a Delaware corporation

By: _____
Title: _____PRESIDENT_____
Name: ___MICHAEL A. BEGO___
Address:     1410 Blair Place, Suite 600
               Ottawa, Ontario K1J 9B9, Canada


ACKNOWLEDGED AND AGREED:

HOLDER:

LINDOWS.COM, INC.,
a Delaware corporation

By: _____
Title: _____Pres._____
Name: ___Kevin Carmony_____
Address:     4350 La Jolla Village Dr., Suite 450
               San Diego, CA 92122

4

**JS 44**
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

LINDOWS.COM, INC., a Delaware corporation

## DEFENDANTS

XANDROS, INC., a Delaware corporation;
LINUX GLOBAL PARTNERS, INC., a Delaware
corporation; MICHAEL BEGO, an individual;
WILLIAM JAY ROSEMAN, an individual

**'02 CV 2460 BTM(RBB)**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

BROBECK, PHLEGER & HARRISON LLP
12390 El Camino Real
San Diego CA 92130
858 720 2555

ATTORNEYS (IF KNOWN)

DEC 13 2002

**ORIGINAL**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

VIOLATION OF SECURITIES ACT OF 1934; 15 U.S.C. 78(a) et seq.; FRAUD; BREACH OF CONTRACT

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   DEMAND $ 750,000   CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   Docket Number _____

DATE   December 13, 2002

SIGNATURE OF ATTORNEY OF RECORD   Michael S. Kagnoff

\\ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

RD $150.00   12/16/02   #89499 RD