















AXR    2/20/03    9:04

3:02-CV-02460    LINDOWS.COM INC V. XANDROS INC

*20*

*P/A.*

LA BELLA & McNAMARA LLP
THOMAS W. McNAMARA (SBN 127280)
ANDREW W. ROBERTSON (SBN 062541)
401 West "A" Street, Suite 2300
San Diego, California  92101
(619) 696-9200

Attorneys for Defendants XANDROS, INC.; LINUX GLOBAL
            PARTNERS, INC.; MICHAEL BEGO; WILLIAM JAY
            ROSEMAN

FILED

03 FEB 19  PH 4: 00

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDOWS.COM, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>            v.<br><br>XANDROS, INC., a Delaware corporation;<br>LINUX GLOBAL PARTNERS, INC., a<br>Delaware corporation; MICHAEL BEGO,<br>an individual; WILLIAM JAY ROSEMAN,<br>an individual,<br><br>                    Defendants. | Case No.:  02 CV 2460 BTM (RBB)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION**<br><br>**[No Oral Argument Unless Requested by the Court]**<br><br>Date:    April 18, 2003<br>Time:    11:00 a.m.<br>Courtroom: 15 |

02CV2460
Memorandum of Points and Authorities re: Motion
to Compel Arbitration and Dismiss or Stay Action

1  Plaintiff sues on two Convertible Promissory Notes which were integral parts

2  of a comprehensive business alliance documented in a Strategic Alliance Agreement.

3  The Strategic Alliance Agreement includes an arbitration clause which requires

4  controversies "arising out of or related to" the agreement be resolved by arbitration.

5  Plaintiff ignores the Strategic Alliance Agreement all together and seeks to break

6  apart and litigate selective parts of the alliance.  This tactic is calculated to avoid the

7  parties' bargained-for arbitration.  Defendants move to compel the arbitration the

8  parties agreed upon.

9  I.

10  **FACTUAL BACKGROUND**

11  Plaintiff Lindows.com and Defendant Xandros, Inc. are both computer

12  software companies involved in the development of Linux-based computer operating

13  systems which are easier to use than other systems, including Microsoft Windows.

14  (Complaint, Paras. 8, 9.)

15  Defendant  Linux Global Partners is a holding company which invests in

16  Linux developers, including Xandros.  Defendants Michael Bego and William

17  Roseman are employees of Xandros and Linux Global Partners. (Complaint, Paras.

18  9-11.)

19  As set forth in the Declaration of Michael Bego filed herewith ("Bego

20  Declaration"), in November, 2001, Lindows.com and Xandros commenced an

21  alliance with multiple components, including software development, intellectual

22  property sharing, patent licensing, financing, revenue sharing, consulting services,

23  product marketing, and equity investment.  That alliance was documented in a

24  Strategic Alliance Agreement dated November 20, 2001 (Exhibit A to Bego

25  Declaration).  Under that agreement, Xandros licensed to Lindows.com its Linux

26  operating system and was to be compensated through a revenue sharing formula.

27  / / /

28  / / /

1                                    02CV2460
Memorandum of Points and Authorities re: Motion
to Compel Arbitration and Dismiss or Stay Action

The Strategic Alliance Agreement contains an arbitration provision as follows:

> 16.3 Arbitration. Except that the parties shall be entitled to apply to the courts for mandatory or injunctive equitable relief, **any controversy or claim arising out of or relating to this Agreement, or the breach thereof, will be settled by arbitration** before three (3) arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the reward rendered by the arbitrators may be entered in any court having jurisdiction thereof. Arbitrators shall be entitled to grant equitable relief as well as damages. The arbitration will be held in San Diego, California. (Emphasis added)

In connection with that alliance, Lindows.com advanced to Xandros a total of $750,000 in three payments as advances on, and credits to, the revenue sharing. These advances were documented by three Convertible Promissory Notes (the "Convertible Notes"), each in the amount of $250,000, dated November 20, 2001, December 6, 2001 and December 21, 2001. (Exhibits B, D, and F, respectively, to Bego Declaration.) These Convertible Notes provide complex provisions for conversion to equity in Xandros subject to the achievement of certain financing and/or acquisition milestones.

