















AXR    2/20/03    9:04

3:02-CV-02460   LINDOWS.COM INC V. XANDROS INC

*21*

*DECL.*

1  LA BELLA & McNAMARA LLP
   THOMAS W. McNAMARA (SBN 127280)
2  ANDREW W. ROBERTSON (SBN 062541)
   401 West "A" Street, Suite 2300
3  San Diego, California  92101
   (619) 696-9200
4
   Attorneys for Defendants XANDROS, INC.; LINUX GLOBAL
5      PARTNERS, INC.; MICHAEL BEGO; WILLIAM JAY
       ROSEMAN
6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11 | LINDOWS.COM, INC., a Delaware        ) Case No.: 02 CV 2460 BTM (RBB)
   | corporation,                         )
12 |                                      )
   |              Plaintiff,              ) **DECLARATION OF MICHAEL BEGO IN**
13 |                                      ) **SUPPORT OF MOTION TO COMPEL**
   |       v.                             ) **ARBITRATION AND DISMISS OR STAY**
14 |                                      ) **ACTION**
   | XANDROS, INC., a Delaware corporation; ) **[No Oral Argument Unless Requested**
15 | LINUX GLOBAL PARTNERS, INC., a       ) **by the Court]**
   | Delaware corporation; MICHAEL BEGO,  )
16 | an individual; WILLIAM JAY ROSEMAN,  ) Date: April 18, 2003
   | an individual,                       ) Time: 11:30 a.m.
17 |                                      ) Courtroom: 15
   |              Defendants.             )
18 |                                      )
   |                                      )
19 |                                      )
   |                                      )
20 |_____)

21      I, Michael A. Bego, declare as follows:

22      1.      I am currently Vice President of Linux Global Partners, Inc. ("Linux")

23 and acting as Sales & Marketing Director of Xandros, Inc.("Xandrios").  I have been

24 employed by Linux  since July 2000 and have been working with Xandros since May

25 2001. I was the acting President of Xandros from May 2001 through May 2002. I

26 make this Declaration based on my personal knowledge and if called as a witness I

27 could and would competently testify to the facts set forth in this Declaration.

28

                                                    02CV2460
                                   Declaration of Michael Bego re: Motion to Compel
                                        Arbitration and Dismiss or Stay Action

2.     Xandros was founded in May, 2001 in Ottawa, Canada to develop Linux-based operating systems which would compete with and be compatible with Windows-based systems. In August 2001, Xandros took the first step in this direction when it acquired the Corel Linux Business Division's software development team.

3.     In August 2001, I attended the Linux World Conference in San Francisco. While there, I met with representatives of Lindows.com who expressed an interest in our products and proposed an arrangement whereby Xandros would provide Lindows.com a workable Linux solution which Lindows.com would combine with their own software.

4.     Beginning in August, 2001, on behalf of Xandros and Linux and working with Frederick Berenstein and William Roseman negotiated an arrangement with Lindows.com whereby Xandros would provide Lindows.com access to the Xandros Operating System as part of a strategic alliance. That alliance was documented and implemented in a Strategic Alliance Agreement dated November 20, 2001 ("SAA"), true and correct copy of which is attached hereto as Exhibit A. By that agreement, Lindows became a distributor of the Xandros operating system under a revenue sharing arrangement. That agreement contains an arbitration provision at paragraph 16.3.

5.     In November, 2001, Lindows advanced to Xandros $250,000 as an advance on, and a credit to, the revenue sharing in the SAA. That advance was a pre-condition for Xandros to enter into the SAA and was documented in a Convertible Promissory Note dated November 20, 2001, a true and correct copy of which is attached hereto as Exhibit B. The parties also executed a Letter Agreement dated November 20, 2001, a true and correct copy of the form of which is attached hereto as Exhibit C. I have been unable to locate a copy of that Letter Agreement signed by both parties , but I recall that I did sign it on behalf of Xandros and I am informed and believe that a signed copy is in the possession of Lindows.com.

02CV2460
Declaration of Michael Bego re: Motion to Compel
Arbitration and Dismiss or Stay Action

6.      In December, 2001, Lindows.com advanced to Xandros an additional $250,000 as an advance on, and a credit to, the revenue sharing in the SAA.  That advance was documented by a Convertible Note dated December 6, 2001, a true and correct copy of which is attached hereto as Exhibit D.  The parties also entered into an Amendment dated December 6, 2001 which amended the November 20, 2001 Letter Agreement. A true and correct copy of that amendment is attached hereto as Exhibit E.

7.      In December, 2001 Lindows.com also advanced to Xandros a third payment of $250,000 as an advance on, and a credit to, the revenue sharing in the SAA.  This advance was documented by a Convertible Note dated December 21, 2001, a true and correct copy of which is attached hereto as Exhibit F.

