








MAM    4/29/03    13:34
3:02-CV-02460    LINDOWS.COM INC V. XANDROS INC
*30*
*RPLYOPPM.*

```
LA BELLA & MCNAMARA LLP
THOMAS W. MCNAMARA (SBN 127280)
ANDREW W. ROBERTSON (SBN 062541)
401 West "A" Street, Suite 2300
San Diego, California  92101
(619) 696-9200

Attorneys for Defendants XANDROS, INC.; LINUX GLOBAL
    PARTNERS, INC.; MICHAEL BEGO; WILLIAM JAY
    ROSEMAN
```

03 APR 28 PM 3: 57

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDOWS.COM, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>XANDROS, INC., a Delaware corporation; LINUX GLOBAL PARTNERS, INC., a Delaware corporation; MICHAEL BEGO, an individual; WILLIAM JAY ROSEMAN, an individual,<br><br>    Defendants. | Case No.:  02 CV 2460 BTM (RBB)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:   May 5, 2003<br>Time:  4:00 p.m. |

Defendants' position is straightforward:

The Notes sued upon fall within the scope of the arbitration clause in the Strategic Alliance Agreement ("SAA") because the Notes are integral parts of a larger arrangement . Plaintiff's claims on the Notes are claims "arising out of or relating to" the SAA.

Defendants Bego, Roseman and Linux are also entitled to the benefit of the arbitration clause because all of plaintiff's allegations against them relate to conduct as agents of Xandros or Linux. The only allegation against Linux is that it is the alter ego of Xandros.

1

## I. The Notes Were Part of an Overall Alliance

This record now before the court, albeit imperfect, confirms that the Notes were not stand alone loans, but were integrated parts of the overall alliance.

**Plaintiff's Complaint.** Paragraph 14 acknowledges that in August 2001, Plaintiff and Xandros "began negotiating a number of agreements..."

**November 20, 2001 – Strategic Alliance Agreement.** The SAA recites a wide range of interrelationships, including software license, revenue sharing, and software development.

**November 20, 2001 Note and Side Letter Agreement.** On the same date the SAA is executed, the same parties sign the first $250,000 Note which specifically references a "side letter agreement". The side letter references the SAA and the Note and confirms the Notes are integrated in the alliance. Unfortunately, neither party can locate a copy of the side letter as signed – Defendants have submitted an unsigned copy (Ex C to Bego Declaration) and have submitted an executed copy of an Amendment to that side letter dated December 6 (Exhibit E to Bego Declaration ). Plaintiff's CEO states in his Declaration that he does not recall the side letter agreement ever being signed by Lindows (Carmony Declaration, Paragraph 9), even though the Amendment to that agreement is signed by him.

**December 6, 2001 Note and Amended Side Letter Agreement.** On December 6, the same parties sign a second $250,000 Note and amended

2

02 CV 2460 BTM (RBB)
Defendants' Reply Memorandum In
Support Of Motion To Compel Arbitration

side letter which references the SAA and the Note and further confirms linkage with the SAA.

**Bego Declaration.** As Xandros' acting President at the time, he negotiated the arrangement with Lindows and recites that the Notes were part of the alliance. The Declaration of Plaintiff's CEO does not directly contradict the integrated nature of the transactions, although it does state that it was not his intent that the Notes be subject to arbitration. (Carmony Declaration Partagraphs 3-8).

Plaintiff argues that the Notes contain an affirmative statement that the parties intended for any disputes on the Notes to be resolved in a "court of law". Plaintiff points only to a boilerplate attorneys fee provision (Paragraph 4.4) which commences "[I]f any action at law or equity..." That is not an affirmative statement against arbitration, just the preamble to a standard attorneys fees clause. An abbreviated version of the same language appears in the SAA (Paragraph 16.5)

II. **Defendants Bego, Roseman, and Linux Are Also Entitled to Arbitration.**

The law is clear that courts will afford agents, employees and representatives the benefit of arbitration agreements entered into by their principals. See *Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) and other cases cited at Defendants Memorandum, page 7.

