USDC SCAN INDEX SHEET










```
KSR     12/16/03    14:39
3:02-CV-02460   LINDOWS.COM INC V. XANDROS INC
*52*
*OPPM.*
```

COLBERN C. STUART, III (SBN 177897)
JAMES P. CONLEY (SBN 216639)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 720-2500
Facsimile: (858) 720-2555

Attorneys for Plaintiff
LINDOWS.COM, INC.

**FILED**
DEC 15 2003
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDOWS.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>XANDROS, INC., a Delaware corporation; LINUX GLOBAL PARTNERS, INC., a Delaware corporation; MICHAEL BEGO, an individual; WILLIAM JAY ROSEMAN, an individual.,<br><br>Defendants. | CASE NO. 02 CV 2460 JAH (RBB)<br><br>**PLAINTIFF LINDOWS.COM'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO CONTINUE HEARING ON MOTION TO COMPEL ARBITRATION**<br><br>Date: January 9, 2003<br>Time: 2:00 p.m.<br>Courtroom: 11, Second Floor<br>Judge: Hon. John A. Houston |

Plaintiff Lindows.com, Inc. ("Lindows.com") opposes Defendants' joint Ex Parte Application to continue hearing on Defendants' Motion to Compel Arbitration ("Application") as follows:

**ORIGINAL**

SAN/78887.4

02 CV 2460 JAH (RBB)
PLAINTIFF LINDOWS.COM'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO CONTINUE HEARING ON MOTION TO COMPEL ARBITRATION

## I. **INTRODUCTION**

Defendants' Rule 12(b) Motion to Compel Arbitration and Dismiss or Stay Action ("Motion") has been pending before the Court (transferred from the courtroom of the Honorable Barry Ted Mokowitz) since February, 2003. Defendants' Motion is based solely on the declaration of Defendant Michael Bego, whom Defendants have repeatedly failed and refused to produce for deposition even though two Judges of this court have ordered that Mr. Bego sit for deposition. As detailed below, after Defendants refused to produce Mr. Bego, Lindows.com was forced to seek two separate orders from Magistrate Judge Brooks directing that Mr. Bego appear for deposition. At the date agreed upon by the parties for that deposition—October 29 of this year—Mr. Bego failed to appear, causing Plaintiff to incur court reporter costs of $169.80 in making a record of Mr. Bego's non-appearance, in addition to hours of wasted attorney preparation time. Since that October 29 failure, Mr. Bego has *on three additional occasions* failed and refused to attend re-scheduled depositions. Moreover, on the occasions when Mr. Bego notifies counsel of his intent not to appear, he consistently does so by notice arriving *mere hours* before the scheduled deposition, causing additional wasted preparation time and cancellation fees.

Defendants' failure to produce Mr. Bego is in direct violation of the orders of both Judge Moskowitz—who granted Plaintiff's request to take Mr. Bego's deposition--as well as Magistrate Judge Brooks—who, during two discovery conferences concerning Defendants' failure to respond to discovery, ordered Mr. Bego to sit for deposition. Despite the fact that the Court has on *three occasions* ordered that Defendants, including Mr. Bego, make themselves available for deposition, Defendants continue to fail and refuse to make Mr. Bego available. Moreover, though they refuse to produce Mr. Bego, Defendants recently re-filed their Motion *which is based solely on Mr. Bego's declaration*.

Plaintiff respectfully suggests that Defendants' continuous and unreasonable delay and refusal to produce Mr. Bego should not warrant additional tolerance by this Court. As detailed below, Plaintiff respectfully requests that the Court deny Defendants Ex Parte Application and

1  exclude the Declaration of Mr. Bego, as well as all exhibits thereto, as evidentiary sanctions
2  under F.R.C.P. Rule 37(d).[1] Plaintiff also requests monetary sanctions pursuant to that section to
3  compensate Plaintiff for the costs and time wasted due to Mr. Bego's continuous and repeated
4  failure and refusal to for deposition.

