USDC SCAN INDEX SHEET

















TKL   1/20/04   12:48
3:02-CV-02460   LINDOWS.COM INC V. XANDROS INC
*57*
*OPPM.*

1    COLBERN C. STUART, III (SBN 177897)
     JAMES P. CONLEY (SBN 216639)
2    PAUL, HASTINGS, JANOFSKY & WALKER LLP
     3579 Valley Centre Drive
3    San Diego, CA 92130
     Telephone: (858) 720-2500
4    Facsimile: (858) 720-2555

5    Attorneys for Plaintiff
     LINDOWS.COM, INC.

**FILED**

**04 JAN 20 AM 9: 54**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

**☐ ORIGINAL**

6

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  LINDOWS.COM, INC., a Delaware corporation, | CASE NO. 02 CV 2460 JAH (RBB) |
| 11 | **PLAINTIFF LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION;** |
| 12            Plaintiff, | |
| 13     vs. | |
| 14  XANDROS, INC., a Delaware corporation; LINUX GLOBAL | Hearing Date:   January 30, 2004<br>Time:          2:00 p.m. |
| 15  PARTNERS, INC., a Delaware corporation; MICHAEL BEGO, an | Judge:        Hon. John A. Houston<br>Courtroom:   11, Second Floor |
| 16  individual; WILLIAM JAY ROSEMAN, an individual, | **ORAL ARGUMENT REQUESTED** |
| 17            Defendants. | |

18

19       LINDOWS.COM, INC. ("Lindows") files this opposition to the Motion to Compel

20   Arbitration and Dismiss or Stay Action ("motion") by Defendants XANDROS, INC., LINUX

21   GLOBAL PARTNERS, INC., ("LGP"), MICHAEL BEGO and WILLIAM JAY ROSEMAN

22   ("Defendants").

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

   A.   Rule 37 Sanctions Are Now Appropriate.................................................. 1

   B.   No Agreement to Arbitrate Was Ever Formed ........................................ 2

   C.   LGP Is Not Entitled To Arbitrate The Fraud Claims Against It As It Is Not A Signatory To The SAA.................................................................................. 3

   D.   Disputes Regarding The Notes Are Not Subject To The SAA's Arbitration Clause...................................................................................................................... 3

   E.   Extrinsic Evidence Demonstrates The Parties Did Not Intend To Arbitrate Disputes Relating To The Notes ....................................................... 4

II.   FACTS ................................................................................................................................ 4

   A.   Procedural History ................................................................................ 4

   B.   The Dispute Between The Parties............................................................ 6

   C.   The Arbitration Issue.............................................................................. 7

III.   ARGUMENT .................................................................................................................... 8

   A.   No Agreement To Arbitrate Exists Between Lindows And Any Of The Named Defendants ................................................................................. 8

      1.   No Contract Containing An Arbitration Clause Was Ever Formed Between Lindows and Xandros, Inc. Because Bego Had No Authority To Bind Xandros, Inc .............................................. 8

      2.   Defendant LGP Is Not Entitled To Enforce The SAA And Thus Has No Basis For A Demand To Arbitrate The Fraud Claim .......................... 10

   B.   Defendants Have Submitted No Admissible Evidence To Support Their Motion .............................................................................................. 12

      1.   The Bego Declaration and Exhibits Thereto Should Be Excluded Because of Mr. Bego's Failure to Appear for Deposition ........................ 12

      2.   The Bego Declaration Should Be Excluded As Lacking Foundation....... 16

      3.   Defendants' Motion Should Be Denied Due To A Lack Of Supporting Evidence .......................................................................... 17

   C.   The Promissory Notes Reveal No Agreement To Waive Lindows' Right To A Jury Trial In Favor Of Arbitration.................................................... 17

      1.   The Clear Intent Of The Parties—As Evidenced By The Unambiguous Terms Of The Notes Themselves—Was To Resolve Disputes In A Court Of Law ...................................................................... 18

      2.   Even If The Court Looks Beyond The Unambiguous Language Within The Four Corners Of The Notes, The Evidence Shows That The Parties Did Not Intend To Arbitrate Disputes Relating To The Notes ...................................................................................................... 19

IV.   CONCLUSION.................................................................................................................. 24

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>CASES</u>

Armco Steel Co., L.P. v. CSX Corp.,
    790 F.Supp. 311 (D. D.C. 1991) .................................................................. 20

Barrett v. Atlantic Richfield,
    95 F.3d 375 (5th Cir.1996) ....................................................................... 14

Cariaga v. Local No. 1184 Laborers Intern. Union of North America,
    154 F.3d 1072 (9th Cir. 1998) ............................................................... 20, 21

Cerritos Valley Bank v. Stirling,
    97 Cal.Rptr.2d 432 (Ct. App. 2000) ......................................................... 19

Chicago v. Kaplan,
    514 U.S. 938 (1995) ............................................................................... 17

Danford v. Schwabacher,
    342 F.Supp. 65 (N.D. Cal. 1972) .......................................................... 17, 21

E.E.O.C. v. Waffle House,
    534 U.S. 279 (2002) (citation omitted, emphasis added)............................ 18, 19

Foothill Properties v. Lyon/Copley Corona Associates,
    54 Cal.Rptr.2d 488 (Ct. App. 1996) ......................................................... 18

General Atomic v. Exxon Nuclear,
    90 F.R.D. 290, 308 (S.D. Cal. 1981)................................................... 2, 13, 14

Granfinanciera, S. A. v. Nordberg,
    492 U.S. 33 (1989) ................................................................................. 17

Henry v. Gill Industries,
    983 F.2d 943 (9th Cir. 1993)..................................................................... 13

Hilao v. Estate of Marcos,
    103 F.3d 762 (9th Cir. 1996 ..................................................................... 14

In re Paoli R.R. Yard PCB Litigation,
    35 F.3d 717 (3rd Cir. 1994) ...................................................................... 14

Klamath Water Users Protective Ass'n v. Patterson,
    204 F.3d 1206 (9th Cir. 1999).................................................................... 18

McMaster v. United States,
    177 F.3d 936 (11th Cir. 1999)............................................................... 11, 12

Rain v. Donning Company / Publishers,
    964 F.2d 1455 (4th Cir. 1992).................................................................... 19

Page(s)

Reilly v. NatWest Markets Group Inc.,
     181 F.3d 253 (2nd Cir. 1999)..................................................................................... 14

Sayble v. Feinman,
     142 Cal.Rptr. 895 (Ct. App. 1978)............................................................................ 18

Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.,
     925 F.2d 1136 (9th Cir. 1991)............................................................................... 3, 10

Ward v. First Fed'l Sav. Bank,
     173 F.3d 611 (7th Cir. 1999)..................................................................................... 16

Williamson v. Tucker,
     645 F.2d 404 (5th Cir. 1981)..................................................................................... 11


OTHER AUTHORITIES

U.S. Constitution Amendment VII ........................................................................................ 17


RULES

Federal Rules Civil Procedure
     37................................................................................................................................... 2
     37(d) .............................................................................................................. 1, 13, 14

Federal Rule of Evidence 602 ................................................................................... 16, 17

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant's motion should be denied for several reasons:

### A.   Rule 37 Sanctions Are Now Appropriate

The Declaration of Michael Bego and exhibits thereto should be excluded as sanctions under Fed. R. Civ. P. Rule 37(d) because Defendants *still* have not produced Mr. Bego for deposition. Despite the fact that Defendants just last month represented to this Court that they needed a continuance "solely to accommodate Plaintiff's desire to take the deposition of Mr. BEGO before Plaintiff has to file its Opposition"[1], Defendants *continue* to fail and refuse to produce Mr. Bego (the sole witness supporting Defendants' motion). This failure has occurred in spite of *repeated* attempts by Plaintiff's counsel to schedule a date for Mr. Bego's deposition. (Declaration of Colbern C. Stuart III in support of Plaintiff's opposition ("Stuart Decl."), Ex's "R"-"U").

