Case 3:02-cv-02460-BEN-RBB   Document 71   Filed 03/22/04   PageID.871   Page 1 of 17

USDC SCAN INDEX SHEET










RYC    3/23/04    11:37

3:02-CV-02460    LINDOWS.COM INC V. XANDROS INC

*71*

*SUPPL.*

| | |
|---|---|
| 1 | COLBERN C. STUART, III (SBN 177897) |
| | JAMES P. CONLEY (SBN 216639) |
| 2 | PAUL, HASTINGS, JANOFSKY & WALKER LLP |
| | 3579 Valley Centre Drive |
| 3 | San Diego, CA 92130 |
| | Telephone: (858) 720-2500 |
| 4 | Facsimile: (858) 720-2555 |
| 5 | Attorneys for Plaintiff |
| | LINDOWS.COM, INC. |

FILED ORIGINAL
04 MAR 22 PM 4:44
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
                                    DEPUTY

NUNC PRO TUNC
MAR 22 2004

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDOWS.COM, INC., a Delaware corporation, | CASE NO. 02 CV 2460 JAH (RBB) |
| Plaintiff, | PLAINTIFF LINDOWS.COM, INC.'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION; |
| vs. | |
| XANDROS, INC., a Delaware corporation; LINUX GLOBAL PARTNERS, INC., a Delaware corporation; MICHAEL BEGO, an individual; WILLIAM JAY ROSEMAN, an individual, | Hearing Date: April 9, 2004<br>Time: 10:30 a.m.<br>Judge: Hon. John A. Houston<br>Courtroom: 11, Second Floor |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Pursuant to the January 30, 2004 court Order at the hearing for Defendants' Motion, LINDOWS.COM, INC. ("Lindows") files this Supplement[1] to its Opposition to the Motion to Compel Arbitration and Dismiss or Stay Action ("Motion") by Defendants XANDROS, INC., LINUX GLOBAL PARTNERS, INC., ("LGP"), MICHAEL BEGO and WILLIAM JAY ROSEMAN (collectively "Defendants").

---

[1] In order to assist the Court in assimilating this "supplemental" brief with the parties' original briefing, this brief will provide a discussion of the new evidence disclosed since the original briefing and will discuss how such evidence (or lack thereof) reinforces Plaintiff's Opposition. Therefore, Plaintiff's original Opposition remains the "foundation" of this Supplemental Opposition.

SAN/84946.1                                           71                            02 CV 2460 JAH(RBB)

# I. UPDATED FACTS

Plaintiff provides the following <u>updated</u> statement of facts which incorporates evidence discovered subsequent to the initial Opposition.

## A. The Dispute Between The Parties

Lindows is a computer software developer which manufactures and sells a computer operating system called "LindowsOS." Defendant Xandros, Inc. ("Xandros") is also a computer operating system developer. Both Lindows and Xandros develop software based on the freely available "open source" Linux software code. Defendant Linux Global Partners ("LGP") is the sole parent corporation of Xandros, Inc.

Plaintiff's claims originate from activity beginning in the later half of 2001 when defendants Roseman and Bego, representing Defendant LGP, made contact with Lindows executives and requested that Lindows invest in Xandros, Inc. As detailed in the First Amended Complaint, Messrs. Bego and Roseman represented to Lindows executives, as well as to the general public through press releases and interviews, that Defendant LGP had "committed" $10,000,000 in equity financing to Xandros, Inc. to enable Xandros to develop Linux operating system software. Roseman further represented to Lindows executives that LGP was "standing behind" Xandros, Inc. and would continue to support Xandros, Inc. financially to allow it to develop its software product.

Because Lindows was itself developing a Linux-based computer operating system and was considering purchasing Xandros, Inc., in November and December 2001, Lindows made a number of loans to Xandros, Inc. which could, under certain conditions, convert to an equity stake in Xandros. Each of these "Convertible Promissory Notes" (hereinafter the "Notes") were in the amount of $250,000 and were payable within one year if they did not convert to equity. (Stuart Decl. Exs. A, B, C) If Xandros, Inc. obtained a certain level of additional financing, the loans could convert to equity, and Lindows would become an owner of Xandros.

