USDC SCAN INDEX SHEET










```
RYC    3/23/04    13:11
3:02-CV-02460   LINDOWS.COM INC V. XANDROS INC
*74*
*SUPPL.*
```

La BELLA & McNAMARA LLP
THOMAS W. McNAMARA (SBN 127280)
ANDREW W. ROBERTSON (SBN 062541)
401 West "A" Street, Suite 2300
San Diego, California 92101
(619) 696-9200

Attorneys for Defendants XANDROS, INC.; LINUX GLOBAL PARTNERS, INC.; WILLIAM JAY ROSEMAN

FILED
04 MAR 22 PM 1:59
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
NUNC PRO TUNC
BY: _____ DEPUTY
MAR 1 9 2004

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDOWS.COM, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> XANDROS, INC., a Delaware corporation; LINUX GLOBAL PARTNERS, INC., a Delaware corporation; MICHAEL BEGO, an individual; WILLIAM JAY ROSEMAN, an individual, <br><br> Defendants. | Case No.: 02 CV 2460 JAH (RBB) <br><br> **DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION** <br><br> Date:  April 9, 2004 <br> Time:  10:00 a.m. <br><br> Judge: Hon. John A. Houston <br> Ctrm.: 11 |

Defendants' are entitled to arbitration because:

• The Promissory Notes sued upon in Plaintiff's Complaint fall within the scope of the arbitration clause in the Strategic Alliance Agreement ("SAA") because the Notes were contemplated by, related to, arose from, and were integral parts of the larger alliance. Plaintiff's claims on the Notes are, therefore, claims "arising out of or relating to" the SAA. As noted by the Ninth Circuit in its *Simula* decision, to compel arbitration the "factual allegations need only 'touch matters' covered by the contract" and "all doubts are to be resolved in favor of arbitration." See *Simula, Inc. v. Artoliv, Inc.* 175 F.3d, 716, 721 (9th Cir. 1999)

1



• Defendants Roseman and LGP are also entitled to the benefit of the arbitration clause because all of Plaintiff's allegations against them relate to conduct as agents of Xandros. "Federal courts have consistently afforded agents, employees, and representatives the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." *See Creative Telecommunications, Inc. v. Breeden*, 120 F.Supp.2d 1225 (D. Hawaii 1999) and cases cited therein.

## I.

## THE FACTUAL RECORD - THE NOTES WERE PART OF AN OVERALL ALLIANCE

This record before the Court confirms that the Notes were not stand-alone loans, but were integrated parts of an overall alliance.

**A.     Plaintiff's Complaint.**

Paragraph 14 acknowledges that in August 2001, Plaintiff and Xandros "began negotiating a number of agreements whereby Lindows.com would assist in the financing of the Xandros business...." Plaintiff artfully avoids any specific mention of the SAA in its Complaint, but the record is clear that the SAA was negotiated in the same time frame as the Notes and was signed on the same day as the first Note.

**B.     November 20, 2001 SAA.**

The SAA recites a wide range of interrelationships between Plaintiff and Xandros, including software licensing development (Para. 2), software development (Para. 3), revenue sharing (Para. 4), consulting (Para. 5), and marketing (Para. 6).

**C.     November 20, 2001 Note and Side Letter Agreement.**

On the same date the SAA was executed, the same parties signed the first $250,000 Note which contains complex provisions whereby the Note may be converted to equity.

2

The Note (Para. 1.3) also references a "side letter agreement" which recites in part:

> This Agreement is being entered into in connection with that certain Strategic Alliance Agreement ... of even date herewith between Sub [Xandros] and Lindows, and that certain Convertible Promissory Note ... of even date herewith issued by Xandros to Lindows in the principal amount of Two Hundred and Fifty Thousand Dollars ($250,000).

The side letter also provides that the payments of $250,000 are triggered by the achievement of development milestones under the SAA (Para. 2) and are to be credited as pre-payments on revenue sharing in the SAA (Para. 4). The side letter agreement also identifies three additional tiers for Plaintiff's future investment in Xandros - Preferred Stock Investment, Preview Release Investment, and Xandros Operating System Investment - all tied to milestones intertwined with the SAA (Para. 2). Unfortunately, neither party can locate a signed copy of the side letter agreement – Defendants have submitted an unsigned copy (Ex. "C" to Bego Declaration) - but both parties did sign an Amendment of Letter Agreement dated December 6 (Exhibit "E" to Bego Declaration).

**D.   December 6, 2001 Note and Amendment to Letter Agreement.**

On December 6, 2001, the same parties signed a second $250,000 Note and the "Amendment of Letter Agreement." This Amendment states that it "amends that certain Letter Agreement regarding Future Investment dated November __, 2001." It also incorporates the terms of the SAA, specifically references the second Convertible Note in the amount of $250,000, adjusts the delivery date for the Preview Release (which is defined in the SAA), and reduces the amount of the Preview Release Investment to $250,000.

**E.   Bego Declaration.**

As Xandros' President at the time, Michael Bego ("Bego") negotiated the arrangement with Lindows. His Declaration, filed February 19, 2003, recites that the agreements were negotiated in the same time frame and that the $250,000 payments

3

covered by the Notes were related to, and advances on, the revenue sharing provision in the SAA.

**F. Roseman and LGP - The Claims Against Them Are Based On Their Agency With Xandros.**

Plaintiff has sued Roseman as an agent of Xandros and LGP as the alter ego of Xandros. But for their relationship with Xandros, these parties have no connection to this dispute.