The first Convertible Note, the Strategic Alliance Agreement, as well as a side letter agreement, were all executed on November 20, 2001. The Convertible Note specifically references the "side letter agreement" of the same date. That side letter agreement (Exhibit C, Paragraph 1.3, Letter Agreement, to Bego Declaration) relates to future investment by Lindows.com in Xandros and confirms that the cash advances and the corresponding Convertible Notes are intertwined with and an integral part of the overall alliance relationship[1]. The letter recites in part:

> This Agreement is being entered into in connection with that certain Strategic Alliance agreement ...of even date herewith between Sub [Xandros] and Lindows, and that certain Convertible Promissory Note...of even date

---

[1] As recited at Para. 5 of the Bego Declaration, Defendants are not in possession of an executed copy of the November 20, 2001 side letter agreement. If Defendants are unable to secure a copy of this letter from Plaintiff on a voluntary basis, they will ask this Court to order Plaintiff to provide the letter through expedited discovery.

1   herewith issued by Xandros to Lindows in the principal
2   amount of Two Hundred Fifty Thousand Dollars
    ($250,000).

3   The side letter further provides that the payments of $250,000 are triggered by

4   the achievement of development milestones under the Strategic Alliance Agreement

5   and that such payments are to be credited as pre-payment amounts under the

6   revenue sharing provisions of the Strategic Alliance Agreement.

7   The side letter agreement also identifies three additional tiers of potential

8   future Lindows.com investment in Xandros – Preferred Stock Investment, Preview

9   Release Investment and Xandros Operating System Investment – all of which are

10   tied to various milestones intertwined with the Strategic Alliance Agreement.

11   On December 6, 2001, the side letter agreement was amended by a second

12   side letter agreement (Exhibit E to Bego Declaration).  This second side letter

13   agreement incorporates the terms of the Strategic Alliance Agreement, specifically

14   references the second Convertible Note in the amount of $250,000, adjusts the

15   delivery date for the Preview Release (which is defined in the Strategic Alliance

16   Agreement), and reduces the amount of the Preview Release Investment to

17   $250,000.  In all, it further confirms that the Convertible Note transactions were part

18   of an integrated alliance.

19   ## II.

20   ## PLAINTIFF'S COMPLAINT

21   Plaintiff's Complaint makes no reference to the Strategic Alliance Agreement

22   and seeks to litigate on two of the three Convertible Notes by casting them as if they

23   were non-performing bank loans unrelated to any larger alliance.

24   While Plaintiff omits any reference to the Strategic Alliance Agreement, it does

25   cryptically admit there were multiple agreements in negotiation:

26
27   14.   Beginning in August, 2001, Plaintiff Lindows.com
       and Xandros began negotiating a number of agreements
       whereby Lindows.com would assist in the financing of the
28   Xandros business.  (Complaint, Para. 14.)

3                          02CV2460
Memorandum of Points and Authorities re: Motion
to Compel Arbitration and Dismiss or Stay Action

1   Plaintiff's Complaint asserts five claims for relief – one federal securities law

2   claim and four pendent state law claims for fraud, negligent misrepresentation,

3   breach of contract, and rescission.  All five claims are premised on factual allegations

4   that Defendants misrepresented the financial condition of Xandros, including the level

5   of investment by Linux Global Partners, and that but for such misrepresentations

6   Lindows.com would not have entered into the $250,000 Convertible Notes dated

7   November 20, 2001 and December 6, 2001.

8   Plaintiff makes no allegation as to the third $250,000 Convertible Note of

9   December 21, 2001.[2]  Nor is any mention made of the side letter agreements of

10  November 20, 2001 and December 6, 2001, notwithstanding that Paragraph 1.3 of

11  both Convertible Notes makes specific reference to the "Letter Agreement."  As noted

12  above, those letter agreements confirm that the Convertible Notes were but pieces of

13  a complex alliance.