8.      The three advances of $250,000 each noted above were specifically related to the SAA as they were advances on payments due or to be due under the revenue sharing in the SAA.  Those payments were also tied to the achievement of milestones identified in the SAA.

I declare under penalty of perjury under the laws of the state of New York that the foregoing is true and correct.

Executed at New York, New York this 18 day of February, 2003.

Michael A. Bego

**EXHIBIT A**

**EXHIBIT B**

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED BY THE HOLDER HEREOF FOR ITS OWN ACCOUNT FOR INVESTMENT WITH NO INTENTION OF MAKING OR CAUSING TO BE MADE A PUBLIC DISTRIBUTION OF ALL OR ANY PORTION THEREOF. SUCH SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED.

$250,000.00

San Diego, California
November 29 2001

### XANDROS, INC.

### CONVERTIBLE PROMISSORY NOTE

Xandros, Inc., a Delaware corporation (the "Maker"), for value received, hereby promises to pay to Lindows.com, Inc., a Delaware corporation (the "Holder"), the principal amount of Two Hundred Fifty Thousand Dollars ($250,000) (the "Issue Price"), together with interest on the unpaid amount thereof in accordance with the terms hereof, from the date hereof until paid or converted in accordance with the terms hereof.

1.      Convertible Promissory Note ("Note").

1.1      Interest Rate. The rate of interest hereunder ("Interest Rate") shall equal eight percent (8.0%) per annum and shall be computed on the basis of a 365 day year for the actual number of days elapsed; provided that in no event shall the interest rate be less than the minimum rate of interest required in order to avoid the imputation of interest for federal income tax purposes.

1.2      Payment. Subject to the provisions of Section 2 regarding an Acquisition and Section 3 regarding conversion of this Note, the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum on the earlier of (a) five (5) days notice of demand after November 29, 2002 (the "Due Date") or (b) immediately upon the closing of an Acquisition (as defined below). The Maker may at any time prepay in whole or in part the principal and interest accrued under this Note. Any payment will be applied first to the payment of any and all accrued and unpaid interest through the payment date and second to the payment of principal remaining due hereunder. Payment shall be made at the offices or residence of the Holder, or at such other place as the Holder shall have designated to the Maker in writing, in lawful money of the United States of America.

1.3      Letter Agreement. Of even date herewith, the Holder and Xandros Corporation, a wholly owned subsidiary of the Maker, are entering into a side letter agreement regarding this Note and future investments in the Maker by the Holder.

2.      Acquisition. In the event the Maker is to be acquired, whether by means of a merger, sale of all or substantially all of the assets of the Maker, sale of more than fifty percent (50%) of the Maker's outstanding securities or otherwise, prior to the Due Date, the date of any Equity Financing and the Optional Conversion Date (an "Acquisition"), then the Issue Price plus

Exhibit B   1   of   4

all accrued but previously unpaid interest thereon shall become due and payable in one lump sum immediately upon the closing of such Acquisition.

3.    Conversion.

3.1    Automatic Conversion.  Upon the closing of a bona fide equity financing (an "Equity Financing") of the Maker of at least Two Hundred Fifty Thousand Dollars ($250,000), excluding conversion of this Note, in which shares of a series of the Maker's Preferred Stock are issued, the sum of the Issue Price of this Note plus all accrued but unpaid interest thereon (the "Conversion Amount") shall be converted into that number of fully paid and nonassessable shares of the equity security of the Maker sold in the Equity Financing (the "New Equity Shares") as is equal to the Conversion Amount divided by the lesser of the following (the "Automatic Conversion Price"):

(a)    If the Equity Financing is at a pre-money enterprise valuation of the Maker of no greater than Fifteen Million Dollars ($15,000,000), the per share purchase price of the New Equity Shares in the Equity Financing.

(b)    If the Equity Financing is at a pre-money enterprise valuation of the Maker of greater than Fifteen Million Dollars ($15,000,000), the per share price determined by assuming the Equity Financing was at a pre-money enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000).

3.2    Optional Conversion.  In the event that the Maker does not consummate an Equity Financing prior to May 2O, 2002 (the "Optional Conversion Date"), the Holder shall have the right to convert the Conversion Amount into shares of Series A Preferred Stock (the "Optional Conversion Shares") of the Maker, the rights, preferences and privileges of which shall be negotiated in good faith by the Maker and the Holder, at the Optional Conversion Date (an "Optional Conversion"), at a per share price (the "Optional Conversion Price") determined by assuming an enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000). On the Optional Conversion Date, the number of shares of Series A Preferred Stock into which this Note may be converted is determined by dividing the Conversion Amount by the by the Optional Conversion Price.  Prior to the Optional Conversion Date the Maker shall take all necessary steps to validly authorize the shares of Series A Preferred Stock to be issued upon the Optional Conversion Date.

3.3    Conversion Procedure.

(a)    The Maker shall provide the Holder written notice at least fifteen (15) days prior to the expected closing of an Equity Financing.