Plaintiff suggests that the allegations in its Complaint that these Defendants are agents of Xandros are <u>not</u> entitled to any presumptive truthfulness and that Defendants must independently prove those allegations. Presumptive truthfulness is a doctrine which protects Plaintiffs on Rule 12(b) motions – Plaintiffs can not opt out of its application. Plaintiff has sued these additional parties on the theory that as

agents of Xandros and Linux they misrepresented the imminent investment of Linux into Xandros. If Xandros is entitled to arbitration, so are these defendants. But for their relationship with Xandros these parties have no connection to this dispute,.

III. **Plaintiff's Evidentiary Objections**

**Bego Declaration.** Plaintiff objects to Mr. Bego's Declaration on foundation grounds on the apparent theory that he must presently be an officer or director to have personal knowledge sufficient to testify about Xandros or Linux. To the contrary, his Declaration provides ample foundation for his personal knowledge of the negotiations with Lindows over the SAA and the Notes – he was Acting President of Xandros from May 2001 to May 2002 and in that capacity negotiated the arrangement with Lindows.

Plaintiff also proffers the claim that Mr. Bego has somehow "recanted his claim in Paragraph 1 of his Declaration that he is an officer of Linux Global Partners, Inc. and a Director of Xandros". The Declaration makes no statement that he is an officer of Linux or that he is a Director of Xandros. It states that he is "currently Vice President" of Linux and "acting as Sales & Marketing Director"of Xandros. He further states that he was Acting President of Xandros from May 2001 to May 2002. Such is consistent with what he writes to Mr. Carmony in the e-mails submitted by Plaintiff. Vice President is not necessarily synonymous in either legal or anecdotal terms with an officer with power to bind a corporation – in any event, such a semantic side issue is irrelevant to the substance of the arbitration issue here.

**Letter Agreement and Amendment thereto.** Plaintiff objects to the unsigned Letter Agreement re Future Investment on foundation, best evidence, hearsay and relevance grounds and objects to the December 6 Amendment to that Letter Agreement on foundation, hearsay and relevance grounds. The Bego Declaration

provides foundation for both, although the absence of a signed copy is an impediment to the authentication of the original side letter. Given the signed amendment, Defendants submit that both these letters are legitimate evidence of the interlinked nature of the Notes and the SAA.

IV. **Conclusion**

Viewed in the totality of the circumstances, the Notes are not stand alone transactions, but are integral parts of a bigger alliance described by the SAA and related documents. Arbitration is, therefore, the proper vehicle for resolution of Plaintiff's claims on the Notes.

Dated: April 28, 2003

LA BELLA & McNAMARA, LLP

THOMAS W. McNAMARA
ANDREW W. ROBERTSON

By _____
ANDREW W. ROBERTSON
Attorneys for Defendants XANDROS, INC.;
LINUX GLOBAL PARTNERS, INC.;
MICHAEL BEGO; WILLIAM JAY
ROSEMAN

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDOWS.COM, INC., a Delaware corporation, | Case No.: 02 CV 2460 BTM (RBB) |
| Plaintiff, | |
| v. | **DECLARATION OF SERVICE** |
| XANDROS, INC., a Delaware corporation; LINUX GLOBAL PARTNERS, INC., a Delaware corporation; MICHAEL BEGO, an individual; WILLIAM JAY ROSEMAN, an individual, | Person served: Counsel for Plaintiff |
| | Date served: April 28, 2003 |
| Defendants. | |

I, the undersigned, declare under penalty of perjury that I am over eighteen years of age and not a party to this action; that I served the above-named person the following documents: **Defendants' Reply Memorandum in Support of Motion to Compel** in the following manner (check one):

1) \_\_\_\_By personally delivering copies to the person served.

2) \_\_\_\_By causing copies to be delivered, during usual office hours, to the office of the person served at the address listed below and left with the person who apparently was in charge.

3) \_\_\_\_By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of his office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left.

4) \_\_\_\_By placing a copy in a separate envelope, with postage fully prepaid, for each address named below and depositing each in the U.S. Mail at San Diego, California on April 28, 2003.

5) \_\_\_\_By causing such document to be transmitted by facsimile machine to the office(s) of the parties indicated below. The facsimile machine used complied with Rule 2003 and no error was reported by the machine.

Colburn Stuart, Esq.
Paul Hastings Janofsky & Walker
12390 El Camino Real
San Diego, CA 92130
(858) 720-2500

Executed on April 28, 2003, at San Diego, California.

Annie S. Parrish

1