## II. STATEMENT OF FACTS

### A. THE DISPUTE BETWEEN THE PARTIES

Lindows is a computer software developer which manufactures and sells a number of software applications, including computer operating system software called "LindowsOS." Defendant Xandros, Inc. ("Xandros") is also a computer operating system developer. Both Lindows and Xandros develop software based on the freely available "open source" Linux software code. Defendant Linux Global Partners ("LGP") is the sole parent corporation of Xandros, Inc. Defendant Michael Bego's declaration states that he has acted as an officer, director, or employee of both LGP and Xandros, though, the testimony of other witnesses as well as Mr. Bego's own prior inconsistent statements refute Mr. Bego's statement in his declaration.

Plaintiff's claims originate from activity beginning in the later half of 2001 when defendants Roseman and Bego made contact with Lindows executives Michael Robertson and Kevin Carmony when the parties discussed Lindows' potential investment in Xandros. As detailed in the Complaint, during these discussions Mssrs. Bego and Roseman represented to Robertson and Carmony, as well as to the general public through press releases and interviews, that Defendant LGP had committed $10,000,000 in equity financing to Xandros to permit Xandros to develop its Linux operating system software. Roseman further represented to Robertson and Carmony that LGP was standing behind Xandros and would continue to support Xandros financially and otherwise in order to allow it to develop its software product.

---

[1] Plaintiff's counsel previously suggested to Defense counsel that the proper method of resolving this issue would be to withdraw Defendants' Motion, file an Answer, and re-file a Motion upon completion of Mr. Bego's deposition. Defendants refused and instead filed the instant Application.

Based on these representations, in November and December, 2001, Lindows made three loans to Xandros (but not LGP) for $250,000 each (the "Promissory Notes"). These Promissory Notes were payable within one year, and could, upon the occurrence of certain conditions, convert to an equity stake in Xandros. Over the course of the year between the making of the Notes in November/December, 2001 and their due dates in November/December 2002, Lindows and Xandros had numerous conversations regarding the strength of Xandros sales, the $10,000,000 LGP funding commitment, and Xandros' general financial health, again in the context of a potential merger, purchase, or further investment. At no time did Xandros indicate to Lindows that LGP had not committed $10,000,000 to Xandros or that Xandros was experiencing financial difficulties and slumping sales. In fact, Xandros acted as a "black box", refusing to divulge even the most basic financial information to Lindows.

In November and December, 2002, Lindows timely demanded payment on the Promissory Notes. Xandros refused to pay Lindows. Moreover, since loaning Xandros $750,000, Lindows has come to learn that in truth and in fact LGP had never made a $10,000,000 commitment to Xandros, but all Defendants have made this and other misrepresentations in furtherance of a fraudulent conspiracy between Xandros, LGP, Bego, and Roseman to bilk Lindows and others into financing Xandros.

**B. THE ARBITRATION DISPUTE**

Upon Xandros' refusal to repay the Promissory Notes, and upon learning of Defendants' fraudulent conspiracy, Lindows filed the instant action for violations of the Securities and Exchange Act of 1934, Fraud, Negligent Misrepresentation, Breach of Contract, and Rescission relating to the Promissory Notes. Defendants responded with a joint motion to compel arbitration, claiming that an arbitration clause in a separate software license agreement between only Lindows and Xandros governed the rights of all parties to the dispute—including the rights of LGP and Roseman, who were not parties to the Promissory Notes or the license agreement. The license agreement—dubbed a "Strategic Alliance Agreement" or the "SAA"—is an

agreement granting Lindows a license to incorporate certain portions of software code developed by Xandros into the Plaintiff's "LindowsOS" software product in exchange for payment of royalties from sales of LindowsOS. Lindows has not alleged any breach of the SAA.

In its original opposition to Defendants' motion to compel arbitration, Lindows refuted a number of claims by Defendants, impeaching the declaration of Defendant Bego relating to his relationship with Xandros and LGP. Lindows also argued that because only Lindows and Xandros were parties to the SAA, LGP and Roseman had no standing to assert the SAA's arbitration clause. Further, Lindows objected to Defendants' failure to present any evidence on the relationship between the parties relevant to the standing of LGP and Roseman—non-parties to the SAA. Given these and other infirmities in Defendants' motion, Plaintiff requested discovery and an evidentiary hearing to resolve a number of factual inconsistencies.