Judge Moskowitz (previously assigned this case) considered Defendants' initial moving papers (which are *identical* in all substantive respects to Defendants' present motion) filed in February, 2003 and declined to grant Defendants' motion. At the hearing at which Judge Moskowitz announced his decision, Plaintiff urged that the Bego Declaration and exhibits thereto lacked foundation and credibility and requested that the Court permit Plaintiff to cross-examine Defendants' witnesses, including Mr. Bego. Judge Moskowitz apparently harbored his own reservations regarding the sufficiency and credibility of the evidence submitted by Defendants and therefore ordered that the Plaintiff be permitted to conduct discovery for purposes of cross examination of the evidence and declaration submitted by Defendants.[2]

Despite Judge Moskowitz' order and nine months of effort by Plaintiff's counsel (including two trips to Magistrate Brooks' chambers to compel Defendants to produce witnesses

---

[1] Reply Memorandum of Defendant Michael Bego In Support of Ex Parte Application To Continue Hearing on Defendants' Motion to Compel Arbitration.

[2] Plaintiff has ordered, but not received, a transcript of the hearing at which Judge Moskowitz pronounced his ruling. Plaintiff will lodge and serve copies of the transcript supplementally once received.

1    and evidence),[3] Defendants continue to refuse to produce Mr. Bego. "[I]t is fundamental that a

2    party that does not provide discovery cannot profit from its own failure." *General Atomic v.*

3    *Exxon Nuclear*, 90 F.R.D. 290, 308 (S.D. Cal. 1981).  Defendants' refusal to produce Mr. Bego is

4    particularly egregious when, as explained in detail below, other witnesses—and even Mr. Bego

5    himself—have given sworn testimony or made confessions which *directly refute* critical

6    allegations in the Bego declaration.  As *all* defendants have defied this Court's directives—and

7    even reneged on their own representations to this Court—to produce Mr. Bego "before Plaintiff

8    has to file its Opposition," this Court should exclude Mr. Bego's declaration and the exhibits

9    thereto under Fed.R.Civ.P. 37 and deny Defendants' Motion.

10              **B.      No Agreement to Arbitrate Was Ever Formed**

11              In the event the Court does not exclude Mr. Bego's declaration and the evidence

12    submitted therewith, the witnesses Defendants did produce demonstrate that *no valid contract*

13    *with an arbitration clause was ever formed* between any parties to this litigation.  Plaintiff sued

14    Defendants based on the theories of fraud and breach of three Convertible Promissory Notes (the

15    "Notes").  (Stuart Decl. Ex's Z, AA, BB).  Defendants do not dispute that the Notes do not

16    contain an arbitration clause—instead they assert an arbitration clause in a separate document—

17    the "Strategic Alliance Agreement" or "SAA"—which Plaintiff has *not asserted* in this action.

18    The SAA is executed by Michael Bego on behalf of Defendant Xandros, Inc. and non-party

19    Xandros, Corp. (a unrelated subsidiary corporation).  Beneath Mr. Bego's signature he represents

20    that he is "President" of Xandros, Inc.  (Exhibit "A" to Bego Declaration).

21              Mr. Bego's claim to have been President of Xandros, Inc., however, has been *directly*

22    *refuted* by the sworn testimony of *two* of Xandros, Inc.'s own witnesses, William J. Roseman

23    (Co-Founder and current director of Xandros, Inc. and Xandros, Inc.'s Rule 30(b)(6) designee)

24    and Mr. Frederick Berenstein (Co-Founder and current Chairman of the Board of Xandros, Inc.).

25    *Both* Mr. Roseman and Mr. Berenstein *deny that Mr. Bego was ever an officer, director, or*

26    *employee of Xandros, Inc.*  (Stuart Decl. Ex "X", p. 20, l.3-p. 8; Stuart Decl. Ex "Y" p. 13, ll. 5-8,

27    _____

28    [3] See Stuart Decl. ¶¶ 2-33.

1    p. 40, l. 12-p. 41, l. 12).[4]  As the unrehearsed, sworn deposition testimony of Xandros, Inc.'s own

2    officers, directors, and 30(b)(6) witnesses demonstrates, Mr. Bego lacked any authority to bind

3    Xandros, Inc. to the SAA, the SAA is in fact void *ab initio*, and "there is no basis for submitting

4    any question to an arbitrator" *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925

5    F.2d 1136, 1140-41 (9th Cir. 1991).

6    **C.   LGP Is Not Entitled To Arbitrate The Fraud Claims Against It As It Is Not A
         Signatory To The SAA**

7

8        Defendant LGP can under no circumstances take advantage of the arbitration clause of the

9    SAA, even if this Court finds such a contract was formed.  Defendant LGP was sued for fraud

10   only, and it is not a signatory to the SAA or the Notes and therefore cannot take advantage of the

11   provisions of either.  Moreover, Defendants themselves have denied that LGP is an agent or alter

12   ego of Xandros, Inc. and thus are precluded from asserting in their motion that LGP was an alter

13   ego or agent of Xandros, Inc. or merely relying on Plaintiff's boilerplate alter ego averments "on

14   information and belief" in the First Amended Complaint.

15   **D.   Disputes Regarding The Notes Are Not Subject To The SAA's Arbitration
         Clause**

16       The only documents asserted by Plaintiff in this action—the three Notes—do not contain

17   an arbitration clause.  Indeed, the face of the Notes demonstrate the unambiguous intent of the

18   parties that disputes relating to the Notes be resolved *in a court of law*: Paragraph 4.4 of each

19   Note provides that "[i]f an action at law or in equity is necessary to enforce or interpret the terms

20   of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs and

21   disbursements in addition to any other relief to which such party may be entitled." *Black's Law*

22   *Dictionary* defines "action" as a proceeding ***in a court of justice*** by which one demands or

23   enforces one's rights." *Black's Law Dictionary* 28 (6th ed. 1990) (emphasis added).  In

24   committing to such language, *both* Lindows and Xandros, Inc. expressed their intent and

25   expectation that this dispute would be heard in a court of law, and not in arbitration.

26   _____

27   [4]  Mr. Bego's Declaration also claims that he was an "acting President of Xandros (Inc.)" in 2001
     and 2002, though this fallacious claim is plainly refuted by Defendants' own witnesses, as well as

28   by Mr. Bego himself.  See, e.g., Carmony Declaration, Exhibits "A" and "B."

### E.   Extrinsic Evidence Demonstrates The Parties Did Not Intend To Arbitrate Disputes Relating To The Notes

Though the Notes themselves are unambiguous and thus do not require interpretation beyond their four corners, the admissible extrinsic evidence demonstrates that the parties intended that the Notes would *not* be subject to arbitration.  Even should the court admit the SAA into evidence and consider the recently-refuted testimony of Mr. Bego, Defendants have produced no evidence supporting their sweeping claim that the Notes and SAA are part of a single transaction—indeed, each of the Notes are independent legal instruments not conditioned upon provisions of the SAA or various extrinsic unsigned and/or inadmissible "letter agreements" offered by Defendants.  Despite Defendant's attempt to cast the three Notes as subject to the SAA, the balance of the admissible evidence belies such a claim.[5]

## II.   FACTS

### A.   Procedural History

In February, 2003, almost a year ago, Defendants first filed the instant Motion.  The Motion papers Defendants filed a year ago are identical to the now-pending motion in all substantive respects, including the Bego Declaration.  Yet, at the hearing on Defendants' Motion, Judge Moskowitz declined to grant the motion and instead granted Plaintiff's request to permit discovery on the issues and assertions raised in Defendants' Motion.[6]  Plaintiff's Opposition presented the Court with evidence which directly contradicted the declaration of Michael Bego—Defendants' sole declarant—and urged the Court to permit the cross examination of Mr. Bego in order to demonstrate the falsity of several statements in his declaration.  Though Judge Moskowitz gave little explanation for his order granting Plaintiff's request for further discovery, it was apparent that the Court harbored reservations regarding the credibility and legitimacy of Defendants' evidence and arguments.

Such a concern was, it turns out, well justified.  Mr. Bego's February 18, 2003 Declaration now pending before the court asserts that "I am currently Vice President of Linux

---

[5] See Plaintiffs Objections to Evidence submitted by Defendants, filed and served herewith.

[6] See footnote 2.

1   Global Partners, Inc. ("Linux") and acting as Sales & Marketing Director of Xandros,

2   Inc.("Xandrios") [sic]. I have been employed by Linux since July 2000 and have been working

3   with Xandros since May 2001. I was the acting President of Xandros from May 2001 through

4   May 2002." Yet Xandros, Inc.'s Co-Founder and current Chairman of the Board, Frederick

5   Berenstein, testified in November, 2003 that Mr. Bego was, in fact, *never an officer, director, or*

6   *employee of Xandros, Inc.:*[7]

7       **Q.** Has Mr. Bego, to your knowledge, ever been an officer or director of Xandros, Inc.?
8       **A.** No.