It is not disputed that the Notes do not contain an arbitration clause. In fact, the Notes were intentionally drafted to be independent legal instruments which do not reference or incorporate the Strategic Alliance Agreement ("SAA"), and in fact contain integration clauses

which establish them as independent legal instruments. According to Lindows' Chief Operating Officer who negotiated the Notes, Lindows considered whether it wanted to include an arbitration clause in the notes, or to combine the Notes with the SAA, but chose to draft the Notes as separate instruments *not* tied to the SAA. It chose not to do so in large part because each of the Notes represents a simple transaction—Lindows loaned Xandros, Inc. $250,000 per Note, which Xandros was to pay back, with interest, in exactly one year. Because there is so little to debate as to whether either party breached such a simple instrument, Lindows observed that such a dispute could quickly be resolved in a court of law. Further, because Lindows' was required to perform at the beginning of the contract (giving $250,000) and Xandros only at the end (by repaying $250,000 plus interest), Lindows was wary of any procedure which did not enable it to present its claims in an open forum—to a judge or jury, which have less discretion to reach a "compromise" decision. Therefore, Lindows *consciously chose not to include an arbitration clause in any of the Notes*. (Carmony Decl., ¶ 4).

By contrast, the SAA is a complex software license agreement which required ongoing performance on multiple issues by both parties. The SAA is an agreement granting Lindows an ongoing license to incorporate certain portions of software code developed by Xandros into the Plaintiff's "LindowsOS" software product in exchange for payment of royalties from sales of certain versions of the LindowsOS software. (Bego Decl. Ex. "A"). Lindows observed that a dispute over such a complex agreement might well result in multiple claims and counterclaims for breach by both parties. Lindows therefore chose to agree to include an arbitration clause in the SAA in anticipation that an arbitration forum would be the best forum for resolving a potentially complex dispute. (Carmony Decl., ¶ 4).

This perception resulted in Lindows' agreeing to the arbitration clause when, as with the SAA, the contract imposes complex duties on Lindows but to avoid arbitration when Lindows' performance is simple (as in the Notes). (Carmony Decl., ¶¶ 2-4). Thus, the Notes were created—pursuant to that policy—as independent legal instruments without an arbitration clause.

Over the course of the year between the making of the Notes in November/December, 2001 and their due dates in November/December 2002, Lindows and Xandros, Inc. had numerous

conversations regarding the strength of Xandros, Inc.'s sales, the $10,000,000 LGP funding "commitment," and Xandros, Inc.'s general financial health, again in the context of a potential merger, purchase, or further investment.

In November and December, 2002, Lindows timely demanded payment on the Notes. Xandros, Inc. refused to pay Lindows. Moreover, since loaning Xandros $750,000, Lindows has come to learn that in truth and in fact LGP had never made a $10,000,000 "commitment" to Xandros. Further, Lindows has come to learn that LGP and Xandros are fraudulently abusing the putative corporate distinctions between these two entities in order to bilk others into giving Xandros capital to continue its operations. As part of this corporate abuse, Xandros and LGP have failed to properly appoint officers, agents, or directors responsible for the operation of the corporate entities, have co-mingled assets, and have in fact run such corporations as a sham. Defendants have made this and other misrepresentations in furtherance of a fraudulent conspiracy between Xandros, Inc., LGP, Bego, and Roseman to bilk Lindows and others into financing Xandros, Inc.

Upon Xandros, Inc.'s refusal to repay the Notes, and upon learning of Defendants' fraudulent conspiracy, Lindows filed the instant action for violations of the Securities and Exchange Act of 1934, Fraud, Negligent Misrepresentation, Breach of Contract, and Rescission relating to the Notes. Lindows has not alleged any breach of the SAA.

**B.    The Arbitration Dispute**

Defendants responded to Plaintiff's Complaint with the instant Motion, claiming that the arbitration clause in the SAA compels all parties to this dispute—including LGP and Roseman, who were not parties to the Notes or the SAA—to arbitrate this dispute relating to the Notes.