**G. Xandros' Claims On The SAA Would Be A Compulsory Counterclaim**

The interconnectedness of the SAA and the Notes is further confirmed by an application of the compulsory counterclaim provisions of Federal Rule of Civil Procedure 13. If Xandros is required to answer Plaintiff's Complaint, it must assert its claims on the SAA as a compulsory counterclaim as such claims "arise out of the transaction or occurrence that is the subject matter of the opposing party's claims...." Fed. R. Civ. P. 13(a).

This record confirms that the Notes which are the subject of Plaintiff's Complaint were integral parts of a business alliance reflected in the SAA.

II.

**PLAINTIFF HAS PRESENTED NO EVIDENCE OR ARGUMENT TO SUPPORT DENIAL OF THE MOTION**

**A. The Parties Expressed No Intention To The Contrary.**

Plaintiff argues that the Notes contain an affirmative statement that the parties intended for any disputes to be resolved in a "court of law". Plaintiff points only to a boilerplate attorneys fee provision (Paragraph 4.4) which commences "[I]f any action at law or equity...." That is not an affirmative statement against arbitration, just the preamble to a standard attorneys' fees clause. An abbreviated version of the same language appears in the SAA (paragraph 16.5).

4

B. **Bego's Authority.**

Plaintiff seeks to inflate the significance of testimony conflicts as to just what Michael Bego's job titles were.

Neither Roseman nor Berenstein challenged Bego's authority to make the deal. In fact, they looked to Bego to explain the deal. (Berenstein deposition, pp. 26, l. 24 - p. 27, l. 3.) Plaintiff's counsel never asked either witness the question, "Was Mr. Bego authorized to obligate Xandros to the SAA or the Notes?" Instead, Plaintiff points only to some confused and anecdotal testimony by Roseman and Berenstein as to just what Bego's titles were. Their apparent confusion is no smoking gun, just imperfect recall of technical titles. Berenstein specifically testified and cautioned Plaintiff's counsel that he was diagnosed with cancer in September 2000, and that until mid-2002, he was very much removed from Xandros due to chemotherapy, removal of an eye, and a liver operation. (Berenstein deposition, p. 20, l. 13 - p. 21, l. 6.) Berenstein also testified that the corporate structure was always informal. (Berenstein deposition, p. 11, l. 23-25.) Mr. Roseman testified that he had a "horrific memory" for dates and lengths of time (Roseman deposition, p. 14, l. 10-15) and had to rely on Berenstein for details as to who held what title. (Roseman deposition, p. 20, l. 3-15.)

In the end, Plaintiff clearly believed Bego had authority to bind Xandros. Their claims here are premised on three Promissory Notes <u>signed by Bego as President of Xandros, Inc.</u>

In any event, the Declaration of Frederick Berenstein filed with this Supplemental Memorandum puts the matter to rest as Dr. Berenstein clarifies that Mr. Bego was indeed the President of Xandros, Inc.

C. **Roseman and LGP's Rights to Arbitration.**

Plaintiff suggests that Roseman and LGP are not entitled to arbitration because Defendants have failed to prove their agency. Plaintiff argues that the allegations in its Complaint that these Defendants are agents of Xandros are <u>not</u>

5

1  entitled to any presumptive truthfulness and that Defendants must independently
2  prove those allegations.  Presumptive truthfulness is a doctrine which protects
3  plaintiffs on Rule 12(b) motions - plaintiffs cannot opt out of its application.  But for
4  their alleged agency or alter ego relationship with Xandros, these Defendants have
5  no connection to the dispute.

**D.    No Evidence That the Loans Were Stand Alone Transactions.**

Plaintiff has presented no affirmative evidence to support its factual claim that the Notes represent stand alone loan transactions unrelated to the SAA.

**E.    Plaintiff's Evidentiary Objections.**

Plaintiff presents several evidentiary objections which are not persuasive.

**1.    Bego Declaration.**

Plaintiff objects to the Declaration on foundation grounds based on the argument that Bego may not have really been the President of Xandros, Inc.  That argument has been disposed of above.  Bego has established more than adequate foundation for his personal knowledge of the events around and negotiation of the SAA and the Notes.

**2.    Letter Agreement and Amendment Thereto.**

Plaintiff objects to the unsigned side letter agreement re: Future Investment and the December 6 Amendment to that Letter Agreement on foundation, best evidence, hearsay and relevance grounds.  The Bego Declaration provides foundation for both, although the absence of a signed copy is an impediment to the authentication of the original side letter.  Given the signed amendment, Defendants submit that both these letters are legitimate evidence of the interlinked nature of the Notes and the SAA.  Even if the side letter could not be admitted as a binding contract, it is nonetheless "evidence" as to the interrelatedness of the SAA and the notes.

## III.

## CONCLUSION

Viewed in the totality of the circumstances, the Notes are not stand alone transactions, but are integral parts of a bigger alliance described by the SAA and related documents. Arbitration is, therefore, the proper vehicle for resolution of Plaintiff's claims on the Notes.

Dated: March 19, 2004

LA BELLA & McNAMARA, LLP

By: _____
ANDREW W. ROBERTSON
Attorneys for Defendants XANDROS, INC.; LINUX GLOBAL PARTNERS, INC.; WILLIAM JAY ROSEMAN

7