14  Given the true factual context of this dispute, Plaintiff's Complaint appears to

15  be a thinly veiled attempt to subvert an arbitration clause.  The two Convertible Notes

16  sued on in the Complaint arise from, relate to, were contemplated by and are integral

17  parts of the overall alliance established by the Strategic Alliance Agreement.

18  III.

19  **AN ORDER COMPELLING ARBITRATION IS APPROPRIATE**

20  A.   **Legal Standards**

21  The Federal Arbitration Act governs disputes involving contracts which touch

22  upon interstate commerce or maritime law,  9 U.S.C §§ 1 et seq., and federal law

23  governs the question of arbitrability.  Ever-Gotesco Resources and Holdings, Inc. v

24  Pricesmart, Inc., 192 F.Supp 2d 1040 (S.D. Cal. 2002)(citing Moses H. Cone

25

26  [2]  In its initial Complaint, Plaintiff did not include a claim on the third Convertible Note, but did
include it in its First Amended Complaint.  However, as the Court may recall, Plaintiff never served the
First Amended Complaint; instead, it sought a default judgment on the original complaint.  In any

27  event, the factual setting is the same for all three Notes:  they were entered as an integral part of the
parties' business alliance documented in the Strategic Alliance Agreement and side letters.

28

4                    02CV2460

1    Memorial Hospital v. Mercury Constr. Corp, 460 U.S. 1, 24 (1983)).

2    In recognition of the right of contracting parties to enjoy their bargained for

3    agreement to arbitrate, the Federal Arbitration Act commands that agreements to

4    arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The Supreme

5    Court has interpreted the Federal Arbitration Act as requiring that "courts must

6    rigorously enforce agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470

7    U.S. 213, 221 (1985) (emphasis added).  The Court has observed that the "liberal

8    federal policy favoring arbitration agreements," Moses H. Cone Memorial Hospital v.

9    Mercury Construction Corp., 460 U.S. 1, 24 (1983), is "at bottom a policy

10   guaranteeing the enforcement of private contractual arrangements." Mitsubishi

11   Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985).

12   The Ninth Circuit has embraced these principles. See Simula, Inc. v Autoliv,

13   Inc., 175 F.3d 716, 719 (9th Cir 1999) (any doubt concerning the scope of arbitrable

14   issues should be resolved in favor of arbitration).  Similarly, this District has adhered

15   to these principles. See Ever-Gotesco Resources, supra, 192 F.Supp.2d at 1042-

16   1043 (holding that an arbitration clause covering "all disputes" arising in connection

17   with the parties' agreement precluded suit).  California has likewise adopted a  policy

18   in favor of arbitration and the enforcement of contractual arbitration provisions. See

19   California Code of Civil Procedure §§ 1280, et seq. See also Moncharsh v. Heily &

20   Blase, 3 Cal.4th 1, 9 (1992) (through statute, Legislature has expressed strong pubic

21   policy in favor of arbitration as speedy and inexpensive means of dispute resolution);

22   Discover Bank v. Superior Court, 105 Cal.App.4th 326, 344 (2003) (California law

23   favors enforcement of valid arbitration agreements).