(b)    In the event of an Equity Financing, the Note shall convert automatically on the closing of the Equity Financing (the "Automatic Conversion Date") without any further action by the Holder hereof.

(c)    In order to exercise the Optional Conversion privilege under Paragraph 3.2, the Holder shall provide the Maker at least five (5) days prior to the Optional Conversion Date written notice in form reasonably satisfactory to the Maker that the Holder elects to convert

2

the Note on the Optional Conversion Date. The Holder shall surrender the original Note for conversion on the Optional Conversion Date.

3.4     Termination of Rights Upon Conversion. Any conversion of this Note shall be deemed effective on the Automatic Conversion Date or Optional Conversion Date, as applicable, and, upon conversion of this Note, the Holder of this Note shall have no further rights under this Note, whether or not this Note is surrendered.

3.5     Fractional Shares. No fractional shares of any equity securities of the Maker will be issued in connection with any conversion hereunder but rather any such fractional shares shall be rounded up to the nearest whole share.

3.6     Delivery of Stock Certificates. As promptly as practicable after any conversion of this Note, the Maker, at its expense, shall issue and deliver to the Holder of this Note a certificate or certificates evidencing the number of full New Equity Shares or Optional Conversion Shares, as applicable, issuable to the Holder upon such conversion.

4.     Miscellaneous.

4.1     Transfer of Note. This Note shall not be transferable or assignable in any manner and no interest shall be pledged or otherwise encumbered by the Holder without the consent of the Maker, which consent shall not be unreasonably withheld.

4.2     Titles and Subtitles. The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

4.3     Notices. All notices and other communications provided for hereunder shall be in writing and shall be delivered personally, by overnight delivery service or by facsimile, with confirmation of receipt, addressed as set forth on the signature page hereto. Either party hereto may by like notice specify or change an address to which notices and communications shall thereafter be sent. Notices sent by facsimile shall be effective upon confirmation of receipt, notices sent by overnight delivery service shall be effective upon receipt, and notices given personally shall be effective when delivered.

4.4     Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

4.5     Amendments and Waivers. This Note may be amended and the observance of any other term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Holder. The Maker waives presentment, demand for performance, notice of nonperformance, protest, notice of protest, and notice of dishonor. No delay on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right under this Note.

4.6     Severability. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the

3

balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

4.7     Governing Law.  This Note shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to its conflicts of laws principles.

4.8     Counterparts.  This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Executed as of the date first written above.

MAKER:
XANDROS, INC.,
a Delaware corporation

By:     _Michael B_____
Title:  _PRESIDENT_____
Name:  _MICHAEL A. BOCO_____
Address:     1410 Blair Place, Suite 600
             Ottawa, Ontario K1J 9B9, Canada


ACKNOWLEDGED AND AGREED:

HOLDER:
LINDOWS.COM, INC.,
a Delaware corporation

By:     _____
Title:  _PRESIDENT_____
Name:  _KEVIN CARMONY_____
Address:     4350 La Jolla Village Dr., Suite 450
             San Diego, CA 92122

4

**EXHIBIT  C**

November __, 2001


Xandros, Inc.
1410 Blair Place, Suite 600
Ottawa, Ontario K1J 9B9, Canada


Xandros Corporation
1410 Blair Place, Suite 600
Ottawa, Ontario K1J 9B9, Canada

    Re:   Future Investment.

Dear _____:

    This agreement (the "Agreement") confirms our agreement regarding certain possible future investment in Xandros, Inc., a Delaware corporation ("Xandros") by Lindows.com, Inc., a Delaware corporation ("Lindows"), in connection with the achievement of certain milestones by Xandros Corporation, a company incorporated under the laws of Canada ("Sub"), as set forth below. This Agreement in being entered into in connection with that certain Strategic Alliance Agreement (the "Strategic Agreement") of even date herewith between Sub and Lindows, and that certain Convertible Promissory Note (the "Note") of even date herewith issued by Xandros to Lindows in the principal amount of Two Hundred Fifty Thousand Dollars ($250,000).

    1.    Preferred Stock Negotiation. Promptly following the execution of the Strategic Agreement, Lindows and Xandros shall negotiate in good faith the terms of a series of Preferred Stock of Xandros into which the amounts of the Note, the Preview Release Investment (defined below), if applicable, and the Xandros Operating System Investment (defined below), if applicable, shall convert.