On May 16, Judge Moskowitz granted Plaintiffs request for discovery and an evidentiary hearing, ordering that the parties conduct discovery to resolve the contested factual issues and return for an evidentiary hearing originally set for 60 days thereafter—on July 14, 2003.

## C. SUBSEQUENT DISCOVERY

Plaintiff promptly served written discovery requests as well as notices for deposition of each of the four defendants. In response, Defendants began a series of delay tactics, requesting a continuations and extensions from Plaintiffs counsel and eventually refusing to produce any discovery at all. After granting a number of voluntary continuations and extensions, Plaintiff's counsel eventually insisted that Defendants produce their witnesses (including Mr. Bego) for deposition. Though Defendants had not previously objected, Defendants <u>refused</u> to produce <u>any witnesses</u>, forcing Plaintiff to seek a discovery conference before Magistrate Judge Ruben B. Brooks.

After a discovery conference on August 14, 2003, Magistrate Judge Brooks ordered that Defendants produce five witnesses for deposition, including Mr. Bego (Declaration of Colbern C. Stuart in Support of Plaintiff's Opposition ("Stuart Decl." Exhibit "A"). Plaintiff promptly

SAN/78887.4

5

02 CV 2460 JAH (RBB)
PLAINTIFF LINDOWS.COM'S OPPOSITION TO
DEFENDANTS' EX PARTE APPLICATION TO
CONTINUE HEARING ON MOTION TO COMPEL
ARBITRATION

1    scheduled Mr. Bego's deposition to occur on September 18, 2003 (Stuart Decl. Ex. "B").
2    Defendants thereafter objected to Plaintiff's notice of intent to record the depositions
3    stenographically and by videotape, taking the preposterous position that the depositions should
4    take place off the record. (Stuart Decl. Ex. "C"). Plaintiff was again forced to seek a second
5    discovery conference before Magistrate Judge Brooks, who on October 23, 2003 granted
6    Plaintiff's request that the depositions be recorded stenographically and by videotape. (Stuart
7    Decl. Ex. "D")

8        Only after these two discovery conferences did Defendants once again agree to make Mr.
9    Bego available for deposition on October 29 (Stuart Decl. Ex. "E"). Despite this agreement, Mr.
10   Bego refused to appear for deposition at the time agreed upon by counsel, causing Plaintiff's
11   counsel to incur $169.80 in court reporter costs to make a record of Mr. Bego's nonappearance,
12   and unnecessarily waste hours of attorney preparation time (Stuart Decl. Ex. "F"). Defendants'
13   counsel's excuse for Mr. Bego's failure to appear (which was not communicated until after the
14   time for his deposition had passed) was that Mr. Bego had an unexpected scheduling conflict
15   which made it impossible for him to appear. *Id.* Defendants agreed to make Mr. Bego available
16   "promptly" thereafter. (Stuart Decl. Ex. "G").

17       Even though Defendants had not yet produced Mr. Bego for deposition, on November 10,
18   2003, Defendants jointly re-filed their Motion *which was based solely on the declaration of Mr.*
19   *Bego.* (Stuart Decl. Ex. "H"). After Plaintiff objected to Defendants' filing the motion to compel
20   arbitration based upon a declaration from a witness they refused to produce, Defendants offered
21   to make Mr. Bego available on November 20, 2003 (Stuart Decl. Ex. "I" "J"). Plaintiff's counsel
22   again began preparing for the deposition, but on the evening of November 19 (mere hours before
23   Mr. Bego's re-scheduled deposition on the 20th), Defense counsel notified Plaintiff's counsel that
24   Mr. Bego was *again refusing to appear for deposition.* This time counsel represented that Mr.
25   Bego could not attend because of a potential conflict of interest that had arisen between Mr. Bego
26   and the other co-defendants also represented by defense counsel, Mr. Robertson. (Stuart Decl.
27   Ex. "K").