9                                    . . .

10      **Q.** When did his employment with Xandros, Inc. end?
11      **A.** He was never an employee of Xandros, Inc.

12   This testimony was directly corroborated by the testimony of Xandros, Inc.'s Co-Founder, current

13   member of the Board of Directors, and Xandros, Inc.'s Rule 30(b)(6) designee, Mr. William J.

14   Roseman who also testified that Mr. Bego was *never an officer or director of defendant Xandros,*

15   *Inc.:*[8]

16      **Q.** ...Has Mr. Bego ever been an employee of Xandros, Inc.?
17      **A.** No. I suppose not.

18      **Q.** ...Mr. Bego. Has he held any other positions with Xandros, Inc., as an officer or
           director?
19      **A.** No

20   The unrehearsed, sworn deposition testimony of Xandros, Inc.'s own co-founders, officers,

21   directors and 30(b)(6) witnesses demonstrates that Mr. Bego lacked any authority to bind

22   Xandros, Inc. to the SAA. As such, the SAA (and its arbitration clause) is in fact void *ab initio*.

23   As Defendants acknowledge that the SAA is the only document containing an arbitration clause,

24   Defendants' motion must fail.

25

26

27   [7] Berenstein Deposition Transcript, p. 12, lines 5-8, attached as Ex. "X" to the Decl of C. Stuart.

28   [8] Roseman Deposition Transcript, p. 22, lns. 8-10 and p. 20, lns. 19-22, attached as Ex. "Y" to the
       Decl of C. Stuart.

1      Further, despite this Court's grant of Defendants' joint Ex Parte Application To Continue

2   Hearing On Defendants' Motion to Compel Arbitration ("Ex Parte App."), Defendants continue

3   to fail and refuse to produce Mr. Bego for deposition.  This Court is now familiar with the

4   tortured history of Plaintiff's efforts to compel Mr. Bego to sit for deposition as it has previously

5   reviewed Plaintiff's Opposition to Defendants' Ex Parte App.  Rather than reciting this history

6   again, Plaintiff incorporates by reference its Opposition to the Ex Parte App. and the Stuart

7   Declaration filed therewith.[9]  Since this Court's December 23 ruling granting Defendants'

8   Application, Plaintiff's counsel has repeatedly contacted Mr. Bego's new counsel to attempt to

9   schedule Mr. Bego's deposition.[10]  Defendants first ignored Plaintiff's requests, then proclaimed

10  an inability to produce Mr. Bego until after Plaintiff's deadline for responding to Defendants'

11  instant Motion.[11]

12      Mr. Bego's unwavering refusal to submit timely to properly-noticed depositions flaunts

13  this Court's authority.  Because Mr. Bego is the only witness submitting testimony before the

14  court, Defendants refusal make Mr. Bego available obviously prejudices Plaintiff's ability to

15  oppose the Defendants' Motion.  Plaintiff respectfully requests that Defendants such an affront

16  not be tolerated and that Defendants' Motion be denied.

17      **B.    The Dispute Between The Parties**

18      Lindows is a computer software developer which manufactures and sells a computer

19  operating system called "LindowsOS."  Defendant Xandros, Inc. ("Xandros") is also a computer

20  operating system developer.  Both Lindows and Xandros develop software based on the freely

21  available "open source" Linux software code.  Defendant Linux Global Partners ("LGP") is the

22  sole parent corporation of Xandros, Inc.

23      Plaintiff's claims originate from activity beginning in the later half of 2001 when

24  defendants Roseman and Bego, representing LGP, made contact with Lindows executives and

25  requested that Lindows invest in Xandros, Inc.  As detailed in the First Amended Complaint,

26  [9] See also, ¶¶ 2-38 to Decl. of Stuart filed herewith.

27  [10] Stuart Decl. ¶¶ 32-38.

28  [11] Stuart Decl. ¶¶ 32-38.

1    Messrs. Bego and Roseman represented to Lindows executives, as well as to the general public

2    through press releases and interviews, that Defendant LGP had "committed" $10,000,000 in

3    equity financing to Xandros, Inc. to permit Xandros to develop its Linux operating system

4    software.  Roseman further represented to Lindows executives that LGP was "standing behind"

5    Xandros, Inc. and would continue to support Xandros, Inc. financially to allow it to develop its

6    software product.

7        Based on these representations, in November and December, 2001, Lindows made three

8    loans to Xandros, Inc. (but not to LGP or non-party Xandros Corp., which are separate

9    corporations) for $250,000 each.  The Notes were payable within one year, and could, upon the

10   occurrence of certain conditions, convert to an equity stake in Xandros, Inc.  (Stuart Decl. Exs. Z,

11   AA, BB).  Over the course of the year between the making of the Notes in November/December,

12   2001 and their due dates in November/December 2002, Lindows and Xandros, Inc. had numerous

13   conversations regarding the strength of Xandros, Inc.'s sales, the $10,000,000 LGP funding

14   commitment, and Xandros, Inc.'s general financial health, again in the context of a potential

15   merger, purchase, or further investment.

16       In November and December, 2002, Lindows timely demanded payment on the Notes.

17   Xandros, Inc. refused to pay Lindows.  Moreover, since loaning Xandros $750,000, Lindows has

18   come to learn that in truth and in fact LGP had never made a $10,000,000 commitment to

19   Xandros, but that all Defendants have made this and other misrepresentations in furtherance of a

20   fraudulent conspiracy between Xandros, Inc., LGP, Bego, and Roseman to bilk Lindows and

21   others into financing Xandros, Inc.

22       **C.    The Arbitration Issue**

23       Upon Xandros, Inc.'s refusal to repay the Notes, and upon learning of Defendants'

24   fraudulent conspiracy, Lindows filed the instant action for violations of the Securities and

25   Exchange Act of 1934, Fraud, Negligent Misrepresentation, Breach of Contract, and Rescission

26   relating to the Promissory Notes.  Defendants responded with the instant Motion, claiming that an

27   arbitration clause in a separate software license agreement between only Lindows and Xandros,

28   Inc. (not LGP) governed the rights of all parties to the dispute—including the rights of LGP and

1    Roseman, who were not parties to the Notes or the SAA.  The SAA" is an agreement granting

2    Lindows a license to incorporate certain portions of software code developed by Xandros into the

3    Plaintiff's "LindowsOS" software product in exchange for payment of royalties from sales of

4    LindowsOS.  Lindows has not alleged any breach of the SAA.

5         In its original opposition to Defendants' motion to compel arbitration, Lindows refuted a

6    number of claims by Defendants, impeaching the declaration of Defendant Bego relating to his

7    relationship with Xandros and LGP.  Lindows also argued that because only Lindows and

8    Xandros were parties to the SAA, LGP and Roseman had no standing to assert the SAA's

9    arbitration clause.  Further, Lindows objected to Defendants' failure to present any evidence on

10   the relationship between the parties relevant to the standing of LGP and Roseman—non-parties to

11   the SAA.  Given these and other infirmities in Defendants' motion, Plaintiff requested discovery

12   and an evidentiary hearing to resolve a number of factual inconsistencies.

13        On May 16, Judge Moskowitz granted Plaintiffs request for discovery and an evidentiary

14   hearing, ordering that the parties conduct discovery to resolve the contested factual issues and

15   return for an evidentiary hearing originally set for 60 days thereafter[12]—on July 14, 2003.  As

16   described in Plaintiff's Opposition to Defendants' Ex Parte Application, Defendants thereafter

17   orchestrated a campaign of stalling, delay, and avoidance tactics which—despite the orders or

18   directions of this Court and two other of this Court's judicial officers—continues to this very day.

19                          **III.   ARGUMENT**

20   **A.    No Agreement To Arbitrate Exists Between Lindows And Any Of The Named
              Defendants**

21

22            **1.    No Contract Containing An Arbitration Clause Was Ever Formed
                      Between Lindows and Xandros, Inc. Because Bego Had No Authority
                      To Bind Xandros, Inc.**

23

24        Only Michael Bego signed the SAA on behalf of Defendant Xandros, Inc. (as well as on

25   behalf of non-party "Xandros Corp."—which is not involved in this dispute because Xandros

26   ------------------------------------------------

     [12]  Plaintiff refers the Court to the detailed recitation of the tortured history of Mr. Bego's
27   unwaivering refusal to submit to deposition contained in Sections I and II of Plaintiff's
     Opposition to Defendants' Ex Parte Application and Exhibits A-Q to the Declaration of Colbern
28   C. Stuart III in support thereof.