Plaintiff's initial Opposition presented the Court with evidence of Defendants' flagrant disregard of the required formalities necessary to maintain the veil of corporate protection— consisting separate admissions by defendant Bego directly contradicting Bego's claim that he was an officer and director of LGP and Xandros, Inc. Plaintiff further urged the Court to permit further discovery in order to demonstrate the falsity of several statements regarding Mr. Bego's allegations that he was an officer of Xandros, Inc. Plaintiff submitted that if, in fact, Mr. Bego

was not President of Xandros, Inc., then the arbitration clause which Defendants were seeking to enforce was not duly executed by an authorized representative and, therefore, void *ab initio*, and that Defendants' motion should therefore be denied.

At the initial hearing on Defendants' Motion, Judge Moskowitz declined to grant Defendants' motion and instead granted Plaintiff's request to conduct discovery on the issues and assertions raised in Defendants' Motion, including, inter alia, whether Mr. Bego was in fact President of Xandros, Inc. and whether the documents relied on by Defendants in fact reflected an agreement to arbitrate disputes relating to the Notes.

### C. Subsequent Discovery Refutes Defendants' Allegations

Subsequent to Judge Moskowitz' ruling, Plaintiff served various written discovery and took depositions of defendants and their corporate designees. The overwhelming weight of this evidence reveals that Michael Bego was, in fact, never duly appointed to act as President of Xandros, Inc. and therefore had no authority to enter the SAA on its behalf. In fact, Xandros, Inc.'s own F.R.C.P. Rule 30(b)(6) corporate designee and corporate records filed by Xandros with the Delaware Secretary of State indicate that Mr. Bego *was never appointed as an officer or director of Xandros, Inc.* Moreover, subsequent discovery conclusively demonstrates that the purported "Letter Agreement" (which Defendants allege "ties" the SAA to the Notes) *was never agreed to or signed by the parties.* Indeed, at deposition Mr. Bego contradicted his own Declaration in this regard—recanting his statement that he recalls seeing a fully executed copy of the purported "Letter Agreement." (Bego Decl., ¶ 5).

The relevant subsequent evidence is discussed below:

#### 1. The Purported "Letter Agreement" Which Defendants Rely on *Does Not Exist*

Mr. Bego's deposition testimony finally put to rest the key issue of whether there exists a purported "Letter Agreement" tying the SAA to the Promissory Notes—now each of Mr. Bego, Mr. Berenstein, and Mr. Roseman deny that any such "Letter Agreement" was ever entered into by the parties.

1       Defendants' inability to produce the "Letter Agreement" is fatal to their Motion.
2 Defendants do not dispute that the Notes do not contain an arbitration clause—instead they assert
3 that the arbitration clause in the SAA (which Plaintiff has *not asserted* in this action) is related to
4 the Notes because of the "Letter Agreement" (Bego Decl. Exh. "C") which Defendants claim was
5 entered into by the parties which "ties" the Notes to the SAA. However, each of Defendants
6 witnesses *deny* having ever been aware of the existence of a complete signed "Letter Agreement".

7       Though Mr. Bego's Declaration states that he signed the "Letter Agreement," (Bego
8 Decl., ¶ 5) at deposition Mr. Bego testified—contrary to the claim in his Declaration—that he has
9 *no recollection* of ever seeing a *completed* version of the letter agreement with the several blanks
10 filled in, (Supplemental Declaration of Colbern C. Stuart Ex. C, p. 95, ll. 3-5)[2], that *he does not*
11 *recall* executing a copy (Stuart Supp. Decl. Ex. C, p. 94, ll. 18-22, p. 98 ll. 16-25), and he *does*
12 *not recall* whether Lindows.com ever signed a copy (Stuart Supp. Decl. Ex. C, p. 98 ll.21-25, p.
13 95, ll.6-8). In fact, he had enormous difficulty even recognizing the "Letter Agreement" despite
14 the fact that he has submitted a Declaration to this Court purporting to testify at length about the
15 nature of these documents (Stuart Supp. Decl. Ex. C, p. 95, l. 9 – p. 98 l. 16).

16     Similarly, Mr. Berenstein denied having seen a complete copy of the "Letter Agreement":

17 **Q.** ... you have never seen a version of [the purported Letter Agreement] in which any of
18 the blanks in the document have been filled in; correct?