24   **B.    The Claims Asserted in Plaintiff's Complaint Arise Out Of And Relate To
         The Strategic Alliance Agreement**

25

26   The arbitration clause in the Strategic Alliance Agreement calls for arbitration

27   of "any controversy or claim arising out of or relating to this Agreement."  Almost forty

28   years ago, the Supreme Court held that an identical arbitration clause was quite

5                              02CV2460
Memorandum of Points and Authorities re: Motion
to Compel Arbitration and Dismiss or Stay Action

broad and encompassed not only claims for breach of contract, but also claims for tort, and other claims relating to the underlying document. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) (arbitration clause providing coverage for claims "relating to" consulting agreement covers claim for fraudulent inducement into the contract); see also Tracer Research Corp. v. National Envtl. Servs.Co, Research Corp. v. National Envtl. Servs. Co., 42 F.3d 1292, 1295 (9th Cir. 1994) (noting that language such as "relating to" indicates an arbitration clause considerably broader in reach than one limited to disputes "arising out of" certain dealings); Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir.1999)(characterizing similar provision as "extremely" broad and capable of an expansive reach).

In Simula, supra, the Ninth Circuit ordered court the arbitration of antitrust, misappropriation, defamation and state trade secret claims. In doing so, the court noted that to compel arbitration, the "factual allegations need only 'touch matters' covered by the contract" and "all doubts are to be resolved in favor of arbitration." Id. at 721.[3]

Even without the expansive interpretation required by the Federal Arbitration Act and case law, the claims asserted by this Plaintiff in the Complaint are clearly captured by the arbitration clause. The Convertible Notes were contemplated by, related to, arose from and were integral parts of the Strategic Alliance Agreement. As confirmed by the side letters of November 20, 2001 and December 6, 2001, the $250,000 payments were actually pre-payments of the revenue sharing in the Strategic Alliance Agreement.

## C. Linux Global Partners, Bego And Roseman Are Entitled To Arbitration

Defendants Linux Global Partners, Michael Bego and William Roseman are not parties to the Strategic Alliance Agreement. They are, however, clearly entitled to

---

[3] The appellate court also reiterated that the "standard for demonstrating arbitrability is not high," and that arbitration "agreements are to be rigorously enforced," 175 F.3d at 719.

6          02CV2460
Memorandum of Points and Authorities re: Motion
to Compel Arbitration and Dismiss or Stay Action

1  the benefit of, and may enforce, the arbitration provision of the Strategic Alliance

2  Agreement.

3       Plaintiff's Complaint alleges that Linux Global Partners is the alter ego of

4  Xandros (Complaint, Para. 29-36) and that Bego and Roseman are agents of both

5  Xandros and Linux (Complaint, Para. 11-13).

6       Federal courts have consistently afforded agents, employees, and

7  representatives the benefit of arbitration agreements entered into by their principals.

8  See, e.g., Creative Telecommunications, Inc. v. Breeden, 120 F.Supp.2d 1225 (D.

9  Hawaii 1999).  In Creative Telecommunications, Inc., the court compelled various tort

10  and fraud claims against a non-party officer to arbitration.  In doing so, the court

11  canvassed the authorities and summarized the applicability of arbitration clauses to

12  non-signatories as follows:

13          Federal courts have consistently afforded agents,
employees, and representatives the benefit of arbitration

14  agreements entered into by their principals to the extent
that the alleged misconduct relates to their behavior as

15  officers or directors or in their capacities as agents of the
corporation.  See, e.g., Britton v. Co-op Banking Group, 4

16  F.3d 742, 745 (9th Cir. 1993) (holding no standing to
compel arbitration, but noting that 'nonsignatories of

17  arbitration agreements may be bound by the agreement
under ordinary contract and agency principles') Roby v.

18  Corporation of Lloyd's, 996 F.2d 1353, 1360 (2nd Cir.
1993) (finding nonsignatories as employees or disclosed

19  agents of entity that is a party to arbitration agreement
could compel arbitration); Lee v. Chica, 983 F.2d 883, 887

20  (8th Cir. 1993) (holding that nonsignatory defendant, as
signatory's employee and agent, could be compelled to

21  arbitrate plaintiff's claims against him arising out of the
agreement.).

22  120 F.Supp. 1240-42.

23  ### IV.