    2.    Preview Release. In the event that, during the term of the Strategic Agreement and in no event later than December 1, 2001, the Preview Release (as defined in the Strategic Agreement) is completed by Sub (as contemplated in the Strategic Agreement) and thereafter accepted by Lindows, then, upon the written request (the "Preview Release Investment Request") of Xandros delivered to Lindows within seven (7) days after the date of the completion of the Preview Release, Lindows shall invest in Xandros up to Five Hundred Thousand Dollars ($500,000) (the "Preview Release Investment"), with the exact amount specified in the Preview Release Investment Request (the "Preview Release Investment Amount"). In consideration for the Preview Release Investment, Xandros shall issue to Lindows, either (a) a convertible promissory note in the principal amount equal to the Preview Release Investment Amount and in the same form and substance as the Note, or (b) in the event that the Note has converted in accordance with its terms, validly authorized shares of the capital stock of Xandros into which

the Note has converted at the per share price equal to the per share conversion price of the Note (as equitably adjusted for any dividends, distributions, stock splits, combinations, recapitalization, reclassification, reorganization or other event effecting the class of capital stock into which the Note converted). In no event shall Lindows be entitled to make the Preview Release Investment unless (i) the Preview Release is completed during the term of the Strategic Agreement and on or prior to December 1, 2001 and (ii) Xandros delivers to Lindows the Preview Release Investment Request within seven (7) days after the date of the completion of the Preview Release.

3.   Version 1 of the Xandros Operating System.  In the event that, during the term of the Strategic Agreement and in no event later than February 15, 2002, version 1 of the Xandros Operating System (as defined in the Strategic Agreement) is completed by Sub (as contemplated in the Strategic Agreement) and thereafter accepted by Lindows, then, upon the written request (the "Xandros Operating System Investment Request") of Xandros delivered to Lindows within seven (7) days after the date of the completion of version 1 of the Xandros Operating System, Lindows shall invest in Xandros up to Two Hundred Fifty Thousand Dollars ($250,000) (the "Xandros Operating System Investment"), with the exact amount specified in the Xandros Operating System Investment Request (the "Xandros Operating System Investment Amount"). In consideration for the Xandros Operating System Investment, Xandros shall issue to Lindows, either (a) a convertible promissory note in the principal amount equal to the Xandros Operating System Investment Amount and in the same form and substance as the Note, or (b) in the event that the Note has converted in accordance with its terms, validly authorized shares of the capital stock of Xandros into which the Note has converted, at the per share price equal to the per share conversion price of the Note (as equitably adjusted for any dividends, distributions, stock splits, combinations, recapitalization, reclassification, reorganization or other event effecting the class of capital stock into which the Note converted).  In no event shall Lindows be entitled to make the Xandros Operating System Investment unless (i) version 1 of the Xandros Operating System is completed during the term of the Strategic Agreement and on or prior to February 15, 2002 and (ii) Xandros delivers to Lindows the Xandros Operating System Investment Request within seven (7) days after the date of the completion of version 1 of the Xandros Operating System.

4.   Credit Toward Revenue Sharing.  The principal amount of the Note, the Preview Release Investment Amount (if any) and the Xandros Operating System Investment Amount (if any) shall each be credited as pre-payment amounts as owed by Lindows to Sub pursuant to Section 4 Revenue Sharing of the Strategic Agreement, if any.  The Note, the Preview Release Investment and the Xandros Operating System Investment shall collectively be referred to herein as the "Investments."

5.   Amendments and Waivers.  Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived only with the written consent of the Xandros and Lindows.

6.   Counterparts.  This Agreement may be executed in two counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7.   Governing Law.  This Agreement shall be governed by and construed under the laws of the State of California as applied to agreements among California residents entered into and to be performed entirely within California.

Very truly yours,

LINDOWS.COM, INC.

By: _____
Title: _____
Name: _____

AGREED AND ACCEPTED:

XANDROS, INC.

By: _____
Title: _____
Name: _____

XANDROS CORPORATION

By: _____
Title: _____
Name: _____

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED BY THE HOLDER HEREOF FOR ITS OWN ACCOUNT FOR INVESTMENT WITH NO INTENTION OF MAKING OR CAUSING TO BE MADE A PUBLIC DISTRIBUTION OF ALL OR ANY PORTION THEREOF. SUCH SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED.

$250,000.00

San Diego, California
December 6, 2001

## XANDROS, INC.

### CONVERTIBLE PROMISSORY NOTE

Xandros, Inc., a Delaware corporation (the "Maker"), for value received, hereby promises to pay to Lindows.com, Inc., a Delaware corporation (the "Holder"), the principal amount of Two Hundred Fifty Thousand Dollars ($250,000) (the "Issue Price"), together with interest on the unpaid amount thereof in accordance with the terms hereof, from the date hereof until paid or converted in accordance with the terms hereof.

1.      Convertible Promissory Note ("Note").

1.1      Interest Rate.  The rate of interest hereunder ("Interest Rate") shall equal eight percent (8.0%) per annum and shall be computed on the basis of a 365 day year for the actual number of days elapsed; provided that in no event shall the interest rate be less than the minimum rate of interest required in order to avoid the imputation of interest for federal income tax purposes.