28   SAN/78887.4

6

02 CV 2460 JAH (RBB)
PLAINTIFF LINDOWS.COM'S OPPOSITION TO
DEFENDANTS' EX PARTE APPLICATION TO
CONTINUE HEARING ON MOTION TO COMPEL
ARBITRATION

Plaintiff's counsel vehemently objected to this last-minute cancellation and further objected to Defendants continued prosecution of their Motion despite the fact that the sole witness supporting the Motion had repeatedly delayed the action by refusing to comply with court-ordered depositions. Plaintiff's counsel demanded that Defendants withdraw the Motion and file an answer and compensate Lindows.com for costs and fees incurred because of the several delays. ("Stuart Decl. Ex. "L").

On November 24, 2003, Defense counsel notified Plaintiff's counsel that the conflict of interest between Bego and the remaining defendants was irresolvable and that Mr. Bego was seeking separate counsel. Nevertheless, Mr. Bego agreed to make himself available for deposition on December 9. (Stuart Decl. Ex. "M"). Plaintiff's counsel responded that because Mr. Bego had filed a motion while refusing to make himself available for deposition, the appropriate action would be for Defendants to withdraw the pending motion and promptly file an answer. (Stuart Decl. Ex. "N"). Defendants refused. (Stuart Decl. Ex. "O"). Plaintiff's counsel nevertheless confirmed Plaintiff's intent to depose Mr. Bego on the date offered—December 9, 2003. (Stuart Decl. Ex. "P").

Late in the afternoon of December 8, 2003 (again, mere hours before Mr. Bego's twice-rescheduled December 9 deposition), Mr. Bego's new independent counsel, Mr. Edward Walton, telephoned Plaintiff's counsel to advise that Mr. Bego was once again refusing to be deposed citing difficulties in preparing. Plaintiff's counsel again suggested that because defendants were consistently refusing to produce the single witness on whose declaration the pending motion to compel arbitration is based, Defendants should simply withdraw the motion, file an answer, and re-file the motion at a later date if appropriate. (Stuart Decl. Ex. "Q"). Defendants again refused. Plaintiff's counsel advised of its intent to seek exclusionary sanctions relating to the refusal to produce Mr. Bego unless the Motion was withdrawn. (*Id.*) Defendants thereafter filed the instant Application.

In light of Defendants' actions obstructing the discovery ordered by this Court, Lindows is faced with responding to Defendants' Motion To Compel Arbitration without having had the

opportunity to depose Mr. Bego. As Defendants have refused either to comply with numerous court orders to produce Mr. Bego, or to withdraw the motion based solely on Mr. Bego's declaration, Lindows suggests that a further continuance will merely countenance Defendants' flagrant flouting of this Court's orders. Plaintiff requests that the Court deny the Application and exclude any and all testimony or declarations submitted by or on behalf of Mr. Bego under Fed. R. Civ. P. 37(d) as a sanction for his failure to appear at his deposition. On the same grounds, Lindows further requests the Court find Mr. Bego in contempt of Court for his failure to obey the Court's several orders to sit for deposition. Lindows further requests an award of attorneys fees and costs as sanctions for Defendants' obstreperous conduct.

### III. ARGUMENT

#### A. THE EXCLUSION SANCTION

The facts of this case and Federal Rules of Civil Procedure's Rule 37 exclusionary sanctions strongly favor the granting of this motion. The policy justifying behind discovery sanctions is plain: "it is fundamental that a party that does not provide discovery cannot profit from its own failure." General Atomic v. Exxon Nuclear, 90 F.R.D. 290, 308 (S.D. Cal. 1981). This policy will be furthered by the exclusionary sanction Lindows hereby requests. Id. ("Preclusionary orders ensure that a party will not be able to profit from its own failure to comply").

Defendant Bego's failure to appear at his deposition is grounds for sanctions under Fed. R. Civ. P. 37(d) which provides:

> "If a party . . . fails to appear before the officer who is to take the deposition ... the court in which the action is pending ... may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule."