Corp. is not a party to the Notes) (Bego Decl., A).  Yet the testimony of Xandros, Inc.'s own witnesses reveals that Bego has never been an officer, director, or employee of Xandros, Inc. and has thus never had authority to form a contract on behalf of Xandros, Inc.

Although Bego has refused to appear to testify regarding these matters, both Defendants Roseman and Berenstein have stated under oath that Bego was never an officer or director of Xandros, Inc.  Mr. Frederick Berenstein is a Co-Founder, Co-Chairman, and President/CEO of LGP and hired Mr. Bego to serve in various roles for LGP and Xandros Corporation.[13]  In Mr. Berenstein's deposition on November 6, 2003, he gave the following testimony with respect to Mr. Bego's positions with Xandros, Inc.:[14]

> Q. Has Mr. Bego, to your knowledge, ever been an officer or director of Xandros, Inc.?
> A. No.

Indeed, Mr. Berenstein clarified that Mr. Bego was President of (non-party) Xandros Corp., but *not* President of Xandros, Inc.[15]

Mr. William Roseman is the other Co-Founder of LGP and, additionally, has been a director of Xandros, Inc. since its inception.[16]  Mr. Roseman was also designated by all Defendant as their 30(b)(6) witness with respect to all relevant matters.  Mr. Roseman's testimony of October 9, 2003 agrees with that of Mr. Berenstein:[17]

> Q. …Has Mr. Bego ever been an employee of Xandros, Inc.?
> A. No.  I suppose not.
>
> Q. …Mr. Bego.  Has he held any other positions with Xandros, Inc., as an officer or director?
> A. No.

---

[13] Berenstein Deposition Transcript p. 11-12 attached as Ex. "X" to the Stuart Decl.

[14] Berenstein Deposition Transcript, p. 12, lines 5-8, attached Ex. "X" to the Stuart Decl.

[15] Roseman Deposition Transcript, p. 45, lines 18-23, attached as Ex. "4" to Stuart Decl.

[16] Roseman Deposition Transcript, pp. 13, 15, attached as Ex. "Y" to the Decl of C. Stuart.

[17] Roseman Deposition Transcript, p. 22, lns. 8-10 and p. 20, lns. 19-22, attached as Ex. "Y" to the Stuart Decl.

1    Moreover, even Mr. Bego contradicted his own declaration regarding his employment

2    when he wrote Mr. Carmony, stating that he has "never been an officer or director of Linux

3    Global Partners." (Carmony Decl. Exs. "A" and "B")

4        Because the only credible evidence before the Court with respect to whether Bego was

5    capable of binding Xandros, Inc. to the SAA containing the arbitration clause shows that he was

6    *not* in fact President of Xandros, Inc., no such contract was ever formed. "If the [individual who

7    signed the contract] did not have the actual or apparent authority to execute the contract, the

8    corporation cannot be bound." *Three Valleys Municipal Water District v. E.F. Hutton &*

9    *Company*, 925 F.2d 1136, 1141 (9th Cir. 1991). It is the Court's duty to "determine whether a

10   contract ever existed" and "unless that issue is decided in favor of the party seeking arbitration,

11   there is no basis for submitting any question to an arbitrator." *Id.*(citing *Camping Constr. Co. v.*

12   *District Council of Iron Workers, Local 378*, 915 F.2d 1333, 1340 (9th Cir.1990)).  The Ninth

13   Circuit in *Three Valleys* reversed the District Court's granting of a motion to compel arbitration

14   and instructed the Court that if the agreement in question (which contained the arbitration clause)

15   was signed by an individual who did not have the authority to bind the corporation, the motion to

16   compel arbitration must be denied. *Id.* at 1140-41, 1144.

17          **2.    Defendant LGP Is Not Entitled To Enforce The SAA And Thus Has
                    No Basis For A Demand To Arbitrate The Fraud Claim**
18
         In the event the Court declines to exclude the Bego declaration and/or the SAA,
19
     Defendant LGP is not entitled to assert rights under the SAA.  LGP is not a party to the SAA or
20
     the Notes, and is sued herein only on separate fraud counts unrelated to the SAA.  Defendants
21
     attempt to rely on averments in Lindows' First Amended Complaint to establish that LGP is
22
     entitled to the benefit of the arbitration clause.  This tactic, however, must fail because (a)
23
     Defendants have made admissions contradicting the averments in Lindows' complaint, and (b)
24
     Defendants have the burden to submit *substantive evidence* in support of their motion.
25
               **(a)    Defendants Have Made Statements Under Oath Contradicting
26                      Their Claim To The Benefit Of The Arbitration Clause**

27       Because LGP is not a signatory to the SAA, in order for Defendant LGP to be entitled to

28   the benefit of the arbitration clause, it must establish that it is an alter ego of Xandros.  However,

*Defendants' have denied that this is the case* in an answer to a request for admission propounded by Lindows:[18]

> **REQUEST FOR ADMISSION NO. 27:**
> Admit that LGP is the alter ego of XANDROS.
> **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**
> Denied.

LGP has put forth *no evidence* showing that it is entitled to the benefit of the arbitration clause. Regardless of the Court's ruling for other named Defendants, the Court should rule that LGP is not an agent or alter ego of co-defendants and therefore may not compel arbitration.

### (b)   Defendant LGP May Not Rely On The "Information And Belief" Averments In Lindows' Complaint To Support Their Motion

Defendants attempt to satisfy the burden of proving entitlement to arbitration under the SAA by relying on averments in Lindows' First Amended Complaint (FAC). In its FAC, Lindows avers, *on information and belief*, that LGP is the alter-ego of Xandros, Inc. Not surprisingly, Defendants offer no *substantive proof* admitting that they are, in fact, the alter ego or agents of Xandros, as doing so would be a damning admission. Instead, they attempt to "have their cake and eat it to" by merely referencing allegations in Plaintiff's FAC without admitting to the truthfulness of those allegations.

Such a procedural mirage is plainly not permitted procedure under a motion to dismiss such as Defendants have brought, which requires that the movant introduce *facts* supporting its Motion. Although allegations in a complaint are presumed true during a *facial* attack on the complaint (i.e., a Rule 12(b) motion claiming that the complaint lacks averments demonstrating the court's jurisdiction), such allegations are *not* presumed true when the Defendants' challenge is based on underlying facts of the case. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) ("[in determining] whether this law suit survives the [defendant's] factual attack . . . we do not accord any presumptive truthfulness to the allegations in the complaint"); *Williamson v. Tucker*, 645 F.2d 404, 412-413 (5th Cir. 1981) (*citing Mortensen v. First Federal Savings and*

---

[18] Requests For Admission to Xandros, Inc., attached as Ex. V to the Decl of C. Stuart.

1   *Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977) ("[in a] facial attack . . . the court must

2   consider the allegations of the complaint as true, [but in a] factual attack, . . . no presumptive

3   truthfulness attaches to plaintiff's allegations")).  In a motion to dismiss which requires a finding

4   of fact, such as the one before the Court, Defendants have the burden of presenting competent

5   evidence by means of declarations or discovery to support such a challenge.  *McMaster*, 177 F.3d

6   at 940 (stating that factual attacks are to be decided "by looking to matters outside the

7   pleadings").

8          Moreover, Defendant LGP's sworn responses to Requests For Admissions should carry

9   the day over the "on information and belief" averments in Lindows' FAC.[19]  As a non-parties to

10  the SAA, LGP has no standing to assert the benefits of its arbitration clause, and the motion

11  should therefore be denied at least as to Defendant LGP.

**B.   Defendants Have Submitted No Admissible Evidence To Support Their Motion**

  **1.   The Bego Declaration and Exhibits Thereto Should Be Excluded Because of Mr. Bego's Failure to Appear for Deposition**

15         Just last month Defendants represented to this Court that they needed a "brief"

16  continuance "solely to accommodate Plaintiff's desire to take the deposition of Mr. BEGO *before*

17  *Plaintiff has to file its Opposition*".[20]  The Court granted Defendants a 20-day continuance to

18  "complete arrangements with new counsel and his deposition can be completed by Plaintiff's

19  counsel." [21]  Yet despite the Court's grant of a brief reprieve, Defendants *continue* to fail and

---

[19] Even if Defendants could rely on Lindows' complaint averments, those averments allege that Roseman, Bego and LGP are the agents / alter ego of *Xandros, Inc.* – and because there is no valid SAA agreement between Xandros, Inc. and Lindows, Lindows' averments that Defendants are related to Xandros, Inc. do not show that those defendants are entitled to the benefit of the SAA.