19 **A.** Not that I can recall, no.

20 **Q.** Do you have any information as to whether or not such a version of [the purported
21 Letter Agreement] ever existed?

22 **A.** No. Other than what I just told you, which was that Mr. Bego couldn't remember if
23 the document had ever been signed.

24 (Stuart Decl. Ex. X, p. 32, lns. 12-22).

---

[2] References to "Stuart Supp. Decl. shall refer to the Supplemental Declaration of Colbern C. Stuart, filed and served herewith; references to "Stuart Decl." shall refer to the Declaration of Colbern C. Stuart filed and served on December 15, 2003 with Plaintiff's prior Opposition.

Similarly, Mr. Roseman also denied ever having seen a completed or signed "Letter Agreement". Stuart Decl. Ex. 4, p. 121, l. 23—p. 126, 24.

Finally, Mr. Carmony, Lindows' President, *specifically denies* that such an agreement was ever signed. (Carmony Decl. ¶ 7). It is thus clear that the single document Defendants rely on to tie the SAA to the Notes does not in fact exist—without this "missing link", Defendants cannot demonstrate that the Promissory Notes "arise out of or relate to" the arbitration clause of the SAA. As such their motion must fail.[3]

### 2. Xandros, Inc.'s 30(b)(6) Corporate Designee, Both of its Co-Founders, One Current Board Member, and its Chairman of the Board Deny that Bego Was Ever an Officer or Director of Xandros, Inc.

Further, Mr. Bego's claim to have been "acting" President of Xandros, Inc., (Bego Decl. ¶ 1), has been *directly refuted* by the sworn testimony of *two* of Xandros, Inc.'s own witnesses, William J. Roseman (Co-Founder and current director of Xandros, Inc. and Xandros, Inc.'s Rule 30(b)(6) designee) and Mr. Frederick Berenstein (Co-Founder and current Chairman of the Board of Xandros, Inc.). *Both* Mr. Roseman and Mr. Berenstein *deny that Mr. Bego was ever an officer, director, or employee of Xandros, Inc.* (Stuart Decl. Ex "X", p. 20, l.3-p. 8; Stuart Decl. Ex "Y" p. 13, ll. 5-8, p. 40, l. 12-p. 41, l. 12).[4]

Pursuant to Rule 30(b)(6), Lindows noticed the deposition of Defendants' witnesses regarding a number of "matters on which examination is requested," two of which were specifically directed to discovering whether Mr. Bego's claim to have been President of Xandros, Inc. was, in fact, true. The matters identified by Plaintiff including the following:

TOPIC NO. 2:

The relationship between BEGO, ROSEMAN, Frederick Berenstein, LGP and XANDROS and each of them.

\* \* \* \*

---

[3] See Plaintiff's Opposition, section III.C.2(a) and Plaintiff's Objections to Evidence, Section 2.

[4] Mr. Bego's Declaration also claims that he was an "acting President of Xandros (Inc.)" in 2001 and 2002, though this fallacious claim is plainly refuted by Defendants' own witnesses, as well as by Mr. Bego himself. See, e.g., Carmony Declaration, Exhibits "A" and "B."

1  TOPIC NO. 6:

2  The identity, title, position and authority of any officers, employees and agents of
3  XANDROS and LGP from August 2001 to the present.
4  (Stuart Supp. Decl. Ex. D).

5  Xandros, Inc. and LGP both appointed Xandros, Inc.'s Co-Founder and board member
6  William J. Roseman as their F.R.C.P. 30(b)(6) witness. Mr. Roseman was deposed on October
7  29, 2003 and November 5, 2003, and was asked whether he was, in fact, Xandros, Inc.'s and
8  LGP's designee regarding the 30(b)(6) topics. Mr. Roseman confirmed that he was in fact the
9  corporate designee. (Stuart Decl. Ex. Y, pp. 6, l. 21 – p. 8 l. 4).