24  ### A STAY AND/OR DISMISSAL IS APPROPRIATE

25       Given that Plaintiff's claims are subject to arbitration under the bargained for

26  arbitration clause, this Court lacks subject matter jurisdiction and may dismiss under

27  Federal Rule of Civil Procedure 12(b)(1).  See, e.g., Ever-Gotseco Reserves &

28

7         02CV2460
Memorandum of Points and Authorities re: Motion
to Compel Arbitration and Dismiss or Stay Action

1  Holdings, Inc. v. U.S., 192 F.Supp.2d 1040 (S.D. Cal. 2002) (arbitration compelled,

2  complaint dismissed), Simula v. Autoliv, Inc., 175 F.3d 716 (9th Cir. 1999) (arbitration

3  compelled, complaint dismissed).

4      In the alternative, the Court should stay the proceedings.  See Creative

5  Telecommunications, Inc. v. Breedon, 120 F.Supp.2d 125 (D. Hawaii 1999)

6  (arbitration compelled, action stayed).

7  **V.**

8  **CONCLUSION**

9      The parties agreed upon arbitration as the mode for the resolution of

10  controversies arising our of or relating to their Strategic Alliance Agreement.  The

11  claims in Plaintiff's Complaint invoke such controversies and are, therefore, properly

12  subject to arbitration, not litigation.

13

14  Dated: February 19, 2003       LA BELLA & McNAMARA, LLP

15                             THOMAS W. McNAMARA

16                             ANDREW W. ROBERTSON

17

18         By                     

19                             ANDREW W. ROBERTSON
                           Attorneys for Defendants XANDROS, INC.;

20                             LINUX GLOBAL PARTNERS, INC.;
                           MICHAEL BEGO; WILLIAM JAY
                           ROSEMAN

21

22

23

24

25

26

27

28

02CV2460
Memorandum of Points and Authorities re: Motion
to Compel Arbitration and Dismiss or Stay Action

1
**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

2

3
LINDOWS.COM, INC., a Delaware )   Case No.: 02 CV 2460 BTM (RBB)
corporation, )

4
Plaintiff, )   **DECLARATION OF SERVICE**

5
v. )

6
XANDROS, INC., a Delaware corporation; )
LINUX GLOBAL PARTNERS, INC., a )   Person served:  Counsel for Plaintiff

7
Delaware corporation; MICHAEL BEGO, )
an individual; WILLIAM JAY ROSEMAN, )   Date served:      February 19, 2003

8
an individual, )

9
Defendants. )

10
I, the undersigned, declare under penalty of perjury that I am over eighteen

11
years of age and not a party to this action; that I served the above-named person the
following documents:  **Notice of Motion and Motion to Compel Arbitration and
Dismiss or Stay Action; Memorandum of Points and Authorities in Support of**

12
**Motion to Compel Arbitration and Dismiss or Stay Action; Declaration of
Michael Bego; [Proposed] Order** in the following manner (check one):

13

14
1) ____By personally delivering copies to the person served.

15
2) ____By causing copies to be delivered, during usual office hours, to the office
of the person served at the address listed below and left with the person who
apparently was in charge.

16

17
3) ____By leaving copies at the dwelling house, usual place of abode, or usual
place of business of the person served in the presence of a competent
member of the household or a person apparently in charge of  his office or

18
place of business, at least 18 years of age, who was informed of the general
nature of the papers, and thereafter mailing (by first-class mail, postage

19
prepaid) copies to the person served at the place where the copies were left.

20
4) ____By placing a copy in a separate envelope, with postage fully prepaid, for
each address named below and depositing each in the U.S. Mail at San

21
Diego, California on January 24, 2003, 2003.

22
Michael S. Kagnoff, Esq.
Brobeck Phleger & Harrison

23
12390 El Camino Real
San Diego, CA  92130

24
(858) 720-2500

25
Executed on February 19, 2003, at San Diego, California.

26

27
_____
Annie S. Parrish

28

1