1.2      Payment.  Subject to the provisions of Section 2 regarding an Acquisition and Section 3 regarding conversion of this Note, the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum on the earlier of (a) five (5) days notice of demand (the "Due Date") after December 5, 2002 or (b) immediately upon the closing of an Acquisition (as defined below). The Maker may not at any time prepay in whole or in part the principal and interest accrued under this Note without the prior written consent of the Holder. Any payment will be applied first to the payment of any and all accrued and unpaid interest through the payment date and second to the payment of principal remaining due hereunder. Payment shall be made at the offices or residence of the Holder, or at such other place as the Holder shall have designated to the Maker in writing, in lawful money of the United States of America.

1.3      Amendment of Letter Agreement. Of even date herewith, the Holder and the Maker are amending that certain letter agreement dated November __, 2001, by and among the Holder, the Maker and Xandros Corporation, a wholly owned subsidiary of the Maker.

2.      Acquisition.  In the event the Maker is to be acquired, whether by means of a merger, sale of all or substantially all of the assets of the Maker, sale of more than fifty percent (50%) of the Maker's outstanding securities or otherwise, prior to the Due Date, the date of any

SDILLR\DCP\417337.2\41737_2.DOC)

Exhibit D __1__ of __4__   MAB   KbC

Equity Financing and the Optional Conversion Date (an "Acquisition"), then the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum immediately upon the closing of such Acquisition.

3.    Conversion.

3.1    Automatic Conversion.  Upon the closing of a bona fide equity financing (an "Equity Financing") of the Maker of at least Two Hundred Fifty Thousand Dollars ($250,000), excluding conversion of this Note, in which shares of a series of the Maker's Preferred Stock are issued, the sum of the Issue Price of this Note plus all accrued but unpaid interest thereon (the "Conversion Amount") shall be converted into that number of fully paid and nonassessable shares of the equity security of the Maker sold in the Equity Financing (the "New Equity Shares") as is equal to the Conversion Amount divided by the lesser of the following (the "Automatic Conversion Price"):

(a)    If the Equity Financing is at a pre-money enterprise valuation of the Maker of no greater than Fifteen Million Dollars ($15,000,000), the per share purchase price of the New Equity Shares in the Equity Financing.

(b)    If the Equity Financing is at a pre-money enterprise valuation of the Maker of greater than Fifteen Million Dollars ($15,000,000), the per share price determined by assuming the Equity Financing was at a pre-money enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000).

3.2    Optional Conversion.  In the event that the Maker does not consummate an Equity Financing prior to May ___, 2002 (the "Optional Conversion Date"), the Holder shall have the right to convert the Conversion Amount into shares of Series A Preferred Stock (the "Optional Conversion Shares") of the Maker, the rights, preferences and privileges of which shall be negotiated in good faith by the Maker and the Holder, at the Optional Conversion Date (an "Optional Conversion"), at a per share price (the "Optional Conversion Price") determined by assuming an enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000). On the Optional Conversion Date, the number of shares of Series A Preferred Stock into which this Note may be converted is determined by dividing the Conversion Amount by the by the Optional Conversion Price.  Prior to the Optional Conversion Date the Maker shall take all necessary steps to validly authorize the shares of Series A Preferred Stock to be issued upon the Optional Conversion Date.

3.3    Conversion Procedure.

(a)    The Maker shall provide the Holder written notice at least fifteen (15) days prior to the expected closing of an Equity Financing.

(b)    In the event of an Equity Financing, the Note shall convert automatically on the closing of the Equity Financing (the "Automatic Conversion Date") without any further action by the Holder hereof.

(c)    In order to exercise the Optional Conversion privilege under Paragraph 3.2, the Holder shall provide the Maker at least five (5) days prior to the Optional Conversion

Date written notice in form reasonably satisfactory to the Maker that the Holder elects to convert the Note on the Optional Conversion Date. The Holder shall surrender the original Note for conversion on the Optional Conversion Date.

     3.4    Termination of Rights Upon Conversion. Any conversion of this Note shall be deemed effective on the Automatic Conversion Date or Optional Conversion Date, as applicable, and, upon conversion of this Note, the Holder of this Note shall have no further rights under this Note, whether or not this Note is surrendered.

     3.5    Fractional Shares. No fractional shares of any equity securities of the Maker will be issued in connection with any conversion hereunder but rather any such fractional shares shall be rounded up to the nearest whole share.

     3.6    Delivery of Stock Certificates. As promptly as practicable after any conversion of this Note, the Maker, at its expense, shall issue and deliver to the Holder of this Note a certificate or certificates evidencing the number of full New Equity Shares or Optional Conversion Shares, as applicable, issuable to the Holder upon such conversion.

    4.    Miscellaneous.

     4.1    Transfer of Note. This Note shall not be transferable or assignable in any manner and no interest shall be pledged or otherwise encumbered by the Holder without the consent of the Maker, which consent shall not be unreasonably withheld.