The sanctions authorized "under subparagraphs (A), (B), and (C) of subdivision (b)(2)" of Rule 37 include:

SAN/78887.4

8

02 CV 2460 JAH (RBB)
PLAINTIFF LINDOWS.COM'S OPPOSITION TO
DEFENDANTS' EX PARTE APPLICATION TO
CONTINUE HEARING ON MOTION TO COMPEL
ARBITRATION

    (subparagraph B) "An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or <u>prohibiting that party from introducing designated matters in evidence</u>" (emphasis added)

Lindows requests that the Court strike Mr. Bego's Declaration in support of Defendants' Motion and exclude any further testimony from defendants on the issues addressed by Mr. Bego's declaration. This sanction will properly prevent Defendants from benefiting from their flagrant disregard of this Court's several orders directing Mr. Bego to sit for deposition. This exclusionary sanction requested by Lindows is available to the Court under Fed. R. Civ. Pro. 37(d) even without Mr. Bego being in violation of a court order (Hilao v. Estate of Marcos, 103 F.3d 762, 764-5 (9th Cir. 1996)) and in light of Bego's disobeying the order of August 14, 2003, the sanction is even more justified.

A number of Circuit Courts have established a four factor test for determining whether to award the exclusionary sanction. Reilly v. NatWest Markets Group Inc., 181 F.3d 253, 269 (2nd Cir. 1999); Barrett v. Atlantic Richfield, 95 F.3d 375, 380 (5th Cir.1996); In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 791 (3rd Cir. 1994). These factors, each of which favors the Plaintiff, are as follows:

  (1) Mr. Bego's **explanation for his failure to appear** and his failure to comply with the discovery order;

  (2) the **importance of the testimony** of Mr. Bego to Lindows defense of Defendant's Motion To Compel Arbitration;

  (3) the **prejudice** suffered by Lindows if Bego's testimony is admitted;

  (4) the **possibility of a continuance** being able to cure the prejudice caused by Mr. Bego.

**1. Bego Has No Proper Explanation For His Failure To Appear**

With respect to Mr. Bego's explanation for his failure to appear, he has offered no appropriate justification. Though Mr. Bego asserted variously that he encountered "scheduling problems" (Stuart Decl. Ex. "F") or a potential conflict of interest (Stuart Decl. Exs. "G", "I", "J", "K", "L", "M", "N", "O" "Q"), have prevented him from appearing *on four separate occasions*,

1  he nevertheless acted before this court as recently as November 10 in re-filing Defendants joint
2  Motion to Compel Arbitration and his declaration in support thereof. Mr. Bego should not be
3  permitted to "have his cake and eat it too" by filing a motion and declaration while at the same
4  time alleging (repeatedly) that he is unable to appear for deposition relating to the motion and
5  declaration. Moreover, on at least three occasions in October and November, Mr. Bego offered to
6  appear for deposition even though he was presently dealing with the alleged conflict of interest—
7  even Mr. Bego, it seems, did not find that the alleged "scheduling problems" or potential conflict
8  of interest would have prevented him from appearing for deposition.

9  Though Mr. Bego's repeated refusals to appear are willful and in bad faith, the exclusion
10 sanction is properly granted even for *innocent* behavior. General Atomic, 90 F.R.D. at 307
11 ("Imposition of the severe sanctions such as dismissal or default judgment require a finding of
12 willfulness, bad faith, or fault, whereas the lesser sanctions may be predicated on an innocent
13 failure"). Thus, even if this court finds that Mr. Bego's repeated refusal to attend his deposition
14 are merely the result of negligent time management, or for excessive delays in promptly securing
15 counsel, *an exclusionary sanction is still appropriate.*

16 **2.   Bego's Testimony Is Important To Lindows' Defense Of The Pending Motion**

17 Clearly Mr. Bego's testimony is critical to the pending motion; Mr. Bego's is the only
18 declaration submitted by Defendants in support of their Motion. Further, a key issue raised by
19 Plaintiff's Opposition to Defendants' Motion To Compel Arbitration (and an issue Judge
20 Moskowitz ordered discovery should proceed upon) relates to whether Defendant Bego had the
21 authority to represent Defendant Xandros when signing the Promissory Notes on the unrelated
22 "SAA". In Paragraph 1 of his declaration, Mr. Bego claims he was "acting President of Xandros
23 from May 2001 through May 2002" but also claims in that paragraph that he is "currently Vice
24 President of Linux Global Partners"—statements he refuted in a March 25, 2003 e-mail addressed

to Lindows' President, Kevin Carmony.[2] Moreover, in deposition, Mssrs. Roseman and Berenstein *deny that Mr. Bego was ever an officer or director of Defendant Xandros.* Given the abundance of testimony directly refuting Mr. Bego's Declaration, it was important for Lindows to depose Bego and have the opportunity to cross examine his claimed relationship with Xandros and LGP. Because his testimony was important for at least this reason, Lindows has satisfied factor two.