[20] Reply Memorandum of Defendant Michael Bego In Support of Ex Parte Application To Continue Hearing on Defendants' Motion to Compel Arbitration (emphasis added).

[21] Ex Parte Application of Defendants Xandros, Inc., Linux Global Partners, Inc., and William Jay Roseman to Continue Hearing On Defendants' Motion to Compel Arbitration, p. 2, ll22-24.

1    refuse to produce Mr. Bego (the sole witness supporting Defendants' motion)[22] even though

2    Plaintiff's counsel has made *repeated* attempts to schedule a date for Mr. Bego's deposition.

3    (Stuart Decl. ¶¶ 32-38).

4       "[I]t is fundamental that a party that does not provide discovery cannot profit from its own

5    failure." *General Atomic v. Exxon Nuclear*, 90 F.R.D. 290, 308 (S.D. Cal. 1981).  Defendants'

6    refusal to produce Mr. Bego is particularly prejudicial given than their motion is based *solely* on

7    his declaration.  Moreover, Defendants' other witnesses—and even Mr. Bego himself—have

8    given sworn testimony or made confessions which *directly refute* critical allegations in the Bego

9    declaration.  As *all* defendants have defied this Court's directives—and even reneged on their

10    own representations to this Court—to produce Mr. Bego "before Plaintiff has to file its

11    Opposition", this Court should exclude Mr. Bego's declaration and the exhibits thereto and deny

12    defendants' Motion.

13       Rule 37 exclusion sanctions are now appropriate under Fed. R. Civ. P. 37(d) which

14    provides:

15
16        "If a party . . . fails to appear before the officer who is to take the
deposition ... the court in which the action is pending ... may make
17        such orders in regard to the failure as are just, and among others it
may take any action authorized under subparagraphs (A), (B), and
18        (C) of subdivision (b)(2) of this rule."

19    Subparagraph B referenced above allows the Court to make:

20        "An order refusing to allow the disobedient party to support or
oppose designated claims or defenses, or <u>prohibiting that party from</u>
21        <u>introducing designated matters in evidence</u>." (emphasis added)

22

---

23    [22]   Defendants may argue that Bego never "failed to appear" for his deposition but such an

24    argument is wrong for two reasons.  First, his failure to appear at his October 29, 2003 deposition
was a clear failure to appear at a properly-noticed deposition.  (See Certificate Of Non-

25    Appearance, Ex. F to Stuart Decl.).  Second, even Bego's numerous last minute cancellations
(detailed in Lindows' Opposition to Defendants' Ex Parte Application To Continue Hearing, filed

26    December 15, 2003 and at ¶¶ 2-38 of the Stuart Decl.) constitute a "failure to appear" under Fed.
R. Civ. P. 37(d).  *Henry v. Gill Industries*, 983 F.2d 943, 947 (9th Cir. 1993) (finding that

27    plaintiff's "twice [notifying] defendants the business day before his properly noticed depositions"

28    constituted a failure to appear and warranted sanctions).

1    Lindows requests that the Court exclude Mr. Bego's declaration and exhibits thereto in

2  order to prevent Defendants from benefiting from their flagrant disregard of this Court's several

3  orders directing Mr. Bego to sit for deposition. (Stuart Decl., ¶¶ 2-38).[23] This exclusionary

4  sanction is available to the Court under Fed. R. Civ. Pro. 37(d) even without Mr. Bego being in

5  violation of a court order. *Hilao v. Estate of Marcos*, 103 F.3d 762, 764-65 (9th Cir. 1996).

6    Courts have established a four factor test for determining whether to issue an exclusionary

7  sanction. These factors, each of which favors the Plaintiff, are as follows:

8           (1) Mr. Bego's **explanation for his failure to appear** and his
            failure to comply with the discovery order;
9

10          (2) the **importance of the testimony** of Mr. Bego to Lindows
            defense of Defendant's Motion To Compel Arbitration;

11          (3) the **prejudice** suffered by Lindows if Bego's testimony is
            admitted;
12
            (4) the **possibility of a continuance** being able to cure the
13          prejudice caused by Mr. Bego.

14

15  *Reilly v. NatWest Markets Group Inc.*, 181 F.3d 253, 269 (2nd Cir. 1999); *Barrett
    v. Atlantic Richfield*, 95 F.3d 375, 380 (5th Cir.1996); *In re Paoli R.R. Yard PCB
16  Litigation*, 35 F.3d 717, 791 (3rd Cir. 1994).

17    **(1)   Bego No Longer Has Explanation For His Repeated Failure To Appear**

18    Mr. Bego has offered no appropriate justification for his failure to appear. Mr. Bego

19  previously asserted that he encountered "scheduling problems" (Stuart Decl. Ex. "F") or that a

20  potential conflict of interest (Stuart Decl. Exs. "G", "I", "J", "K", "L", "M", "N", "O", "Q")

21  prevented him from appearing *on four separate occasions*, it should now be apparent that these

22  explanations were mere excuses advanced in an effort to avoid this Court's jurisdiction. Mr.

23  Bego should not be permitted to file a motion and declaration requesting relief from this Court

24  while at the same time flaunting this Court's authority to compel him to provide discovery.

25    Though Mr. Bego's repeated refusals to appear are willful, the Rule 37(d) exclusion

26  sanction is properly granted *even for innocent behavior. General Atomic*, 90 F.R.D. at 307

27

28  [23] Plaintiff's Opposition to Defendants' Ex Parte Application is incorporated herein by reference.

1    ("Imposition of the severe sanctions such as dismissal or default judgment require a finding of

2    willfulness, bad faith, or fault, whereas the lesser sanctions may be predicated on an innocent

3    failure").  Thus, even if this court finds that Mr. Bego's repeated refusals to attend his deposition

4    are merely negligent, *an exclusionary sanction is still appropriate*.

5         **(2)      Bego's Testimony Is Important To Lindows' Defense Of The Pending Motion**

6              Clearly Mr. Bego's testimony is critical to the pending motion; the declaration of Mr.

7    Bego's is the *only* declaration submitted by Defendants in support of their Motion.  Furthermore,

8    a central issue in this Motion relates to whether Defendant Bego had the authority to execute the

9    SAA on behalf of Defendant Xandros, Inc.  In Paragraph 1 of his declaration, Mr. Bego claims he

10   was "acting President of Xandros from May 2001 through May 2002".  Yet, Messrs. Roseman

11   and Berenstein *denied that Mr. Bego was ever an officer or director of Defendant Xandros* in

12   their depositions.  Mr. Bego also claims in that paragraph that he is "currently Vice President of

13   Linux Global Partners"—a statement he refuted in a March 25, 2003 e-mail addressed to

14   Lindows' President, Kevin Carmony.[24]  Given the abundance of testimony directly refuting Mr.

15   Bego's Declaration, it was important for Lindows to depose Bego and have the opportunity to

16   cross-examine his statement regarding his claimed relationships with Xandros, Inc. and LGP.

17   Because Lindows is deprived of his testimony on these issues, Lindows has satisfied factor two.

18        **(3)      Lindows Will Be Prejudiced If Bego's Declaration or Testimony Is Allowed**

19              As to the third factor—the prejudice Lindows would suffer if Mr. Bego's Declaration is

20   allowed to be admitted—such prejudice is clear.  Defendants will be able to rely on the Bego

21   Declaration while Lindows will have had no opportunity to cross-examine the assertions to prove

22   that he was *not* in fact authorized to act on behalf of Xandros, Inc.  As Mr. Roseman and Mr.

23   Berenstein both *deny* that Mr. Bego held a position of authority with Xandros, Inc., the

24   opportunity to confront Mr. Bego with this testimony was critical.

25

26   _____

27   [24]  Attached as Exhibit "A" to the Carmony Declaration in support of Plaintiff's Opposition to
     Defendants' Motion to Compel Arbitration.  In the e-mail, Mr. Bego states that he has "never

28   been an officer or director of Linux Global Partners."

(4)   **A Continuance Is Not An Appropriate Cure For The Prejudice Against Lindows**

This Court already granted Mr. Bego's request for a continuance for the sole purpose of allowing Bego to appear for deposition,[25] yet he has again failed to make himself available despite numerous requests by Plaintiff, which were largely ignored by both defense counsel. (Stuart Decl. ¶¶ 35-38). The sanction of exclusion is now appropriate.