10  Under oath, Mr. Roseman testified that Mr. Bego *has never been an employee, officer, or*
11  *director of defendant Xandros, Inc.*:[5]

12  **Q.** Has Mr. Bego ever been an employee of Xandros, Inc.?
13  **A.** No. I suppose not.
14  **Q.** Mr. Bego. Has he held any other positions with Xandros, Inc., as an officer or
15     director?
16  **A.** No

17  Mr. Roseman's testimony was *perfectly corroborated* by the testimony of Xandros, Inc.'s
18  Co-Founder and current Chairman of the Board, Frederick Berenstein, who testified on
19  November, 6, 2003 that Mr. Bego was, in fact, *never an officer, director, or employee of Xandros,*
20  *Inc.*:[6]

21  **Q.** Has Mr. Bego, to your knowledge, ever been an officer or director of Xandros, Inc.?
22  **A.** No.
23  . . .
24  **Q.** When did his employment with Xandros, Inc. end?
25  **A.** He was never an employee of Xandros, Inc.

---

[5] Roseman Deposition Transcript, p. 22, ll. 8-10 and p. 20, ll. 19-22, attached as Ex. "Y" to the Decl of C. Stuart.

[6] Berenstein Deposition Transcript, p. 12, lines 5-8, attached as Ex. "X" to the Decl of C. Stuart.

1     The unrehearsed, sworn deposition testimony of Xandros, Inc.'s own 30(b)(6) witness, and *both* of it's co-founders, officers and directors demonstrate that Mr. Bego was never "acting President" of—*and therefore lacked any authority to act on behalf of*—Xandros, Inc. Moreover, because Mr. Roseman was designated as the Rule 30(b)(6) witness for both LGP and Xandros, Inc., these statements constitute a *binding admission against interest* which Xandros cannot now dispute. See, e.g., *United States v. Taylor* (MD NC 1996) 166 FRD 356, 361.[7] As Defendants are bound by the admission of their 30(b)(6) designee, they cannot dispute that Bego lacked authority to enter the SAA, and therefore the SAA (and its arbitration clause) is in fact void *ab initio*.

    Defendants have indicated that they intend to submit a declaration from Mr. Berenstein and/or Mr. Roseman essentially recanting their own sworn testimony at deposition—claiming they gave incorrect answers at the depositions. In the event Defendants submit such testimony Plaintiff respectfully requests that the Court reject the same as it is the duty of the corporate entity designating a 30(b)(6) witness to fully and adequately prepare the witness to speak on behalf of the corporation on all subjects designated. See, e.g., *U.S. v. J.M. Taylor*, 166 F.R.D. 356, 361 (M.D. NC 1996); *Dravo Corp v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb. 1995); *Ierardi v. Lorillard, Inc.* 1991 WL 158911 at *3 (E.D. Pa. Aug. 13, 1991). If Defendants' witnesses were not adequately prepared, then Defendants violated their duty to prepare their witnesses—Plaintiff respectfully suggests that the Court should not permit Defendants to have a "second bite at the apple" given an admission that they failed to satisfy this duty the first time.

    As the unrehearsed, sworn deposition testimony of Xandros, Inc.'s own officers, directors, and 30(b)(6) witnesses demonstrates, Mr. Bego lacked any authority to bind Xandros, Inc. to the SAA, the SAA is in fact void *ab initio*, and "there is no basis for submitting any question to an

---

[7] Reasoning that "[a] notice of deposition made pursuant to Rule 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice or subpoena. A party need only designate, with reasonable particularity, the topics for examination. The corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give *complete, knowledgeable and binding answers on behalf of the corporation.*" *Id.* (emphasis added).

arbitrator" *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). As such, Defendants' Motion must fail.[8]

### 3. Xandros, Inc.'s Own Corporate Filings Reflect That Mr. Bego Was Not An Officer or Director of Xandros, Inc.

Messrs. Roseman and Berenstein's testimony denying that Mr. Bego was ever an officer or director of Xandros, Inc. is further corroborated by Xandros, Inc.'s own corporate filings with the Delaware Secretary of State. Xandros, Inc. is incorporated in the state of Delaware, and pursuant to Delaware law must annually file a report entitled "Franchise Tax Report" listing each of the corporation's officers and directors. For *each and every* year in which Xandros, Inc. has filed such a statement (2001 and 2002), Xandros has identified *only* William Roseman and Frederick Berenstein as its only corporate officers and directors. (Stuart Supp. Decl. Exs. A and B). The records of the Secretary of State constitute admissible public records under Federal Rules of Evidence 803(8), and because the Secretary of State's records are compiled based upon information submitted by defendant Xandros, Inc., also constitute a *binding admission* under Federal Rules of Evidence 801(d)(2) subsections (A), (C), and (D). Thus, Xandros, Inc.'s own key witnesses' testimony is corroborated by public records required of it by law.