     4.2    Titles and Subtitles. The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

     4.3    Notices. All notices and other communications provided for hereunder shall be in writing and shall be delivered personally, by overnight delivery service or by facsimile, with confirmation of receipt, addressed as set forth on the signature page hereto. Either party hereto may by like notice specify or change an address to which notices and communications shall thereafter be sent. Notices sent by facsimile shall be effective upon confirmation of receipt, notices sent by overnight delivery service shall be effective upon receipt, and notices given personally shall be effective when delivered.

     4.4    Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

     4.5    Amendments and Waivers. This Note may be amended and the observance of any other term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Holder. The Maker waives presentment, demand for performance, notice of nonperformance, protest, notice of protest, and notice of dishonor. No delay on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right under this Note.

     4.6    Severability. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the

balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

      4.7   <u>Governing Law</u>. This Note shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to its conflicts of laws principles.

      4.8   <u>Counterparts</u>. This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

      Executed as of the date first written above.

MAKER:
XANDROS, INC.,
a Delaware corporation

By: _____
Title: _PRESIDENT_____
Name: _MICHAEL A. BEGO_____
Address:   1410 Blair Place, Suite 600
            Ottawa, Ontario K1J 9B9, Canada

ACKNOWLEDGED AND AGREED:

HOLDER:
LINDOWS.COM, INC.,
a Delaware corporation

By: _____
Title: _PRES._____
Name: _Kevin Carmony_____
Address:   4350 La Jolla Village Dr., Suite 450
            San Diego, CA 92122

EXHIBIT F

December 6, 2001

Mr. Michael Bego
Xandros, Inc.
1410 Blair Place, Suite 600
Ottawa, Ontario K1J 9B9, Canada

Re:    Amendment of Letter Agreement.

Dear Michael:

This amendment (the "Amendment") amends that certain Letter Agreement (the "Letter Agreement") regarding Future Investment dated November __, 2001 by and among Lindows.com, Inc., a Delaware corporation ("Lindows"), Xandros, Inc., a Delaware corporation ("Xandros"), and Xandros Corporation, a wholly-owned subsidiary of Xandros ("Sub"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Letter Agreement.

1.    Amendment of Paragraph 2.  In accordance with the terms of Paragraph 5 of the Letter Agreement, Paragraph 2 of the Letter Agreement is hereby amended to read in its entirety as follows:

"In the event that, during the term of the Strategic Agreement and in no event later than December 12, 2001, the Preview Release (as defined in the Strategic Agreement) is completed by Sub (as contemplated in the Strategic Agreement) and accepted by Lindows, then, upon the written request (the "Preview Release Investment Request") of Xandros delivered to Lindows within seven (7) days after the date of the completion of the Preview Release, Lindows shall invest in Xandros up to Two Hundred Fifty Thousand Dollars ($250,000) (the "Preview Release Investment"), with the exact amount specified in the Preview Release Investment Request (the "Preview Release Investment Amount"). In consideration for the Preview Release Investment, Xandros shall issue to Lindows, either (a) a convertible promissory note in the principal amount equal to the Preview Release Investment Amount and in the same form and substance as that certain Convertible Promissory Note dated December __, 2001 issued by Xandros to Lindows in the principal amount of $250,000 (the "December Note"), or (b) in the event that the December Note has converted in accordance with its terms, validly authorized shares of the capital stock of Xandros into which the December Note has converted at the per share price equal to the per share conversion price of the December Note (as equitably adjusted for any dividends, distributions, stock splits, combinations, recapitalization, reclassification, reorganization or other event effecting the class of capital stock into which the December Note converted). In no event shall Lindows be entitled to make the Preview Release Investment unless (i) the Preview Release is completed during the term of the Strategic Agreement and on or prior to

December 12, 2001 and (ii) Xandros delivers to Lindows the Preview Release
Investment Request within seven (7) days after the date of the completion of the
Preview Release."

    2.    _Effect of Amendment_.  Except as amended and set forth above, the Letter
Agreement shall continue in full force and effect.

    3.    _Entire Agreement_.  This Amendment, together with the Letter Agreement, as
amended herein, constitutes the full and entire understanding and agreement between the parties
with regard to the subjects hereof and thereof.

    4.    _Amendments and Waivers_.  Any term of this Amendment may be amended and
the observance of any term of this Amendment may be waived only with the written consent of
the Xandros and Lindows.

    5.    _Counterparts_.  This Amendment may be executed in two counterparts, each of
which shall be deemed an original, but all of which together shall constitute one and the same
instrument.

    6.    _Governing Law_.  This Amendment shall be governed by and construed under the
laws of the State of California as applied to agreements among California residents entered into
and to be performed entirely within California.

Very truly yours,

LINDOWS.COM, INC.