### 3. Lindows Will Be Prejudiced If Bego's Declaration or Testimony Is Allowed

As to the third factor—the prejudice Lindows would suffer if Mr. Bego's declaration is allowed to be admitted—such prejudice is clear. Defendants will be able to rely on the Bego Declaration while Lindows will have no evidence to support its contention that Bego was not in fact authorized to act on behalf of Xandros. Admitting Bego's Declaration will prejudice Lindows by allowing Defendants, through their obstructionist tactics in refusing to produce Mr. Bego, to avoid cross examination which will demonstrate the falsity of Mr. Bego's Declaration.

### 4. A Continuance Is Not An Appropriate Cure For The Prejudice Against Lindows

Finally, a continuance in this case is a lost cause as Defendants have already repeatedly refused to produce Mr. Bego for months—even in the face of orders to do so. As detailed in the exhibits filed in support hereof, Lindows has been forced to seek relief from the court on two separate occasions, written numerous letters, and met and conferred with Defendants' counsel to suggest that Defendants withdraw their motion and file an answer (an effective continuance if appropriate)—all to no avail. Defendants have had more than ample opportunity to produce Mr. Bego, and rather than the Court granting a continuance and *again* ordering Mr. Bego to appear, the sanction of exclusion is now appropriate.

---

[2] Attached as Exhibit "A" to the Carmony Declaration in support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration. In the e-mail, Mr. Bego states that he has never been an officer or director of Linux Global Partners.

## B. CONTEMPT

By failing to appear at his deposition as ordered to by this Court on August 14, 2003, Defendant Bego is in violation of Fed. R. Civ. Pro. 37(b)(2) which provides:

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (A) ...
>
> (B) ...
>
> (C) ...
>
> (D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a <u>contempt of court</u> the failure to obey any orders"

Lindows respectfully requests the Court find Defendant Bego in contempt for his blatant disregard of the Court's Orders detailed above.

## C. EXPENSES SANCTION

As an addition and alternative, Plaintiff further requests that the Court issue an award for monetary sanctions pursuant to Fed. R. Civ. P. Rule 37(d) (recited above) for the amount of the time and expense incurred by Plaintiff in preparing for numerous depositions, all of which Mr. Bego failed to appear at—providing notice, if at all, only at the very last minute. Stuart Decl. Ex. "F" details Mr. Bego's refusal to appear at his deposition on October 29, 2003, which caused Plaintiff to incur court reporter expenses of $169.80. Plaintiff will submit appropriate additional declarations detailing the amount of wasted time and expense related to these matters should the Court issue a sanction.

## IV. CONCLUSION

As detailed above, Lindows respectfully requests the Court deny Defendants' joint Application and impose the sanction of excluding any and all declarations and oral testimony of Defendant Bego from Defendants' Motion to Compel Arbitration as well as to exclude defendants from introducing any further evidence on the issues related to arbitration. Plaintiff further requests that the Court find Defendant Bego in contempt of Court. In addition and in the alternative, Plaintiff respectfully requests that the Court require that Defendants compensate

SAN/78887.4

12

02 CV 2460 JAH (RBB)
PLAINTIFF LINDOWS.COM'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO CONTINUE HEARING ON MOTION TO COMPEL ARBITRATION

Plaintiff for all costs, expense, and attorneys fees incurred because of Defendants continuous and repeated failures to appear for deposition, the amount to be proven by separate declaration. Finally, as Plaintiff's deadline for responding to Defendants' Motion is looming—December 24, 2003—in light of Defendants' 11th hour Ex Parte Application as well as the Holiday Season, Plaintiff requests that the Court grant Plaintiff a reasonable amount of time to respond to the Motion after the court's ruling on Defendants' instant joint Application.

DATED: December 15, 2003        PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
        COLBERN C. STUART, III

Attorneys for Plaintiff
LINDOWS.COM, INC