2.   **The Bego Declaration Should Be Excluded As Lacking Foundation**

As detailed in Plaintiff's Objections to Evidence filed and served herewith, the Bego Declaration should also be excluded for the additional reason that it lacks the necessary foundation required by Federal Rule of Evidence 602.

Mr. Bego claims to have the personal knowledge necessary to provide a declaration based upon his role as past President of Xandros, Inc. and his current relationship with LGP. (Bego Decl., ¶1). However, as discussed in more detail herein, Messrs. Berenstein and Roseman both testified that Bego was never an officer or director of Defendant Xandros, Inc. (Stuart Decl., Exs. X p. 13, lns. 5-8 and Y, p. 20, lns. 19-22). Further, Mr. Bego has himself contradicted his claim in Paragraph 1 of his Declaration that he is an officer of Linux Global Partners, Inc. and a Director of Xandros, Inc. Mr. Bego admitted in a March 25, 2003 email addressed to Lindows' President, Kevin Carmony, that "he is not now and has never been an officer or director of Defendant LGP." Carmony Decl., Ex. "A." Further, in a letter to Mr. Carmony dated March 28, 2003, Mr. Bego reiterates that he is not currently an officer or director of Xandros, Inc., Xandros Corporation, or Linux Global Partners. (Carmony Decl., Ex. "B").

In view of the inconsistent statements from Bego and the testimony of Berenstein and Roseman, it is apparent that Mr. Bego does not have sufficient personal knowledge to make the statements he makes in his Declaration concerning LGP and Xandros. *Ward v. First Fed'l Sav. Bank*, 173 F.3d 611, 617-618 (7th Cir. 1999) (holding that an employee's awareness of statements made by the President and CEO of his company does not establish sufficient personal knowledge for the employee to testify about those statements). Without the personal knowledge required by

---

[25] See this Court's Order of December 22, 2003.

1   Fed. R. Evid. 602, Bego's Declaration should be excluded from consideration for lack of

2   foundation.

3      **3. Defendants' Motion Should Be Denied Due To A Lack Of Supporting**
     **Evidence**

4

5      Defendants bear the burden of proving—through independent evidence—entitlement to

relief. *McMaster* 177 F.3d at 940. The Bego Declaration and exhibits thereto are the only

6   evidence Defendants submit in support of their motion to compel arbitration. Plaintiff has filed

7   herewith and incorporates herein separate Objections to Evidence laying out the many

8   shortcomings in Defendants' evidence. Because the Bego Declaration and exhibits thereto should

9   be excluded as a discovery sanction or as objectionable under the Federal Rules of Evidence,

10  Defendants have no evidence to support their motion and the motion should be denied.

11  *McMaster v. United States, 177 F.3d 936, 940 (11th Cir. 1999).*

12

13     **C. The Promissory Notes Reveal No Agreement To Waive Lindows' Right To A**
     **Jury Trial In Favor Of Arbitration**

14     The right to a trial by jury in a civil case is guaranteed by the U.S. Constitution and can

15  not be denied without a fair analysis and finding that, in fact, there exists an *actual agreement* to

16  waive one's fundamental right to trial by jury. U.S. Const. amend. VII; *Granfinanciera, S. A. v.*

17  *Nordberg*, 492 U.S. 33, 51-52 (1989); *Danford v. Schwabacher*, 342 F.Supp. 65, 68 (N.D. Cal.

18  1972) ("[c]ourt proceedings would afford the parties full discovery, trial by jury, judicial

19  consideration of the points of law, and a full judicial review. No waiver of these rights should be

20  *enforced unless voluntarily and knowingly made*") (emphasis added).

21     Because the right to a jury trial is a fundamental privilege, before invoking the provisions

22  of the Federal Arbitration Act ("FAA"), a court must analyze the agreement under state law

23  contract principles to determine whether an actual agreement to arbitrate exists. *First Options of*

24  *Chicago v. Kaplan*, 514 U.S. 938, 944 (1995) ("[w]hen deciding whether the parties agreed to

25  arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that

26  govern the formation of contracts"). Although Defendants rely heavily on the FAA's favorable

27  view of arbitration agreements, "the FAA is at bottom a policy guaranteeing the enforcement of

28  private contractual arrangements" and therefore a court must "look <u>first</u> to whether the parties

1   agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the

2   agreement." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002) (citation omitted, emphasis

3   added).  A court may not "override the clear intent of the parties, or reach a result inconsistent

4   with the plain text of the contract, simply because the policy favoring arbitration is implicated."

5   *Id.*

6
7
      **1.    The Clear Intent Of The Parties—As Evidenced By The Unambiguous
             Terms Of The Notes Themselves—Was To Resolve Disputes In A
             Court Of Law**

8        A fundamental principle of contract interpretation directs a court to first look at the face of

9   a contract to ascertain the intent of the parties. *Klamath Water Users Protective Ass'n v.*

10  *Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("when the terms of a contract are clear, the intent

11  of the parties must be ascertained from the contract itself").  Only when a contract is ambiguous

12  is evidence extrinsic to the contract to be examined. *Sayble v. Feinman*, 142 Cal.Rptr. 895, 898

13  (Ct. App. 1978) ("[w]e look to the contract itself and interpret it so as to give effect to the intent

14  of the parties"); *Foothill Properties v. Lyon/Copley Corona Associates*, 54 Cal.Rptr.2d 488, 492

15  (Ct. App. 1996).

16       Examining the unambiguous language of the Promissory Notes reveals the parties' clear

17  intent to resolve disputes arising from the Notes in a court of law. (*See* Bego. Decl. Exh. "B" and

18  "D").  It is not disputed that *the Notes do not contain an arbitration clause*.  Rather, the intent of

19  the parties to resolve any disputes *in court* is clear from Paragraph 4.4 of each Note which

20  provides that **"[i]f any <u>action at law or in equity</u> is necessary to enforce or interpret the terms**

21  **of this Note**, the prevailing party shall be entitled to reasonable attorneys' fees, costs and

22  disbursements in addition to any other relief to which such party may be entitled." (emphasis

23  added).  An "action at law or in equity" is a court proceeding, not an arbitration.  Black's

24  Dictionary defines 'action' as "a lawsuit brought in court"; Webster's Dictionary defines 'action'

25  as "a proceeding *in a court of justice* by which one demands or enforces one's right."  Black's

26  Law Dictionary 28 (6th ed. 1990); Webster's Ninth New Collegiate Dictionary (1987), p. 54,

27  definition 1 (emphasis added).  Moreover, the phrase "at law or in equity" has been held to allow

28

1    redress in court even when a contract *does* contain an arbitration clause. *Summer Rain v.*

2    *Donning Company / Publishers*, 964 F.2d 1455 (4th Cir. 1992).

3           The Notes are independent legal instruments between a different set of parties from the

4    SAA. The Notes contain separate and independent titles, recitations, terms and terminology,

5    signature blocks, forum selection clauses and dates and in no way incorporate any other legal

6    instruments. The SAA is executed by Xandros Corp. and Xandros, Inc.; the Notes are only

7    executed (without proper authority) by Xandros, Inc. There is consequently no need to look to

8    the SAA or any other document to discern that the parties intended what the unambiguous

9    language of the Notes reflects—disputes may be resolved in a court of law.

10          Plaintiff respectfully suggests that granting Defendants' motion would "override the clear

11   intent of the parties, or reach a result inconsistent with the plain text of the contract." *E.E.O.C.*,

12   534 U.S. at 294. Absent evidence that the Notes include an agreement to arbitrate and absent any

13   compelling reason to look beyond the four corners of the Notes themselves, there is no basis on

14   which to find that the parties agreed to arbitrate this dispute.

15                      **2.    Even If The Court Looks Beyond The Unambiguous Language Within**
                               **The Four Corners Of The Notes, The Evidence Shows That The**
16                             **Parties Did Not Intend To Arbitrate Disputes Relating To The Notes**

17          It is unnecessary to look beyond the four corners of the Promissory Notes to determine

18   how the parties intended disputes involving the Notes to be resolved. *Cerritos Valley Bank v.*

19   *Stirling*, 97 Cal.Rptr.2d 432, 437 (Ct. App. 2000) ("extrinsic evidence is not admissible to

20   contradict express terms in a written contract or to explain what the agreement was. The

21   agreement is the writing itself. . . . parol evidence cannot . . . be admitted to show intention

22   independent of an unambiguous written instrument") (citations omitted). However, even if the

23   Court looks to the (improperly executed) SAA and the (inadmissible)[26] "Letter Agreement"

24   (Bego Decl. Ex. C) and "Amendment," (Bego Decl. Ex. E), proper construction of these

25   documents again reveals no intent to arbitrate disputes involving the Promissory Notes.