The Delaware corporate records are entirely consistent with the testimony of Xandros, Inc.'s own 30(b)(6) witness and co-founder, William Roseman, as well as Frederick Berenstein—Xandros, Inc.'s other Co-Founder and current Chairman of the Board—both of whom testified *unequivocally* and that Michael Bego was President of Xandros Corp.,[9] but *never* an officer or employee of Xandros, Inc. (Stuart Decl. Ex "X", p. 20, l.3-p. 8; Stuart Decl. Ex "Y" p. 13, ll. 5-8, p. 40, l. 12-p. 41, l. 12).[10] As the weight of credible and admissible evidence strongly supports

---

[8] See additional discussion and legal citation contained in Plaintiff's Opposition, section III.A.

[9] As the court will recall, Xandros Corp. is the wholly owned but putatively independent subsidiary of Xandros, Inc. Xandros Corp. is not a party to this lawsuit for the simple reason that it was not a signatory to any of the three Notes which Plaintiff sues on herein.

[10] Mr. Bego's Declaration also claims that he was an "acting President of Xandros (Inc.)" in 2001 and 2002, though this fallacious claim is plainly refuted by Defendants' own witnesses, as well as by Mr. Bego himself. *See, e.g.*, Carmony Declaration, Exhibits "A" and "B."

the conclusion that Mr. Bego was not duly appointed or authorized to act as "acting President" of Xandros, Inc., he could not enter the SAA (and its arbitration clause), and Defendants' Motion must fail.

4. **Xandros Has Denied The Existence of Relevant Internal Corporate Minutes and Other Records Which Would Identify its Officers and Directors and Which *Defendants' Own Witnesses Claim Exist***

Nearly one year ago, May 23, 2003, Lindows propounded Requests for Production of Documents to Xandros, Inc. which were directed to obtaining all corporate documents and records which would tend to establish whether or not Mr. Bego was, in fact, who he said he was. In particular, Plaintiff propounded the following Requests:

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that constitute, evidence, refer, relate to or determine the relationships between BEGO, ROSEMAN, LGP and XANDROS, and each of them.

. . .

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS consisting of or RELATING TO minutes of all meetings of YOUR Board of Directors or Audit Committee.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS consisting of or RELATING TO all resolutions or written records of other action taken by YOUR Board of Directors or Audit Committee.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS consisting of or RELATING TO the resignations of any of YOUR officers or directors.

Defendants initially *refused to produce any documents* responsive to these requests (Stuart Supp. Decl. Ex. G.) Plaintiff thereafter was forced to seek a discovery conference before Magistrate Brooks seeking to compel Defendants to produce responsive documents. After considerable negotiations between the parties and Magistrate Judge Brooks, Defendants eventually agreed to produce many more documents, including all documents responsive to Requests 2 and 32, and agreed to produce all documents in response to Requests 29 and 31 which

1  evidenced (inter alia) Xandros, Inc.'s officers, directors, or agents. (Stuart Supp. Decl., Exs. H, I,
2  and J).
3        In response, Defendants produced only *two* corporate records of Xandros, Inc.—its
4  Articles of Incorporation and its By-laws—neither of which identify any of its officers or
5  directors. (Stuart Supp. Decl. Exs. K and L.) However, at the February 19 Bego deposition, Mr.
6  Bego stated that he had personally seen *additional* corporate records of Defendant Xandros which
7  identified its officers and directors, including "Minute Books" of its executive meetings,
8  corporate records prepared by Xandros attorneys, bank signature cards, and various other
9  contracts and legal documents:

10      **Q.** Would there be documents in existence that would
11      reflect the tenure of your officerships?
12      **A.** Absolutely.
13      **Q.** And what would those documents be?
14      **A.** Well, there would have been the minute books of the
15      company. There would have been the corporate records held by
16      Fraser, Milner & Casgrain, who were our attorneys. As I was the,
17      you know, acting as president, I was signing officer for both the
18      Xandros Corp. and Xandros, Inc., so we provided documents to
19      Royal Bank of Canada, which was our bank, had to give them
20      statements from the law firm that confirmed my directorships, so
21      they should have copies.
22      Yes. So basically, you know, the copies of the minute books and
23      whatever legal documents are associated with that. And you could
24      also probably corroborate that with, you know, two years of signing
25      papers, along with the other directors, the other directors and
26      officers of the company. (Stuart Supp. Decl Ex. C, p. 43 l. 22 – p.
27      43 l. 19; p. 45 ll. 9-18).
28  Mr. Bego testified that he was *personally aware* of corporate "minute books" and signature

1  records provided to Xandros' banks, and various other corporate legal papers which would
2  indicate who was, in fact, an officer of Xandros, Inc. (Stuart Supp. Decl., Ex. C, p. 42 l. 22 – p.
3  43, l. 19.) Mr. Bego testified that these records were updated regularly; from one a month to once
4  every six months. (Stuart Supp. Decl. Ex. C, p. 44, ll. 19-23), and therefore would have been
5  generated during the time period Defendants agreed to produce such records.

6  However, subsequent to the Bego deposition, Defendants' counsel claimed that, despite
7  Mr. Bego's unequivocal testimony that he recalls seeing an abundance of such records, no such
8  records exist. (Stuart Supp. Decl. Ex. F). Defendants' denial of the existence of records which
9  their own witness testifies do exist casts severe doubt on the veracity of Defendants' allegations.[11]

10 Defendants' refusal to produce these records once again flouts this Court's authority and
11 backslides on counsel's own agreements to produce all such records. (Stuart Supp. Decl. Exs. F,
12 H, I, J, K, L). Though Plaintiff has presented numerous admissions by Defendants that Mr. Bego
13 was in fact not an officer or director of Xandros, Inc., Plaintiff respectfully suggests that
14 Defendants' failure to produce the evidence identified by Mr. Bego justifies issuance of an
15 evidentiary sanction pursuant to F.R.C.P. 37(d). Plaintiff therefore respectfully requests that the
16 Court enter an evidentiary sanction striking Mr. Bego's Declaration, and prohibiting Defendants
17 from asserting that Mr. Bego was, in fact, President of Xandros, Inc.

18 Because the only credible evidence before the Court with respect to whether Bego was
19 capable of binding Xandros, Inc. to the SAA containing the arbitration clause shows that he was
20 *not* in fact duly appointed as "acting President" of Xandros, Inc., no such contract was ever
21 formed. "If the [individual who signed the contract] did not have the actual or apparent authority
22 to execute the contract, the corporation cannot be bound." *Three Valleys Municipal Water*
23 *District v. E.F. Hutton & Company*, 925 F.2d 1136, 1141 (9th Cir. 1991). It is the Court's duty to

---

[11] After Mr. Bego's deposition, defendants belatedly produced a document entitled "Action By Unanimous Written Consent." This document was not produced in response to initial discovery requests and was only provided to Plaintiff's counsel after all witness depositions were completed. Should Defendants attempt to introduce on such a document, Plaintiff objects to introduction based upon Defendants' failure to produce said document within the time period required under F.R.C.P. Rule 34, causing Plaintiff prejudice due to the inability to cross examine Defendants' witnesses with such a document. F.R.C.P. Rule 37(d).

"determine whether a contract ever existed" and "unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator." *Id.*(citing *Camping Constr. Co. v. District Council of Iron Workers, Local 378*, 915 F.2d 1333, 1340 (9th Cir.1990)). The Ninth Circuit in *Three Valleys* reversed the District Court's granting of a motion to compel arbitration and instructed the Court that if the agreement in question (which contained the arbitration clause) was signed by an individual who did not have the authority to bind the corporation, the motion to compel arbitration must be denied. *Id.* at 1140-41, 1144. As Mr. Bego was not duly appointed, Defendants' Motion should be denied.