By: _____
Title: _PRES_
Name: _KEVIN CARMONY_

AGREED AND ACCEPTED:

XANDROS, INC.

By: _____
Title: _PRESIDENT_
Name: _Kay michael P. Bolo_

2

Exhibit E _2_ of _2_

**EXHIBIT F**

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED BY THE HOLDER HEREOF FOR ITS OWN ACCOUNT FOR INVESTMENT WITH NO INTENTION OF MAKING OR CAUSING TO BE MADE A PUBLIC DISTRIBUTION OF ALL OR ANY PORTION THEREOF. SUCH SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED.

$250,000.00
San Diego, California

December 21, 2001

# XANDROS, INC.

## CONVERTIBLE PROMISSORY NOTE

Xandros, Inc., a Delaware corporation (the "Maker"), for value received, hereby promises to pay to Lindows.com, Inc., a Delaware corporation (the "Holder"), the principal amount of Two Hundred Fifty Thousand Dollars ($250,000) (the "Issue Price"), together with interest on the unpaid amount thereof in accordance with the terms hereof, from the date hereof until paid or converted in accordance with the terms hereof.

1.  Convertible Promissory Note ("Note").

    1.1  Interest Rate.  The rate of interest hereunder ("Interest Rate") shall equal eight percent (8.0%) per annum and shall be computed on the basis of a 365 day year for the actual number of days elapsed; provided that in no event shall the interest rate be less than the minimum rate of interest required in order to avoid the imputation of interest for federal income tax purposes.

    1.2  Payment.  Subject to the provisions of Section 2 regarding an Acquisition and Section 3 regarding conversion of this Note, the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum on the earlier of (a) five (5) days notice of demand (the "Due Date") after December 21, 2002 or (b) immediately upon the closing of an Acquisition (as defined below). The Maker may not at any time prepay in whole or in part the principal and interest accrued under this Note without the prior written consent of the Holder. Any payment will be applied first to the payment of any and all accrued and unpaid interest through the payment date and second to the payment of principal remaining due hereunder. Payment shall be made at the offices or residence of the Holder, or at such other place as the Holder shall have designated to the Maker in writing, in lawful money of the United States of America.

    2.  Acquisition.  In the event the Maker is to be acquired, whether by means of a merger, sale of all or substantially all of the assets of the Maker, sale of more than fifty percent (50%) of the Maker's outstanding securities or otherwise, prior to the Due Date, the date of any Equity Financing and the Optional Conversion Date (an "Acquisition"), then the Issue Price plus all accrued but previously unpaid interest thereon shall become due and payable in one lump sum immediately upon the closing of such Acquisition.

Exhibit F 1 of 4

3.   Conversion.

   3.1   Automatic Conversion.  Upon the closing of a bona fide equity financing (an "Equity Financing") of the Maker of at least Two Hundred Fifty Thousand Dollars ($250,000), excluding conversion of this Note, in which shares of a series of the Maker's Preferred Stock are issued, the sum of the Issue Price of this Note plus all accrued but unpaid interest thereon (the "Conversion Amount") shall be converted into that number of fully paid and nonassessable shares of the equity security of the Maker sold in the Equity Financing (the "New Equity Shares") as is equal to the Conversion Amount divided by the lesser of the following (the "Automatic Conversion Price"):

   (a)   If the Equity Financing is at a pre-money enterprise valuation of the Maker of no greater than Fifteen Million Dollars ($15,000,000), the per share purchase price of the New Equity Shares in the Equity Financing.

   (b)   If the Equity Financing is at a pre-money enterprise valuation of the Maker of greater than Fifteen Million Dollars ($15,000,000), the per share price determined by assuming the Equity Financing was at a pre-money enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000).

   3.2   Optional Conversion.  In the event that the Maker does not consummate an Equity Financing prior to May 31, 2002 (the "Optional Conversion Date"), the Holder shall have the right to convert the Conversion Amount into shares of Series A Preferred Stock (the "Optional Conversion Shares") of the Maker, the rights, preferences and privileges of which shall be negotiated in good faith by the Maker and the Holder, at the Optional Conversion Date (an "Optional Conversion"), at a per share price (the "Optional Conversion Price") determined by assuming an enterprise valuation of the Maker equal to Fifteen Million Dollars ($15,000,000).  On the Optional Conversion Date, the number of shares of Series A Preferred Stock into which this Note may be converted is determined by dividing the Conversion Amount by the by the Optional Conversion Price.  Prior to the Optional Conversion Date the Maker shall take all necessary steps to validly authorize the shares of Series A Preferred Stock to be issued upon the Optional Conversion Date.

   3.3   Conversion Procedure.

   (a)   The Maker shall provide the Holder written notice at least fifteen (15) days prior to the expected closing of an Equity Financing.

   (b)   In the event of an Equity Financing, the Note shall convert automatically on the closing of the Equity Financing (the "Automatic Conversion Date") without any further action by the Holder hereof.