26

27

     _____

28   [26] See Plaintiffs' Objections to Evidence, filed and served concurrently herewith.

1    Although the SAA contains an arbitration clause, "[a] party's agreement to arbitrate

2  disputes 'arising under or relating to' one contract does not obligate it to arbitrate disputes arising

3  under a separate contract." *Armco Steel Co., L.P. v. CSX Corp.*, 790 F.Supp. 311, 318 (D. D.C.

4  1991) (citing *In re Hops Antitrust Litigation*, 655 F.Supp. 169, 171-72 (E.D. Mo. 1987))

5  (arbitration clause requiring arbitration of 'any dispute arising out of or relating to this agreement'

6  *did not* require arbitration of plaintiff's claims relating to contracts which did not contain an

7  arbitration clause). As in *Armco Steel* and *In re Hops*, the arbitration clause in the SAA does not

8  obligate Lindows to arbitrate a separate and independent dispute under the Notes. As discussed

9  below, this lack of any agreement to arbitrate disputes relating to the Notes is demonstrated by (a)

10  the absence of an incorporation of the arbitration clause by reference; (b) the intent of Lindows in

11  entering the Promissory Notes (as detailed in the sworn Declaration of Lindows' President Kevin

12  Carmony); and (c) the fact that the SAA and Promissory Notes are not related.

13      (a)    **The SAA's Arbitration Clause Was Not Incorporated Into The Promissory**

14  **Notes**

15      Defendants make much of the fact that *one* of the Promissory Notes at issue mentions

16  inadmissible purported "Letter Agreement,"[27] and that inadmissible purported "Letter

17  Agreement" mentions the SAA. However, these insignificant references are wholly inadequate to

18  establish that the SAA's arbitration clause was incorporated into either the purported "Letter

19  Agreement" or the *all three* Notes. *Cariaga v. Local No. 1184 Laborers Intern. Union of North*

20  *America*, 154 F.3d 1072, 1074 (9th Cir. 1998) ("[u]nder California law, for one contract

21  document to incorporate another document by reference, the reference to the incorporated

22  document must be *clear and unequivocal*") (emphasis added).

23      In *Cariaga*, the plaintiff entered into an agreement including the provision:

24          "[plaintiff] shall . . . comply with and be bound by such terms and
            conditions of [defendants'] labor agreements as are applicable to the
25          work to be done hereunder, including, without limitation, the terms
            and provisions of any such agreements providing for the assignment of
26          work or the settlement of jurisdictional disputes"

27  _____

[27] "Plaintiffs' objections to the admissibility of this document are discussed in detail in Plaintiffs'
28  Objections to Evidence, filed and served concurrently herewith and incorporated herein.

1   *Id.* at 1073.  The labor agreements referenced in this provision (which the plaintiff was "bound

2   by" under the terms of the contract) contained an arbitration clause; however, the 9th Circuit held

3   that the arbitration clause did *not* apply to the plaintiff's dispute because the clause above failed

4   to "clearly and unequivocally incorporate by reference the [defendants'] arbitration procedure."

5   *Id.* at 1075.  The clause in *Cariaga* makes a much stronger reference to the agreement containing

6   the arbitration provision than the clauses in the inadmissible "Letter Agreement."  Thus it is clear

7   that the "Letter Agreement" does not result in an incorporation of the SAA's arbitration clause

8   into *all three* of the Notes.

9            Moreover, where a contract which does not contain an arbitration clause references a

10  second document which does contain an arbitration clause, the mere reference will not give effect

11  to the second document's arbitration clause:

12            Here the waiver of the right of access to court exists, if at all, by virtue
          of plaintiff's signature to two documents neither of which specifically
13        sets forth an agreement to arbitrate.  Both [of the contracts at issue] did
          no more than to refer to other documents in which the agreement to
14        arbitrate was included.  It would seem a harsh result to foreclose
          access to the court by a waiver thus obtained.

15

16  *Danford*, supra, 342 F.Supp. at 68.  The *Danford* court held that under such circumstances, "it

17  cannot be said that the agreement to arbitrate was voluntarily or knowingly made."  *Id.*  It

18  likewise cannot be said that the mere reference to the SAA in an inadmissible "letter agreement"

19  somehow demonstrates that Lindows *intended* to waive its right to a jury trial of its Promissory

20  Notes dispute.  Giving such a broad effect to a single arbitration clause would have absurd results

21  in other contexts such as employment contracts or securities agreements, many of which contain

22  boilerplate arbitration clauses.  Signatories of such contracts would certainly be shocked to learn

23  that by virtue of agreeing to arbitrate one type of dispute (i.e., employment disputes) they

24  therefore give up all rights to trial by jury in any potential dispute (i.e., tort suits) between both

25  parties to the contract.

26

27

28

1    **(b)    Lindows Specifically Intended NOT To Arbitrate Disputes Involving The**

2    **Notes**

3         If the Court desires further evidence of the parties' intent *not* to arbitrate disputes arising

4    from the Promissory Notes, such is provided in the Declaration of Lindows' President and COO,

5    Kevin Carmony. Mr. Carmony testifies that he has negotiated dozens of agreements on behalf of

6    Lindows and other employers as an officer, and that it is his habit and practice to agree to

7    arbitration clauses only in agreements which require complicated or involved performance from

8    Lindows. (Carmony Decl. ¶ 2). Only in agreements such as those where Lindows could

9    conceivably find itself as a defendant in an action will Mr. Carmony agree to the inclusion of an

10   arbitration clause. (Carmony Decl. ¶ 2). By contrast, Mr. Carmony's practice is to *not* agree to

11   arbitration clauses in agreements in which Lindows' performance is simple or, as in the Notes, in

12   which Lindows has no outstanding obligations other than those relating to collecting on each of

13   the $250,000 loans to Xandros. (Carmony Decl. ¶ 3).

14        Mr. Carmony also testifies that the arbitration clause of the SAA is purposefully narrow; it

15   requires arbitration only of controversies or claims "arising out of or relating to *this Agreement*."

16   (Carmony Decl. ¶ 5; Bego Decl. Exh. A ¶ 16.3). Mr. Carmony considered and rejected broader

17   arbitration clauses such as one requiring the parties to arbitrate any dispute relating to the

18   relationships between the parties. (Carmony Decl. ¶ 7). Thus, Mr. Carmony did *not* intend that

19   disputes relating to the Notes be subject to arbitration. (Carmony Decl. ¶ 8).

20        **(c)    The Promissory Notes Are Not Related To The SAA**

21        Interpretation to ascertain whether an agreement to arbitrate exists. In interpreting the

22   SAA's arbitration clause, this Court must find that this dispute "arises out of or relates to" the

23   software license described in the SAA. It should be apparent that the Notes (independent

24   convertible loans) do not "arise out of or relate to" the software license of the SAA.

25        The SAA describes a software distribution agreement which addresses product

26   development, marketing, intellectual property licenses and the treatment of confidential

27   information. The SAA contains no reference to loans or investments by Lindows. Defendants

28   assertion that the Promissory Notes were "contemplated by" and "integral parts of" the Strategic

1    Alliance Agreement (Mot. at p.6, lns. 18-19)—is without any support in the provisions of the

2    SAA and/or Notes themselves.  Defendants cannot identify any clause supporting this relation

3    because there are none.  There is absolutely no mention of the Promissory Notes in the SAA.

4    There is no mention of investments or loans in the SAA.  There is no mention of advances on

5    profit sharing in the SAA.  There is no mention of the inadmissible purported Letter Agreement in

6    the SAA.  Moreover, the SAA contains an integration clause *creating the presumption that there*

7    *are no related agreements.*  (Bego Decl. Exh. A, ¶ 16.8).  The Promissory Notes and purported

8    Letter Agreement are not mentioned in and were not made part of the SAA because they relate to

9    a wholly separate subject matter—they are loans given by Lindows to Xandros which could,

10   under certain circumstances, convert to an ownership interest in Xandros.