### 5. Plaintiff's Remaining Grounds for Opposition Remain Unrebutted

The remainder of Plaintiff's grounds for opposing Defendants' Motion, recited at length in Plaintiff's Opposition, remain unaffected by the Bego Deposition and as such are incorporated into this supplemental briefing herein by reference. Specifically, the following sections from Plaintiff's initial Opposition (reproduced here as section headings only to assist the Court in referencing Plaintiff's Opposition memorandum) remain unrebutted by Defendants:

**II. ARGUMENT . . .**

**A. No Agreement To Arbitrate Exists Between Lindows And Any Named Defendants . . .**

. . .

**2. Defendant LGP Is Not Entitled To Enforce The SAA And Thus Has No Basis For A Demand To Arbitrate The Fraud Claim**

. . .

**(a) Defendants Have Made Statements Under Oath Contradicting Their Claim To The Benefit Of The Arbitration Clause**

. . .

**(b) Defendant LGP May Not Rely On The "Information And Belief" Averments In Lindows' Complaint To Support Their Motion**

. . .

    C.    **The Promissory Notes Reveal No Agreement To Waive Lindows' Right To A Jury Trial In Favor Of Arbitration**

...

        1.    **The Clear Intent Of The Parties—As Evidenced By The Unambiguous Terms Of The Notes Themselves—Was To Resolve Disputes In A Court Of Law**

...

        2.    **Even If The Court Looks Beyond The Unambiguous Language Within The Four Corners Of The Notes, The Evidence Shows That The Parties Did Not Intend To Arbitrate Disputes Relating To The Notes**

...

            (a)    **The SAA's Arbitration Clause Was Not Incorporated Into The Promissory Notes**

...

            (b)    **Lindows Specifically Intended NOT To Arbitrate Disputes Involving The Notes**

...

            (c)    **The Promissory Notes Are Not Related To The SAA**

...

## II. CONCLUSION

As Lindows has presented evidence sufficient to establish that no agreement to arbitrate the dispute between the parties exists, and as Defendants' evidence is inadmissible and properly excluded as a discovery sanction, Lindows respectfully requests that the Court deny Defendants' Motion.

DATED: March 19, 2004                PAUL, HASTINGS, JANOFSKY & WALKER LLP

                                        By: _____
                                                COLBERN C. STUART, III

                                        Attorneys for Plaintiff
                                        LINDOWS.COM, INC.

**ORIGINAL**

# PROOF OF SERVICE

I am employed in the City and County of San Diego, State of California. I am over the age of 18, and not a party to the within action. My business address is as follows: 3579 Valley Centre Drive, San Diego CA 92130.

On March 19, 2004, I served the foregoing document(s) described as: **PLAINTIFF LINDOWS.COM, INC.'S <u>SUPPLEMENTAL</u> OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION; DECLARATION OF COLBERN C. STUART IN SUPPORT OF PLAINTIFF LINDOWS.COM, INC.'S <u>SUPPLEMENTAL</u> OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION**

on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

Andrew W. Robertson
LaBella & McNamara
401 West A Street, Suite 1150
San Diego CA 92101
Facsimile: 619.696.9269

Edward C. Walton
Walton & Associates
402 West Broadway, Suite 1210
San Diego, CA 92101
Facsimile: 619 234 4144

☐ **VIA OVERNIGHT MAIL:**

VIA _____ :By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☒ **VIA U.S. MAIL:**

I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice such sealed envelope(s) would be deposited with the U.S. postal service on March 19, 2004 with postage thereon fully prepaid, at San Diego, California.

☐ **VIA PERSONAL DELIVERY:**

I caused to be served personally such sealed envelope(s) by hand to the addressee(s).

☒ **VIA FACSIMILE:**

The facsimile transmission report indicated that the transmission was complete and without error. The facsimile was transmitted on March 19, 2004. **[Permitted by written agreement of the parties.]**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 19, 2004, at San Diego, California.

Liz Hoke
Type or Print Name                    Signature

SAN/65249.5                                                    02 CV 2460 JH (RBB)