   (c)   In order to exercise the Optional Conversion privilege under Paragraph 3.2, the Holder shall provide the Maker at least five (5) days prior to the Optional Conversion Date written notice in form reasonably satisfactory to the Maker that the Holder elects to convert the Note on the Optional Conversion Date.  The

Exhibit F  2 of 4

Holder shall surrender the original Note for conversion on the Optional Conversion Date.

**3.4**  **Termination of Rights Upon Conversion.** Any conversion of this Note shall be deemed effective on the Automatic Conversion Date or Optional Conversion Date, as applicable, and, upon conversion of this Note, the Holder of this Note shall have no further rights under this Note, whether or not this Note is surrendered.

**3.5**  **Fractional Shares.** No fractional shares of any equity securities of the Maker will be issued in connection with any conversion hereunder but rather any such fractional shares shall be rounded up to the nearest whole share.

**3.6**  **Delivery of Stock Certificates.** As promptly as practicable after any conversion of this Note, the Maker, at its expense, shall issue and deliver to the Holder of this Note a certificate or certificates evidencing the number of full New Equity Shares or Optional Conversion Shares, as applicable, issuable to the Holder upon such conversion.

**4.**  **Miscellaneous.**

**4.1**  **Transfer of Note.** This Note shall not be transferable or assignable in any manner and no interest shall be pledged or otherwise encumbered by the Holder without the consent of the Maker, which consent shall not be unreasonably withheld.

**4.2**  **Titles and Subtitles.** The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

**4.3**  **Notices.** All notices and other communications provided for hereunder shall be in writing and shall be delivered personally, by overnight delivery service or by facsimile, with confirmation of receipt, addressed as set forth on the signature page hereto. Either party hereto may by like notice specify or change an address to which notices and communications shall thereafter be sent. Notices sent by facsimile shall be effective upon confirmation of receipt, notices sent by overnight delivery service shall be effective upon receipt, and notices given personally shall be effective when delivered.

**4.4**  **Attorneys' Fees.** If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

**4.5**  **Amendments and Waivers.** This Note may be amended and the observance of any other term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Holder. The Maker waives presentment, demand for performance, notice of nonperformance, protest, notice of protest, and notice of dishonor. No delay on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right under this Note.

Exhibit F 3 of 4

4.6    Severability.  If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

4.7    Governing Law.  This Note shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to its conflicts of laws principles.

4.8    Counterparts.  This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Executed as of the date first written above.

MAKER:
XANDROS, INC.,
a Delaware corporation

By:  _____

Title:  PRESIDENT
Name:  MICHAEL A. REGO
Address:    1410 Blair Place, Suite 600
            Ottawa, Ontario K1J 9B9, Canada


ACKNOWLEDGED AND AGREED:

HOLDER:
LINDOWS.COM, INC.,
a Delaware corporation


By:  _____
Title:  _____
Name:  _____
Address:    4350 La Jolla Village Dr., Suite 450
            San Diego, CA 92122

Exhibit F 4 of 4

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

2

| | |
|---|---|
| LINDOWS.COM, INC., a Delaware corporation, | ) Case No.: 02 CV 2460 BTM (RBB) |
| | ) |
| Plaintiff, | ) |
| | ) **DECLARATION OF SERVICE** |
| v. | ) |
| | ) |
| XANDROS, INC., a Delaware corporation; | ) |
| LINUX GLOBAL PARTNERS, INC., a | ) Person served:  Counsel for Plaintiff |
| Delaware corporation; MICHAEL BEGO, | ) |
| an individual; WILLIAM JAY ROSEMAN, | ) Date served:      February 19, 2003 |
| an individual, | ) |
| | ) |
| Defendants. | ) |

10      I, the undersigned, declare under penalty of perjury that I am over eighteen years of age and not a party to this action; that I served the above-named person the following documents:  **Notice of Motion and Motion to Compel Arbitration and Dismiss or Stay Action; Memorandum of Points and Authorities in Support of Motion to Compel Arbitration and Dismiss or Stay Action; Declaration of Michael Bego; [Proposed] Order** in the following manner (check one):

1)      _____By personally delivering copies to the person served.

2)      _____By causing copies to be delivered, during usual office hours, to the office of the person served at the address listed below and left with the person who apparently was in charge.

3)      _____By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of  his office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left.

4)      __✓__By placing a copy in a separate envelope, with postage fully prepaid, for each address named below and depositing each in the U.S. Mail at San Diego, California on January 24, 2003, 2003.

                    Michael S. Kagnoff, Esq.
                    Brobeck Phleger & Harrison
                    12390 El Camino Real
                    San Diego, CA  92130
                    (858) 720-2500

Executed on February 19, 2003, at San Diego, California.

_Annie S. Parrish_
_____
Annie S. Parrish

1