11       Defendants attempt to convince the Court that the Notes are actually advances on profit

12   sharing payments to be made under the SAA, but the Notes themselves clearly indicate otherwise.

13   The Notes make no mention of profit sharing payments, instead the Notes are identified on their

14   face as "securities . . . acquired by the holder . . . for investment." (Bego Decl. Ex. B and Ex. D;

15   first paragraph).  The first paragraph of each Note essentially defines the Note as a *loan* which

16   may convert into Xandros stock.  *Nowhere* does the Note permit Xandros to offset the principal or

17   interest it owes Lindows by the amount of any profits Lindows may owe Xandros in the future.

18   Indeed, Paragraph 1.2 of each Note describes in considerable detail the time and method for

19   payment of the principal and interest and contains *no provisions* permitting Xandros to offset

20   amounts it owes Lindows by profits that may become due under SAA.

21       Likewise, if the Court is inclined to admit the inadmissible purported Letter Agreement, it

22   begins with the phrase "[t]his agreement confirms our agreement regarding certain possible future

23   *investment* in Xandros" (emphasis added) and in ¶ 4 provides that "[t]he Note, the Preview

24   Release Investment and the Xandros Operating System Investment shall collectively be referred

25   to herein as the '*investments*.'" (Bego Decl. Exh. C, emphasis added).   These investments are not

26   in any way related to the SAA's stated purpose to "have Lindows distribute the Xandros

27   Operating System."  (Bego Decl. Ex. A).

28

1    All admissible evidence supports the conclusion that Lindows did <u>not</u> agree to arbitrate

2    disputes arising from and relating to the Notes.

3    **IV.    CONCLUSION**

4    As Lindows has presented evidence sufficient to establish that no agreement to arbitrate

5    the dispute between the parties exists, and as Defendants' evidence is inadmissible and properly

6    excluded as a discovery sanction, Lindows respectfully requests that the Court deny Defendants'

7    Motion.

8    DATED:  January 16, 2004                    PAUL, HASTINGS, JANOFSKY & WALKER LLP

9

10                                             By: _____

11                                                    COLBERN C. STUART, III

12                                             Attorneys for Plaintiff
                                               LINDOWS.COM, INC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **PROOF OF SERVICE**

2

3          I am employed in the City and County of San Diego, State of California. I am over the age of 18, and not a party to the within action. My business address is as follows: 12390 El Camino Real, San Diego CA 92130.

4

5 On January 16, 2004, I served the foregoing document(s) described as: See attached Exhibit A:

6 on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

7

8          Andrew W. Robertson              Edward C. Walton
           LaBella & McNamara                Walton & Associates
9          401 West A Street, Suite 1150     402 West Broadway, Suite 1210
           San Diego CA 92101                San Diego, CA 92101

10 ☐       **VIA OVERNIGHT MAIL:**

11         VIA _____:By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

12 ☐       **VIA U.S. MAIL:**

13         I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice such sealed envelope(s) would be
14         deposited with the U.S. postal service on January 16, 2004 with postage thereon fully prepaid, at San Diego, California.

15 ☐       **VIA PERSONAL DELIVERY:**

16         I caused to be served personally such sealed envelope(s) by hand to the addressee(s).

17 ☒       **VIA FACSIMILE:**

18         The facsimile transmission report indicated that the transmission was complete and without error. The facsimile was transmitted on January 16, 2004. **[Permitted by written agreement of the parties.]**

19

20          I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

21

22          Executed on January 16, 2004, at San Diego, California.

23

24 Liz Hoke
   Type or Print Name                         Signature

25

26

27

28

SAN/65249.5                                              02 CV 2460 JH (RBB)

EXHIBIT A TO PROOF OF SERVICE

1. **PLAINTIFF LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION; REQUEST FOR JURY TRIAL;**

2. **DECLARATION OF KEVIN CARMONY IN SUPPORT OF PLAINTIFF LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION;**

3. **DECLARATION OF COLBERN C. STUART III IN SUPPORT OF PLAINTIFF LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION; and**

4. **PLAINTIFF LINDOWS.COM, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY DEFENDANTS IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

COLBERN C. STUART, III (SBN 177897)
JAMES P. CONLEY (SBN 216639)
PAUL, HASTINGS, JANOFSKY WALKER LLP
3579 Valley Centre Drive
San Diego, CA 92130
(858) 720-2500

Attorney(s) for          Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Plaintiff:   LINDOWS.COM, INC.                    Case No: 02 CV 2460 JAH (RBB)

Defendant: XANDROS, INC., et al.                  PROOF OF SERVICE

1. At the time of service I was at least 18 years of age and not a party to this action, and I served copies of the:

Please see attached list of documents.

2. a. Party served:      Edward Walton, Esq.
   b. Person served:     L. Crowther, receptionist
   c. Place of Service:  402 West Broadway
                         Suite 1210
                         San Diego, CA 92101
                         {Business}

3. I served the party named in item 2
   a. By personally delivering copies to the person served.
      (1) on:            January 19, 2004
      (2) at:            9:25am

4. Person serving:                              a. Fee for Service: $ 25.00
   Anthony Kelley                               e. Exempt from registration under
   CALEXPRESS                                      Bus. & Prof. Code 22350(b)
   1302 Kettner Boulevard
   San Diego, CA  92101
   (619) 685-1122

5. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   January 20, 2004                    Signature: _____

PROOF OF SERVICE

<u>LIST OF DOCUMENTS SERVED</u>
LINDOWS.COM, INC. v. XANDROS, INC., et al.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
CASE NO:    02 CV 2460 JAH (RBB)

1. PLAINTIFF LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO
   COMPEL ARBITRATION AND DISMISS OR STAY ACTION;

2. PLAINTIFF LINDOWS.COM, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY
   DEFENDANTS IN SUPPORT OF MOTION TO COMPEL ARBITRATION;

3. DECLARATION OF KEVIN CARMONY IN SUPPORT OF PLAINTIFF LINDOWS.COM,
   INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION;

4. DECLARATION OF COLBERN C. STUART IN SUPPORT OF PLAINTIFF
   LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
   ARBITRATION.

1  COLBERN C. STUART, III (SBN 177897)
   JAMES P. CONLEY (SBN 216639)
2  PAUL, HASTINGS, JANOFSKY WALKER LLP
   3579 Valley Centre Drive
3  San Diego, CA 92130
   (858) 720-2500

4  Attorney(s) for          Plaintiff

5                UNITED STATES DISTRICT COURT
6                SOUTHERN DISTRICT OF CALIFORNIA

7  Plaintiff:   LINDOWS.COM, INC.              Case No: 02 CV 2460 JAH (RBB)

8  Defendant: XANDROS, INC., et al.           PROOF OF SERVICE

9  1. At the time of service I was at least 18 years of age and not a party to this action, and I served
      copies of the:
10
11                        Please see attached list of documents.

12 2. a. Party served:      Andrew Robertson, Esq.
      b. Person served:     Andrew Robertson, Esq.
13    c. Place of Service:  401 West A
                            Suite 1150
14                          San Diego, CA 92101
                            {Business}

15 3. I served the party named in item 2
      a. By personally delivering copies to the person served.
16        (1) on:          January 20, 2004
          (2) at:          8:50am
17
18 4. Person serving:                          a. Fee for Service: $ 25.00
      Anthony Kelley                           e. Exempt from registration under
19    CALEXPRESS                                  Bus. & Prof. Code 22350(b)
      1302 Kettner Boulevard
20    San Diego, CA 92101
      (619) 685-1122

21 5. I declare under penalty of perjury under the laws of the State of California that the foregoing is
22    true and correct.

23
   Date:    January 20, 2004                  Signature:
24
25
26
27
28

                              PROOF OF SERVICE

LIST OF DOCUMENTS SERVED
LINDOWS.COM, INC. v. XANDROS, INC., et al.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
CASE NO:     02 CV 2460 JAH (RBB)

1. PLAINTIFF LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO
   COMPEL ARBITRATION AND DISMISS OR STAY ACTION;

2. PLAINTIFF LINDOWS.COM, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY
   DEFENDANTS IN SUPPORT OF MOTION TO COMPEL ARBITRATION;

3. DECLARATION OF KEVIN CARMONY IN SUPPORT OF PLAINTIFF LINDOWS.COM,
   INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION;

4. DECLARATION OF COLBERN C. STUART IN SUPPORT OF PLAINTIFF
   LINDOWS.COM, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
   ARBITRATION.